E-FILED
Monday, 19 April, 2021  04:03:06 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| PATRICIA BERARDI; ROBERT CHRISWELL; ALICE ROSE MARY ORTIZ; AUSTIN CALLOWAY; ELLEN SUNDERLAND; & LISA LYNCH, *as the parent and next friend of M.L., a minor child, individually and on behalf of themselves and all other persons similarly situated,* )<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PEKIN, ILLINOIS; MARK ROTHERT, *in his official capacity as Pekin City Manager*, & JOHN MCCABE, JOHN P. ABEL, MICHAEL GARRISON, MARK LUFT, LLOYD ORRICK, MICHAEL RITCHASON, & JIM SCHRAMM, *in their official capacities as Council Members for the City of Pekin,*<br><br>Defendants. | Case No.  1:18-cv-01438 |

## <u>ORDER & OPINION</u>

This case is before the Court on Plaintiffs' Motion to Certify Class (doc. 27) and Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. 41). These matters have been fully briefed and are therefore ripe for review. For the following reasons, the Motion to Certify Class is granted and the Motion to Dismiss is denied.

### BACKGROUND

Plaintiffs Patricia Berardi; Robert Chriswell; Alice Rose Mary Ortiz; Austin Calloway; Ellen Sunderland; and Lisa Lynch, as the parent and next friend of M.L.,

a minor child, are residents of the City of Pekin, Illinois, living with mobility disabilities. (Doc. 40 at 3–4).[1] Defendants are the City of Pekin, Illinois; its City Manager, Mark Rothert; and its city council members: John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason, and Jim Schramm. (Doc. 40 at 4–5).[2] This lawsuit is a putative class action involving alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (Doc. 40).

In a nutshell, Plaintiffs allege Defendant City of Pekin's pedestrian rights-of-way[3] are "largely inaccessible to persons with mobility disabilities" in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. (Doc. 40 at 5–8). As a remedy, Plaintiffs seek, *inter alia*, injunctive relief[4] "prohibiting Defendants from violating the ADA [and Rehabilitation Act] and compelling each Defendant to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of [the ADA, Rehabilitation Act], and regulations promulgated thereunder" and specifically ordering Defendants to:

    i.  Develop ADA-compliant design guidelines for the City's sidewalks, curb ramps, and other pedestrian rights-of[-]way;

    ii.  Utilize the ADA-compliant design guidelines to conduct or cause to be conducted a comprehensive survey of all pedestrian rights-of-way

---

[1] The Court's citations are to the page numbers created by the Court's CMECF system.

[2] The individuals are sued solely in their official capacities. (Doc. 40 at 1).

[3] "Pedestrian rights-of-way" include "curb ramps, sidewalks, school crosswalks, public crosswalks, bus stops, pedestrian crossings, and other walkways." (Doc. 40 at 4).

[4] Plaintiffs also seek monetary damages, declaratory relief, and attorney's fees and costs in addition to "[a]ppointment of a monitor to verify Defendants' compliance with the ordered injunctive relief." (Doc. 40 at 28, 30–31).

owned or maintained by the City to identify all areas of non-compliance;

iii.  Prepare a specific plan to remediate all non-compliant pedestrian rights-of-way owned or maintained by the City; and

iv.  Create and implement policies for inspection, repair, maintenance, and construction/alteration of pedestrian rights-of-way to ensure compliance with ADA-compliant design guidelines.

(Doc. 40 at 28, 30).

## DISCUSSION

Prior to addressing the justiciability issue, it is necessary to clarify Plaintiffs' claims. Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[5] This means public entities "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a); *see also* 28 C.F.R. § 35.149.

> A public entity may comply with the requirements of this section through such means as redesign or acquisition of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public

---

[5] Similarly, Section 504 of the Rehabilitation Act prohibits, in pertinent part, "discrimination under any program or activity receiving Federal financial assistance" on the basis of disability. 29 U.S.C. § 794(a). Because "Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims," *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001), the Court will focus on the ADA, but any holding will apply to both statutes unless otherwise noted.

entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section.

§ 35.150(b)(1). "In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate." *Id.* Where structural changes are the chosen or only available method, all alterations must be ADA-compliant. *Id.* And the regulations explicitly require curb ramps be installed at intersections having curbs on all newly constructed or altered pedestrian walkways, streets, roads, or highways. § 35.151(i).

Some courts have concluded municipality pedestrian rights-of-way as well as their construction, maintenance, and alteration fall within the definition of "services, programs, or activities of a public entity." *E.g.*, *Barden v. City of Sacramento*, 292 F.3d 1073, 1076–77 (9th Cir. 2002); *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 941 (N.D. Ind. 2009) ("[Municipalities have] exclusive jurisdiction and responsibility for [their] sidewalks and an obligation to maintain [their] sidewalks so that the sidewalk system, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." (internal quotation marks omitted)); *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, 1172 (D. Colo. 2020) ("The statutory text, as well as its structure, legislative history, and broader statutory context, make clear that sidewalks[, as well as their construction, maintenance, and alteration] are a

service, program, or activity, as those terms are plainly and ordinarily understood.").[6]
Defining *maintenance* of pedestrian rights-of-way as a service arguably has
immediate consequences under the ADA, as it essentially eliminates the safe harbor
for "existing facilities"[7] (*i.e.*, that structural changes are not required unless the
facility undergoes an alteration, *see* §§ 35.150(a)(1), 35.151(b)) as to municipality
sidewalks. The service (maintenance) cannot be ADA-compliant without the facility
(pedestrian rights-of-way) also being ADA-compliant. It is therefore arguable that the
City of Pekin's pedestrian rights-of-way were required to have been made ADA-
complaint no later than "three years [after] January 26, 1992," § 35.150(c), regardless
of whether any portion thereof has been altered since enactment of the ADA. This,
however, is subject to the defense permitting municipalities to avoid modification
where the modification would create undue financial or administrative burdens. *See*
§ 35.150(a)(3).

The Court understands this lawsuit to assert decades of municipality policy or
inaction have resulted in a public sidewalk system that cannot be meaningfully or
safely accessed by individuals with mobility disabilities. Specifically, Plaintiffs'
Amended Complaint alleges the single proposition that, viewed in its entirety, the
Pekin sidewalk system is inaccessible to individuals with mobility disabilities, thus
denying such individuals the benefits of a city service (maintenance of pedestrian

---

[6] The Court recognizes whether sidewalks and/or their maintenance are "services"
within the meaning of the ADA is an open question in the Seventh Circuit. That issue,
however, ought not be decided at this stage of the proceedings.

[7] "Facility" includes "all or any portion of buildings, structures, . . .  roads, walks,
passageways, [and] parking lots." 28 C.F.R. § 35.104.

rights-of-way) in violation of Title II of the ADA (Count I) and Section 504 of the Rehabilitation Act (Count II). (Doc. 40 at 23–31). Plaintiffs seek widespread remediation of all noncompliant pedestrian rights-of-way in the City of Pekin so as to facilitate citywide ADA compliance. In other words, the relief they seek is not limited to remedying those particular instances of noncompliance alleged in the Amended Complaint. It is clear Plaintiffs' goal is for the Pekin sidewalk system, "when viewed in [its] entirety, [be considered] readily accessible to and usable by individuals with [mobility] disabilities," *see* 28 C.F.R. § 35.150(a). (Docs. 40 at 28, 30–31; 29 at 14, 21; 35).

Defendants, however, frame the Complaint differently, seemingly describing each individual Plaintiff's and putative class member's experiences as separate claims for relief as opposed to evidence of the overarching claim that the Pekin sidewalk system, in general, is inaccessible to those with mobility disabilities. (*See, e.g.*, doc. 32 at 19 (stating that "in order to determine whether Defendants are liable to a given plaintiff under Title II and the Rehabilitation Act, the Court would need to look at the particular barrier(s) encountered by each putative class member [and] perform [an] individual-specific analysis" to determine both liability and damages)).

Defendants' framing of Plaintiffs' claims conflates the claims with the facts and evidence necessary to prevail on those claims. To prevail, Plaintiffs must of course identify noncompliant portions of the sidewalk system and point to enough defects to prove the sidewalk system as a whole is impermissibly inaccessible. Contrary to Defendants' position, however, this necessity does not automatically divide Plaintiffs'

two claims into subclaims that only the identified defects are subject to this lawsuit nor does Plaintiffs' assertion the sidewalk system is noncompliant for a number of different reasons, such as uneven sidewalks; noncompliant and nonexistent curb cuts; inaccessible bus stops; and placement of sewer covers, light poles, fire hydrants, and snow piles. To be sure, this lawsuit would require the factfinder to assess several individual defects in the Pekin sidewalk system, but not to determine liability as to a specific individual; rather, such consideration goes to the determination whether the sidewalk system as a whole is impermissibly inaccessible to individuals with mobility disabilities. A finding that a specific defect identified by one Plaintiff or putative class member is not itself a violation of the ADA or Rehabilitation Act would not automatically absolve Defendants of liability to that individual. If the factfinder is persuaded that Defendants engaged in the systemic discrimination alleged, then Defendants would still be liable to that individual, provided he or she is actually a member of the putative class.

In short, Plaintiffs' grievance is not limited to the specific instances of noncompliance they allege in the Amended Complaint. Even if each of those specific instances of alleged noncompliance were remedied today, Plaintiffs could potentially maintain claims stemming from the alleged systemic, decades-long failure of Defendants to bring the Pekin sidewalk system into compliance with the ADA and Rehabilitation Act. For these reasons, the Court rejects Defendants' framing of Plaintiffs' claims, which forms the basis of most of their arguments discussed herein.

# I.      Jurisdiction

There are two types of jurisdictional challenges: facial and factual. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis omitted). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "In contrast, a factual challenge lies where the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *Apex Digit.*, 572 F.3d at 444 (internal quotation marks omitted). In such cases, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* In any event, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586. 588–89 (7th Cir. 2014).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *United States v. Alkaramla*, 872 F.3d 532, 534 (7th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Whether a case falls within the limited jurisdiction of the federal courts is both a constitutional and a statutory question. "[T]he Constitution imposes a ceiling, albeit a high one, on the potential jurisdiction of the federal courts" by "permit[ting] federal courts to hear only

certain claims." *Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO v. Ward*, 563 F.3d 276, 280–81 (7th Cir. 2009); *see also* U.S. Const. art. III, § 2, cl. 1. Congress has the authority "to further refine the actual scope of federal jurisdiction" because federal jurisdiction must be exercised pursuant to a statutory grant. *Id.* Thus both the Constitution and federal statutory law "must authorize a federal court to hear a given type of case" for federal jurisdiction to lie. *Id.* at 280.

Defendants argue constitutional jurisdiction, *i.e.*, standing, is facially lacking in this case. "As the party invoking the court's jurisdiction, the plaintiff bears the burden of establishing the elements of standing." *Id.* at 285 (citing *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016)). "Those elements are: (1) the plaintiff suffered a concrete and particularized injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). Defendants challenge the third element: redressability.[8]

Defendants maintain Plaintiffs' request for injunctive relief is a veiled request that the Court order Defendants to create the self-evaluation and transition plans mandated by 28 C.F.R. §§ 35.105, 35.150 and 45 C.F.R. § 84.22. (Doc. 41 at 3–4). They argue there is no private cause of action to enforce these regulations, so Plaintiffs

---

[8] The Amended Complaint easily satisfies the first two elements; Plaintiffs allege they were concretely and directly harmed by Defendants' alleged failure to maintain Pekin pedestrian rights-of-way in a manner that complies with the ADA and Rehabilitation Act. *See Spuhler*, 983 F.3d at 285 ("Initially, a plaintiff may demonstrate standing by clearly pleading allegations that "plausibly suggest" each element of standing when all reasonable inferences are drawn in the plaintiff's favor.").

lack standing to request the injunctive relief sought in the Amended Complaint.[9] (Doc. 41 at 3–6). Recognizing the Seventh Circuit has yet to decide whether individuals have a private cause of action to enforce the regulations at issue, Defendants argue "federal courts across the country have considered the issue and have found that there is no private right of action to enforce these regulations," citing *Lonberg v. City of Riverside*, 571 F.3d 846 (9th Cir. 2009); *Iverson v. City of Bos.*, 452 F.3d 94, 104 (1st Cir. 2006); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 914 (6th Cir. 2004); *Liberty Res., Inc. v. City of Philadelphia*, 2020 WL 3642484, at *5-6 (E.D. Pa. 2020); *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 555–56 (D. Md. 2019); and *McBay v. City of Decatur, Ala.*, 2014 WL 1513344, at *13 (N.D. Ala. 2014). (Doc. 41 at 4–5).

Plaintiffs argue Defendants misconstrue the injunctive relief sought. (Doc. 45 at 3–6). The Court agrees. The language Defendants quote for their erroneous construction conveniently omits the immediately preceding sentence, which requests "[a] preliminary injunction and a permanent injunction, prohibiting Defendants from violating the ADA, 42 U.S.C. § 12133, *et seq.*, and compelling each Defendant to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title II of the ADA, and regulations promulgated thereunder." (Doc. 40 at 28).[10] The only reasonable and logical interpretation of this language—that

---

[9] Notably, Defendants only challenge Plaintiffs' standing to seek the injunctive relief sought in the Amended Complaint; they do not challenge the Court's jurisdiction to hear Plaintiffs' substantive claims.

[10] Plaintiffs request correspondingly identical relief in connection with their Rehabilitation Act claim in Count II. (Doc. 40 at 31).

Plaintiffs seek actual remediation and prospective ADA compliance, not merely a plan to remediate—wholly defeats Defendants' argument. Defendants offer no argument or authority holding Plaintiffs are precluded from seeking remedial injunctive relief in this context; in fact, remedial injunctive relief is a type of remedy typically sought and awarded in similar cases. *See, e.g.*, *Culvahouse*, 679 F. Supp. 2d at 947; *Barden*, 292 F.3d at 1075. Accordingly, Plaintiffs satisfy the redressability requirement, and jurisdiction lies. The Motion to Dismiss must therefore be denied.

## II.      Class Certification

Plaintiffs ask the Court to certify a class defined as:

> All persons with mobility disabilities who were residents of the city of Pekin from December 11, 2016 through December 11, 2018 who have been denied access to pedestrian rights[-]of[-]way in the City as a result of Defendants' policies and practices with regard to the City's pedestrian rights-of-way and disability access.

(Doc. 29 at 21).

"The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr*, 953 F.3d at 497. Firstly, the proposed class must be "sufficiently definite that its members are ascertainable." *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 864 (7th Cir. 2018) (internal quotation marks omitted). Secondly, the movant(s) must comply with Federal Rule of Civil Procedure 23, which requires satisfaction of "all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the general categories of Rule 23(b)." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020).

11

Defendants oppose the Motion to Certify Class because, they argue, each Plaintiff's and putative class member's individual claim presents a unique fact-based inquiry, precluding findings of sufficient definiteness, commonality, predominance, and superiority. (Doc. 32 at 10–13, 13–16, 18–21). Defendants also argue the proposed injunctive relief does not actually remedy the asserted claims. (Doc. 32 at 17–18). As the Court has rejected Defendants' construction of Plaintiffs' claims and requested relief, these arguments fail. The Court instead finds class certification is appropriate in this case.

A.      *Definiteness of the Class*

"Rule 23 requires that a class be defined, and experience has led courts to require that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). In deciding whether a proposed class is sufficiently defined, the proper emphasis is "on the adequacy of the class definition itself," not whether "it would be difficult to identify particular members of the class." *Id.* Recognizing this rule may be susceptible to misinterpretation, the Seventh Circuit has directed courts to "focus on the three common problems that have caused plaintiffs to flunk this requirement." *Id.* "First, classes that are defined too vaguely fail to satisfy the 'clear definition' component." *Id.* "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. "Second, classes that are defined by subjective criteria, such as by a person's state of mind, fail the objectivity requirement." *Id.* "Third, classes that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined." *Id.*

12

Defendants contend the class is not sufficiently ascertainable because whether an individual is a member of the putative class depends upon a highly specific determination of whether the barrier identified by that individual was the result of a city policy or practice and whether that barrier was ADA-compliant. (Doc. 32 at 10–13). In support of their argument, Defendants cite *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012). There, the plaintiffs sought certification of a class including "disabled students who may have been eligible for special education but were *not identified* and *remain unidentified*." *Id.* (emphasis in original). In concluding the class was insufficiently defined, the Seventh Circuit reasoned:

> By what standard is class membership to be determined? How is the court to decide whether there was reason to believe *in 2000–2005* that a presently unidentified child was potentially eligible for special-education services from MPS? It's not hard to see how this class lacks the definiteness required for class certification; there is no way to know or readily ascertain who is a member of the class.
>
> Of course, unidentified but potentially eligible disabled students are defined not only by having not been identified but also by having a disability. If we could easily identify all Milwaukee students with disabilities during the relevant time period, perhaps we could crosscheck that list against a list of known disabled students to determine which students MPS failed to identify and refer for an IEP evaluation. But identifying disabled students who might be eligible for special-education services is a complex, highly individualized task, and cannot be reduced to the application of a set of simple, objective criteria. Every step of the child-find inquiry and IEP process under the IDEA is child specific and requires the application of trained and particularized professional educational judgment. In short, a class of unidentified but

> potentially IDEA-eligible disabled students is inherently too indefinite
> to be certified.

*Id.* at 495–96 (emphasis in original). In short, whether a student "may have been eligible for special education" was not a question that could be answered based on a list objective criteria.

The proposed class definition here does not suffer the same obvious defect. Under the proposed definition, an individual is a class member if he or she (1) has a mobility disability; (2) resided in the City of Pekin, Illinois, between December 11, 2016, and December 11, 2018; (3) was denied access to the City's pedestrian rights-of-way; and (4) the denial of access was due to Defendants' policies and practices with regard to the city pedestrian rights-of-way and disability access. (*See* doc. 29 at 21). The first three are clearly objective criteria that can be determined with relative ease. Defendants' quarrel lies with the fourth. They suggest this criterion essentially requires a determination of whether the denial of access to the Pekin sidewalk system is due to an ADA violation (doc. 32 at 10–13), which would implicate the third reason proposed class definitions generally fail, *see Mullins*, 795 F.3d. at 660. The Court disagrees. The question whether an individual's denial of access is due to the Defendants' policies and practices does not require determining whether the alleged barrier violates the ADA. Further, it is reasonable to assume the sidewalk system is in its current state due to Defendants' policies and practices, as the Court presumes— at this stage of the proceedings—Defendants bear responsibility for the maintenance and general upkeep of the Pekin sidewalk system. The fourth criterion thus appears

14

to be somewhat superfluous, but that does not necessarily render the definition impermissibly indefinite.

Cases involving similar claims have defined classes similarly yet more simply than the proposed definition here. In *Culvahouse*, the class was defined as:

> "[A]ll persons who live or will live in or who visit or will visit the City of LaPorte, Indiana, and who, because of a disability as defined by the Americans with Disabilities Act, (1) use wheelchairs or other wheeled devices for movement, or (2) have gait disturbances, or (3) have other difficulties in ambulation."

679 F. Supp. 2d at 938 n.2. And in *Barden*, the class was defined as "all persons with mobility and/or vision disabilities who seek full and equal access pertaining to curb cuts and sidewalks in the City of Sacramento's public rights of way." *Barden v. City of Sacramento*, No. 2:99-cv-00497, Doc. 15 (E.D. Cal. July 11, 2000) *rev'd on other grounds* 292 F.3d 1073 (9th Cir. 2002).[11]

In consideration of Seventh Circuit precedent and class definitions in similar cases, the Court believes the following definition will best represent the class Plaintiffs seek to represent in pursuing the claims stated in the Amended Complaint:

> All persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

This definition eliminates the language Defendants contest and which the Court has determined superfluous. Further, specifying "meaningful access" as opposed to any

---

[11] The Court recognizes the class definitions in both *Culvahouse* and *Barden* were stipulated to by both parties, but they nevertheless can provide helpful guidance on acceptable class definitions in this context.

"access" resonates with Plaintiffs' clear desire for full and equal access to city services and ensures class membership for those individuals who have used or attempted to use the Pekin sidewalk system despite encountering the alleged risks and barriers so as to avoid risky alternatives, such as ambulating in roadways. Thus, in its discretion and in the interests of judicial economy, the Court hereby modifies the class definition. *See Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (noting the district court may redefine the class in its consideration under Rule 23); *Kress v. CCA of Tennessee*, LLC, 272 F.R.D. 222, 232 (S.D. Ind. 2010), *aff'd*, 694 F.3d 890 (7th Cir. 2012) ("[T]he Court has broad discretion to modify the class definition if necessary."); *Beaton v. Software*, No. 13-CV-08389, 2017 WL 4740628, at *3 (N.D. Ill. Oct. 19, 2017), *aff'd sub nom.*, *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) ("[N]othing prevents this Court from considering a revised definition or, indeed, *sua sponte* revising the definition of a proposed class."). Should the parties believe this definition is deficient, they may file a motion to amend the class definition.

B.    *Rule 23(a) Requirements*

The Court next considers the four requirements under Rule 23(a).

1.    **Commonality**

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, plaintiffs "must assert a common injury that is 'capable of class[-]wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Lacy*, 897 F.3d at 865 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "The key to

16

commonality is not the raising of common questions . . . but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (alteration in original and internal quotation marks omitted). "The critical point is the need for *conduct* common to members of the class." *Id.* (alteration in original and internal quotation marks omitted).

As in *Lacy*, commonality abounds here. Plaintiffs and the putative class members are all Pekin residents with mobility disabilities; they face common physical barriers in the City of Pekin when they confront allegedly noncompliant or nonexistent "curb ramps, sidewalks, school crosswalks, public crosswalks, bus stops, pedestrian crossings and other walkways" (doc. 40 at 5). *Compare with id.* at 865 ("The plaintiffs share a common physical impairment, as they are all confined to wheelchairs when attending court. Furthermore, they face common physical barriers when they confront steep ramps and noncompliant bathroom facilities."). Additionally, Plaintiffs seek a common remedy[12]: an injunction requiring Defendants to, *inter alia*, prospectively cease violating the ADA and Rehabilitation Act in their duty to maintain the city sidewalk system and to remediate the existing points of noncompliance (doc. 40 at 28, 30–31). *Compare with id.* ("And finally, they seek

---

[12] Of course, Plaintiffs also seek monetary damages (doc. 40 at 28, 30–31), but a request for individualized monetary damage awards does not preclude a finding of commonality, *e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.").

common modifications in the form of mandatory policies for assistance in pushing them up and down the ramps and escorting them to ADA-compliant restrooms.").

These common characteristics evoke the common question whether the City of Pekin has maintained its sidewalk system in a manner that complies with the ADA and Rehabilitation Act, a threshold question of liability applicable to each Plaintiffs' and putative class members' claims. As in *Lacy*, [t]his is not a situation where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff; rather, they all complain about the same failure to implement and enforce policies" that would accommodate all individuals with mobility disabilities.[13] *Id.* at 865–66 (internal quotation marks and citations omitted); *see also Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 440 (7th Cir. 2015) (*CTU*) ("The plaintiffs have demonstrated commonality by asserting that a uniform employment practice (the set of criteria used to evaluate the school) used by the same decision-making body to evaluate schools was discriminatory."). The commonality requirement is satisfied here.[14]

### 2.    Typicality

The "commonality and typicality requirements . . . tend to merge." *Wal-Mart*, 564 U.S. at 349 n.4 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13

---

[13] Plaintiffs could have framed their claims as Defendants would have the Court interpret them; that is, they could have raised individual claims challenging specific barriers. But that is not what they have chosen to do. Rather, they have chosen to allege the Pekin sidewalk system is generally inaccessible to individuals with mobility disabilities in violation of the ADA and Rehabilitation Act. Thus, each Plaintiff's and putative class member's claims are one in the same.

[14] Defendants also assert their argument raised in opposition to standing against a finding of commonality; however, the Court has already rejected that argument.

(1982)). However, the two differ in that "the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Howard v. Cook Cty. Sheriff's Off.*, ___ F.3d ___, No. 20-1723, 2021 WL 822744, at *12 (7th Cir. Mar. 4, 2021) (quoting Newberg on Class Actions § 3:31). Specifically, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy*, 897 F.3d at 866 (internal quotation marks omitted and alteration in original). "The logic behind the typicality requirement 'is that a class representative will adequately pursue her own claims, and if those claims are "typical" of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well.'" *Howard*, 2021 WL 822744, at *12 (quoting Newberg on Class Actions § 3:28).

Pursuit of the named Plaintiffs' claims will benefit the class as a whole because the named Plaintiffs' claims and the putative class members' claims are one in the same: the Pekin sidewalk system is impermissibly inaccessible to those with mobility disabilities due to the City's alleged failure to maintain its sidewalk system in a manner that complies with the ADA and Rehabilitation Act. No named Plaintiff raises any separate or independent claim. For this reason and those discussed above, the Court finds Plaintiffs have carried their burden to prove their claims "have the same essential characteristics as the claims of the class at large." *Lacy*, 897 F.3d at 866 (internal quotation marks omitted).

19

### 3. Numerosity

The Court further finds Plaintiffs have carried their burden to prove sufficient numerosity. To meet the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Seventh Circuit, "a forty-member class is often regarded as sufficient to meet the numerosity requirement," though the proper focus ought to be the "practicability of joinder" rather than the number of putative class members. *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). This requires evaluation of "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.* (quoting 7A C. Wright & A. Miller, Federal Practice & Procedure § 1762 (3d ed.)).

Though the central locality of the putative class members might make joinder less burdensome, the Court finds the nature of the action and the size and type of individual claims favor a finding of sufficient numerosity. Plaintiffs and the putative class members assert the same claims; it makes sense to answer all common questions in one proceeding. And although individual monetary damages may be relatively small, the injunctive relief sought would have a major effect benefitting all class members if awarded.

Furthermore, Plaintiffs have submitted declarations of an additional 35 individuals who meet the class definition (doc. 29-2) and cited sufficiently reliable data to indicate the proposed class could reasonably include hundreds if not thousands of individuals (doc. 29 at 26–28 (citing statistics and data from the Census and the U.S. Department of Housing and Urban Development)). The likely possibility

that the putative class will include hundreds if not thousands of individuals is also strong support for a finding of numerosity, as it would be extremely difficult if not impossible to manage a single case with hundreds or thousands of named plaintiffs. For these reasons, the Court finds Plaintiffs have carried their burden of proving joinder would be impracticable.

### 4.    Adequacy of Representation

Finally, the Court finds Plaintiffs have carried their burden of proving they and their counsel will provide adequate representation. Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart*, 564 U.S. at 348–49 (internal quotation marks omitted); Fed. R. Civ. P. 23(a)(4) ("[T]he representative parties [must] fairly and adequately protect the interests of the class."); *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) ("[T]he interests of the class representative must coincide with those of the rest of the class, and the class representative's attorney must be prepared to prosecute the action vigorously, tenaciously and with adequate financial commitment."). The named Plaintiffs are members of the proposed class. They are individuals who require the use of canes, walkers, and wheelchairs or scooters to ambulate and who have resided in various neighborhoods of the City of Pekin at all relevant times. (Doc. 40 at 15–23). Each named Plaintiff has suffered the same injury as all putative class members: they have been denied meaningful access to the Pekin sidewalk system due to various issues such as, but not limited to, the lack of curb cuts, uneven and cracked sections of sidewalk, and barriers blocking wheelchair and scooter passage. (Doc. 40 at 15–23). The named Plaintiffs do not assert any claims

that are not common to all putative class members, and no conflict of interest has been identified. In short, the evidence before the Court sufficiently demonstrates the named Plaintiffs will adequately represent the putative class.

Similarly, Plaintiffs have demonstrated their chosen counsel will adequately represent the class. "[A] court that certifies a class must appoint class counsel," upon consideration of:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel has extensive combined experience in municipal law, disability civil rights actions, and class action lawsuits; counsel have also conducted "a significant investigation into the potential claims in this action," totaling 700 hours thus far and including scores of interviews, town hall meetings, and consultations with expert architects. (Docs. 29 at 34–35; 29-7, 29-8). Plaintiffs have met their burden to prove current counsel will provide competent representation.

C.      *Rule 23(b) Requirements*

Having complied with Federal Rule of Civil Procedure 23(a), Plaintiffs must also satisfy "one of the general categories of Rule 23(b)." *Orr*, 953 F.3d at 497. Here, Plaintiffs seek hybrid certification under Rules 23(b)(2) and (b)(3). The Court will address each in turn.

1.      **Rule 23(b)(2)**

Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" This consideration is comprised of two requirements: the act requirement and the injunction requirement.

The "act requirement properly focuses on the single question of whether the defendant maintains a policy that affects a group of persons similar to those proposed to constitute the class in the present case." Newberg on Class Actions § 4:28 (5th ed.). This requirement is clearly met on these facts, and Defendants offer no argument to the contrary. Here, the entire basis of Plaintiffs' claim is that Defendants' policies and/or practices fail to ensure the Pekin sidewalk system is safe and meaningfully accessible to those with mobility disabilities. These policies and practices affect Plaintiffs and all putative class members similarly in that each are allegedly denied safe and meaningful access to the Pekin sidewalk system.

The injunction requirement encompasses three components: the requested relief must be (1) final, (2) injunctive or declaratory, and (3) appropriate to the class as a whole. Newberg on Class Actions § 4:29 (5th ed.). Plaintiffs easily satisfy the first two components; they seek a permanent injunction enjoining Defendants from continuing to discriminate on the basis of disability with regard to maintenance of the Pekin sidewalk system and compelling them to eliminate existing points of ADA noncompliance. (*See* docs. 40 at 28, 30–31; 35). The parties' disagreement lies in the third component, as Defendants argue the injunctive relief sought by Plaintiffs does

not actually benefit the class as a whole. (Doc. 32 at 17–18). However, as discussed above, this argument is based on an erroneous construction of the injunctive relief sought by Plaintiffs. *Supra* at 10–11. Contrary to Defendants' argument, Plaintiffs do not merely seek an injunction requiring Defendants to create a plan to remediate instances of noncompliance; they seek citywide remediation—relief that will undoubtedly benefit the class as a whole by making the Pekin sidewalk system safe and meaningfully accessible to Plaintiffs and the putative class members. (Docs. 40 at 28, 30–31; 35).

" '[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of Rule 23(b)(2) classes." *CTU*, 797 F.3d at 441 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). The Rule is satisfied where the plaintiffs "seek the same declaratory and[/or] injunctive relief for everyone." *Id.* at 442. That is exactly what Plaintiffs have done here. Certification under Rule 23(b)(2) is therefore appropriate.

### 2.    Rule 23(b)(3)

Classes certified under Rule 23(b)(3) are those that seek monetary damages, and putative class members have the right to opt out of a class certified under Rule 23(b)(3) if they so choose. Fed. R. Civ. P. 23(c)(2)(B). A class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Defendants raise the same faulty defense as to predominance and superiority as they raise throughout—namely, that each individual Plaintiff's and putative class member's claim requires an individualized assessment not only to calculate damages but also to determine liability. (Doc. 32 at 18–22). Again, this is an incorrect framing of this lawsuit.

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). It "builds on commonality; whereas Rule 23(a)(2) requires the existence of a common question, Rule 23(b)(3) requires the common question(s) to 'predominate' over the individual ones." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Tyson Foods*, 136 S. Ct. at 1045 (quoting Newberg on Class Actions § 4:50). "To gauge whether a class action would be more efficient than individual suits, '[t]he predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." ' " *Howard*, 989 F.3d at 607 (quoting *Tyson Foods*, 136 S. Ct. at 1045 (quoting Newberg on Class Actions § 4:49)).

To establish a claim under the ADA or Rehabilitation Act, a claimant must show "(1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity . . . and (3) that the denial or discrimination was by reason of his disability." *Lacy*, 897 F.3d at 853 (internal quotation marks omitted); *see also Hahn v. Walsh*, 915 F. Supp. 2d 925, 956 (C.D. Ill. 2013) (citation omitted). Monetary damages available under the ADA and Rehabilitation Act include those available in contract claims, *e.g.*, compensatory damages. *See* 1 Americans with Disab.: Pract. & Compliance Manual § 2:216.[15] And to recover compensatory damages, "the party requesting damages must show causation, that is that the alleged [discrimination] is the cause of those damages, with reasonable certainty." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633 (7th Cir. 2007) (citations omitted)).

But the inquiry does not stop there. To recover compensatory damages under the Title II of the ADA—and the Rehabilitation Act, for that matter[16]—Plaintiffs and the putative class members must prove their damages are the result of intentional

---

[15] "Because Title II, Part A of the Americans with Disabilities Act (ADA)[, 42 U.S.C. § 12133,] incorporates the remedial provisions of § 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a), which, in turn, incorporates the remedies, procedures and rights of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d to 2000d-7), [29 U.S.C. § 794a(a)(2),] the damages available under ADA Title II are the same as those available under Title VI, that is, contract damages." 1 Americans with Disab.: Pract. & Compliance Manual § 2:216.

[16] *Kennington v. Carter*, No. IP02-0648, 2004 WL 2137652, at *7 (S.D. Ind. June 28, 2004) (noting the Rehabilitation Act borrows remedies from Title VI of the Civil Rights Act of 1964, 29 U.S.C. § 794a(2), and citing *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001) for its holding that private individuals may not recover compensatory damages under Title VI except for intentional discrimination).

discrimination. *Lacy*, 897 F.3d at 862. In the Seventh Circuit, a plaintiff establishes "intentional discrimination . . . by showing deliberate indifference." *Id.* at 863. This, in turn, requires both "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (internal quotation marks omitted).

While the calculation of compensatory damages can present inherently individualized inquiries,[17] the Court nevertheless finds common questions of law and fact predominate in this case. Threshold questions of liability must be answered in the affirmative before turning to any individualized questions as to damages; such questions include whether Defendants' policies and/or practices with regard to maintenance of the Pekin sidewalk system are discriminatory against individuals with mobility disabilities, whether such discrimination was intentional, and whether there is a defense to the alleged discrimination. These questions can be resolved on a class-wide basis, and their relative importance is such that they predominate over the questions pertaining to individual damages calculations; consolidation of these questions in a single lawsuit will achieve economies of time and expense and avoid inconsistent rulings. In this way, this case is similar to *CTU*, 797 F.3d at 444 (finding predominance when "the key question upon which all of the litigation rises or falls can be answered for every plaintiff").

---

[17] Here, there appear to be a mix of damages at play; some Plaintiffs seek specific compensatory damages for injuries sustained while encountering allegedly noncompliant barriers or sections of the Pekin sidewalk system while others seek generalized compensatory damages for the alleged discrimination. (*See* doc. 40 at 17–23).

Defendants' reliance on *Hudson v. City of Chi.*, 242 F.R.D. 496 (N.D. Ill. 2007), is misguided. In *Hudson*, the plaintiffs sought class certification in a case alleging, *inter alia*, the City of Chicago enforced a policy of arresting panhandlers without probable cause. *Id.* at 501. The court determined predominance was lacking in part because the existence of probable cause to arrest a particular plaintiff would be a complete defense to liability to that plaintiff. *Id.* at 505. Defendants argue a finding that a particular barrier is ADA-compliant is a complete defense to liability to the individual identifying that barrier, like the complete defense of probable cause in *Howard*. However, that is not the case, as previously discussed. A finding that a particular barrier is ADA-compliant does not preclude a finding that Defendants' maintenance of the Pekin sidewalk system as a whole is discriminatory under the ADA and Rehabilitation Act, meaning liability to the individual identifying that barrier is not necessarily destroyed. And while it is true a finding of ADA compliance as to a specific barrier may destroy the causation required to award compensatory damages for injuries sustained due to that barrier, such a finding does not necessarily preclude *any* compensatory damages for that Plaintiff; he or she may simply be entitled to general damages rather than specific damages (*see supra* at n.17), provided Plaintiffs carry their burdens of proof. In sum, the Court concludes common questions of fact and law predominate over individual questions in this case.

Finally, a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy" to satisfy Rule 23(b)(3). In making this determination, courts must consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants again argue a class action is not superior to individual litigation because of the "need to conduct an individualized assessment of each putative class member's claim based on the barrier(s) allegedly encountered[.]" (Doc. 32 at 22). However, the Court has rejected that line of reasoning throughout this Order. Contrary to Defendants' argument, threshold questions of liability *can* be answered in one fell swoop. To the extent individualized assessments of particular barriers are required in this case, such considerations go to the ultimate question of whether maintenance of the Pekin sidewalk system as a whole is discriminatory or to individual damage calculations—not to whether Defendants are liable to any particular individual.

Having considered the requisite factors, the Court concludes a class action is the superior method of litigation in this case. As previously stated and in consideration of Rule 23(b)(3)(C), adjudicating Plaintiffs' and the putative class members' claims in one lawsuit will achieve economies of time, expense, and effort and will avoid inconsistent rulings on the common questions of law and fact presented in this case. This factor weighs heavily in favor of class certification. *See Messner v.*

*Northshore Univ. HealthSystem*, 669 F.3d 802, 815 n.5 (7th Cir. 2012) ("[T]he more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). Certification under Rule 23(b)(3) is therefore also appropriate.

## III.    Redaction

As a housekeeping matter, Plaintiffs are directed to Federal Rule of Civil Procedure 5.2 for redaction guidance. The pleadings and documents currently on file redact more than is seemingly necessary, making it difficult to understand portions of Plaintiffs' filings. If Plaintiffs believe the redactions mandated by Rule 5.2 are insufficient, they may seek leave to file under seal where necessary and appropriate.

### CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Certify Class (doc. 27) is GRANTED. The Court certifies the following Class:

> All persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

The Class claims are that Defendants have violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), by denying Class Members the benefits of city services, programs, or activities—namely, meaningful access to the Pekin sidewalk system and pedestrian rights-of-way—on the basis of the Plaintiffs' and Class Members' mobility disabilities.

Plaintiffs Patricia Berardi; Robert Chriswell; Alice Rose Mary Ortiz; Austin Calloway; Ellen Sunderland; and Lisa Lynch, as the parent and next friend of M.L., a minor child, are hereby designated as Class Representatives. The following attorneys are designated as Class Counsel: Andres J. Gallegos and Jennifer Lundy Sender of Robbins, Salomon, & Patt LTD and Carl F. Reardon.

The Class is certified as a hybrid class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Plaintiffs are directed to file within fourteen (14) days a memorandum detailing their suggested procedures for notification and opting out; Defendants may respond with seven (7) days. The Court will thereafter enter an Order pursuant to Rule 23(c)(2).

Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. 41) is DENIED.

SO ORDERED.

Entered this 19th day of April 2021.

_____ s/ Joe B. McDade _____
JOE BILLY McDADE
United States Senior District Judge
