## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child,* individually on behalf of themselves and all other persons similarly situated, | **)** **)** **)** **)** **)** **)** **)** **)** | |
| Plaintiffs, | **)** | Case No. 1:18-cv-01438 |
| v. | **)** **)** | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | **)** **)** **)** **)** **)** **)** **)** **)** | |
| Defendants. | **)** | |

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

# Table of Contents

**INTRODUCTION** ...................................................................................................5

**FACTUAL AND PROCEDURAL BACKGROUND**.................................................6

**THE CONSENT DECREE** ........................................................................................8

**1.   Term.**...............................................................................................................8

**2.   Injunctive Relief.**...........................................................................................8

**3.   Annual Monetary Commitment.**.................................................................11

**4.   Monetary Relief.** .........................................................................................11

**5.   Notice Plan and Settlement Administrator.** ..............................................12

**6.   Claim Form & Exclusion Request Form.** ..................................................14

**7.   Release.** ........................................................................................................15

**ARGUMENT** .........................................................................................................15

**A.   The Settlement set forth in the Consent Decree well surpasses the Seventh Circuit's standards for the approval of class action settlements.** ...............15

**B.   The Settlement should be preliminarily approved.** ...................................16

**1.   The Settlement provide substantial relief to the Class, particularly given the risk posed by continued litigation.** ..............................................................17

**2.   Further litigation will be protracted and expensive.** ..............................19

**3.   Class Counsel are competent, well-informed, and experienced in a strongly endorse the Settlement.** .........................................................................21

**4.   Settlement was reached in the early stages of the proceedings with minimal but meaningful discovery completed.** .........................................................21

**C.   The proposed class notice plan provides the best practicable notice and does so in an easily understood format and is nearly identical to the notice plan previously approved by the Court.** ...................................................................................23

**D.   The Court should schedule a fairness hearing to finally approve the settlement.**......25

**CONCLUSION** .......................................................................................................25

**EXHIBITS**

A    **Consent Decree**
B    **Notice Plan**
C    **Declaration of Andrés J. Gallegos, Esq.**
D    **Declaration of Jennifer M. Sender, Esq.**
E    **Declaration of Carl F. Reardon, Esq.**
F    **Proposed Preliminary Order Approving the Settlement**
G    **Proposed Final Order Approving the Settlement**

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) 13

*AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) ............ 14

*AT&T Mobility*, 270 F.R.D. at 347 ...................................................................................... 15

*Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH .................................. 6

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ............................................................ 17

*Cummings v. Premier Rehab Keller, P.L.L.C.,* 141 S. Ct. 659, 208 L. Ed. 2d 269 (2020) ........... 16

*Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998) .............................................................. 13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................................................................... 19

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) .................................................................... 13

*Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) ..................................................... 21

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) ......................................................................... 15

*Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) ........................................................ 18

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ............ 18

*Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) .............................. 18

*Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) ........................................ 21

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ...................................................................................................................... 21

*Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) ................................................................................................................................ 18

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ............................................................. 13, 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ................................................................................................................................ 21

3

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) .......................................17

*Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013).................................................................................................................................16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) ..................14

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986) .........................................................................................................................19

*Young v. Rolling in the Dough, Inc.,* No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020).................................................................................................................................14

**STATUTES**

Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*……………………………….. 6

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*..……………………………………….. 6

**RULES**

Fed. R. Civ. P. 23(b)(2) …………………………………………………………………… 7

Fed. R. Civ. P. 23(b)(3) …………………………………………………………………… 7

Fed. R. Civ. P. 23(e)(2) .......................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B)…………………………………………………………………21

## **INTRODUCTION**

After nearly 3 years of litigation, numerous months of negotiations between the Parties with respect to the nonmonetary terms of a consent decree, and subsequent mediations before Magistrate Judge Jonathan E. Hawley with respect to the monetary terms, the Parties have reached an agreement to provide meaningful injunctive relief with compensatory damages for the Class.

Based on extensive analysis of the facts and the applicable law and taking into account the risks and uncertainties associated with litigation and the delays that may result from trial and appeals, as well as the fair, cost-effective and assured method of resolving the potential claims of the Class represented by the proposed Consent Decree, Class Counsel has concluded that the proposed Consent Decree provides substantial benefit to the Class and is fair, reasonable and adequate and in the best interests of the Representative Plaintiffs, the Declarants and the Class. Similarly, the City has concluded that the proposed Consent Decree is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of those with disabilities, to ensure compliance with laws protecting the rights of individuals with mobility disabilities and to resolve potential claims of the Representative Plaintiffs, the Declarants, and the Class.

Balancing the risks against the substantial attendant benefits, the Court should find that the settlement contained in the proposed Consent Decree is fair, adequate and reasonable and enter an Order: (i) granting preliminary approval of the Consent Decree; (ii) approving the form and manner of the Notice Plan and appointing a Settlement Administrator; (iii) establishing deadlines for requests for exclusion and the filing of objections to the proposed settlement contemplated by the Consent Decree; and (iv) scheduling a fairness hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Patricia Berardi; Robert Chriswell; Austin Calloway; Ellen Sunderland; and Lisa Lynch, as the parent and next friend of M.L. (collectively, "Representative Plaintiffs"), are residents, and decedent Alice Rose Mary Ortiz was a resident, of the City of Pekin, Illinois, living with mobility disabilities. Defendants are the City of Pekin, Illinois; its City Manager, Mark Rothert; and its city council members: John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason, and Jim Schramm.

On December 5, 2018, Representative Plaintiffs filed a putative class-action lawsuit, captioned *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH, in the U.S. District Court for the Central District of Illinois, Peoria Division, asserting, *inter alia*, the Defendants' failure to construct or maintain accessible pedestrian rights-of-way throughout the City of Pekin in violation of the Accessibility Laws (as defined therein). (Doc #1). The lawsuit alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, et seq. (*Id.*).

On December 17, 2019, the Parties submitted their initial joint motion to stay proceedings to engage in settlement negotiations. (Doc. #18). Written discovery was exchanged between the parties to help inform them in their subsequent negotiations, and no depositions were taken. Additional joint motions were subsequently filed to continue to stay proceedings as the parties continued settlement negotiations, all of which were granted. (Doc. ##19, 21 & 23). Counsel for the Parties attended a face-to-face meeting on January 23, 2020, at Pekin City Hall to discuss the items of a settlement proposal and since then have engaged in many months, through October 2020, of discussions and negotiations of a potential settlement of the injunctive issues. Thereafter however, settlement negotiations stagnated.

On December 21, 2020, Plaintiffs filed their motion for class certification. (Doc. #27). On February 24, 2021, Plaintiffs filed their First Amended Complaint. (Doc. #34). On April 19, 2021, the lawsuit was certified as hybrid class action lawsuit under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and the Court certified the plaintiff class to include all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe. (Doc. # 47). The Court defined the class claims as whether Defendants have violated Title II of the ADA, and Section 504 of the Rehabilitation Act, by denying class members the benefits of city services, programs, or activities – namely, meaningful access to the Pekin sidewalk system and pedestrian rights-of-way – on the basis of Plaintiffs' and Class Members' mobility disabilities. (*Id.*). The Court further designated the six named plaintiffs as the class representatives and designated the Andrés J. Gallegos and Jennifer M. Sender, with Robbins, Salomon & Patt, Ltd., now known as Robbins DiMonte, Ltd., and Attorney Carl Reardon as class counsel. (*Id.*).

On May 3, 2021, Representative Plaintiffs filed their Memorandum of Proposed Plan for Notice to the Class. (Doc. #48). On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class (Doc. #54). On July 7, 2021, the Parties filed a Joint Motion for Settlement Conference and Stay of Proceedings, (Doc. #55), which the Court approved on July 8, 2021.

Having made significant progress on the terms of the injunctive relief through previous months of negotiations, the Parties engaged in settlement conferences before Magistrate Judge Jonathan E. Hawley on September 13, 2021 and on October 13, 2021, to focus on reaching a

settlement with respect to the monetary relief for the Representative Plaintiffs, the Declarants, and the putative Class Members, as well as reasonable attorneys' fees and expenses. All the while the stay in the proceedings remained in effect. The latter settlement conference resulted in the Parties' reaching a tentative agreement as to monetary terms of a settlement. The mutually agreed-upon terms of the injunctive and monetary relief are memorialized in the Consent Decree.

## THE CONSENT DECREE

The proposed Consent Decree, attached hereto as **Exhibit A**, has the following material terms, and all capitalized terms shall have the meanings ascribed to them in the proposed Consent Decree:

1. **Term.**

The Consent Decree shall become effective on the Effective Date and shall remain in effect until the completion of the City's construction and remediation of the public rights-of-way throughout the City as required therein. The specific Term of the Consent Decree shall be established by the Court upon the City's submission of the completed Updated Transition Plan to the Court.

2. **Injunctive Relief.**

The City shall engage the engineering firm, TWM, Inc., with its principal business address at 4940 Old Collinsville Road, Swansea, IL 62226, to serve as its consultant ("Consultant") during the term of the Consent Decree and to conduct and/or oversee the survey of 100% of all City's sidewalks, crosswalks, curb cuts and other public rights-of-way for purpose of obtaining a comprehensive, detailed, accurate and complete inventory of those elements, identifying which require remediation or installation, updating the City's Transition Plan and setting forth a priority

installation schedule to remediate and or install sidewalks, crosswalks, curb cuts and other public rights-of-way in compliance with Applicable Laws. As a condition precedent to all such surveys, and subsequent installations and upgrade work commencing, if such work will be performed by City-managed contractors or in-house crews, all such personnel shall be trained by the Consultant, or the Consultant shall verify such contractors' and crews' have received adequate training on the requirements of sidewalks, crosswalks, and public rights-of-way under the Accessibility Laws and on the use of the survey instrument.

The survey shall identify: (a) each street that has or does not have a sidewalk; (b) whether the corners of such streets have or do not have Pedestrian Ramps; (c) whether there are crosswalks between corners and the roadway condition of the crosswalks; (d) whether the existing sidewalk is in disrepair; and (e) all obstructions impeding full access on the sidewalk.  The City shall hold at least one public hearing before the issuance of the Updated Transition Plan, seeking input from the community. Class Counsel will provide comments to the Updated Transition Plan as well.

Prioritization for remediation work shall first be given to all sidewalks, crosswalks, and Pedestrian Ramps that the Named Plaintiffs have identified in a schedule to the Consent Decree. The remediation work in that schedule shall commence during calendar year 2022. Thereafter, priority shall be given based upon geographic factors, including, but not be limited to sidewalks, crosswalks and Pedestrian Ramps along streets, within a 1-mile radius: (i) adjacent to where all Representative Plaintiffs reside; (ii) where the concentration of people with Mobility Disabilities, Visual Disabilities, and the senior population reside; (iii) servicing key locations for people with disabilities, such as emergency shelters, hospitals, clinics, and schools; (iv) servicing transit facilities; and (v) servicing public facilities and other places of interest/recreation (*e.g.*, senior services, government sites, child and youth services, libraries and cultural institutions).

Throughout the Term of the Consent Decree, the City shall ensure that all new sidewalks, curb cuts, crosswalks and Pedestrian Ramps that are newly constructed on or after the Effective Date comply with the requirements of all Accessibility Laws. Throughout the Term of the Consent Decree, whenever the City newly constructs or alters sidewalks, curb cuts, crosswalks or Pedestrian Ramps or adjacent construction projects obstruct the pedestrian rights-of-way, the City shall ensure that accessible temporary routes are provided through and around such construction and appropriate signage directing persons with Mobility Disabilities to such accessible temporary routes. The City covenants to the Class Members that it will maintain its sidewalks, crosswalks and Pedestrian Ramps as required by the Accessibility Laws, both during and after the Term so that members of the Class will be able to access them safely and independently. Maintenance will be performed on an ongoing, indefinite, and regular basis as required by the Accessibility Laws. The City covenants to the Class Members that it will routinely inspect sidewalks, crosswalks and Pedestrian Ramps where required and at all corners adjacent to planned Resurfacing, and within the scope of any Alteration or New Construction as defined by the Federal Highway Administration. The City shall require private developers and private utility companies to, *inter alia,* install or Upgrade sidewalks, crosswalks, Pedestrian Ramps, and detectable warning surfaces where required as part of the private developers' and private utility companies' construction projects, consistent with the Accessibility Laws.

The City shall maintain a complaint procedure for members of the public to request Installation or Upgrade of a sidewalk, crosswalk and/or Pedestrian Ramp during and after the Term. The City will record and track all such requests and semiannually (by July 15 and January 15) during the Term provide Class Counsel with copies of such requests. The City will acknowledge receipt of each complaint within 15 days of receiving it and provide an estimated

temporary repair date. The City will provide temporary repairs, as appropriate, consistent with the Accessibility Laws, within 60 days of receiving the complaint, and will provide permanent repairs within the same fiscal year that the complaint is received, and if cannot make those repairs within the fiscal year, those repairs shall be scheduled for completion within the next immediately following fiscal year. Class Counsel throughout the Term of the Consent Decree shall monitor the City's compliance with the Consent Decree.

### 3. Annual Monetary Commitment.

Beginning on the Effective Date, the City shall appropriate a minimum of $250,000 each fiscal year ("Annual Monetary Commitment"), in addition to $1.5 million for the first three fiscal years immediately following the Effective Date, for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and Pedestrian Ramps and all work related thereto. The Annual Monetary Commitment is the minimum amount the City is obligated to appropriate on an annual basis for the construction of sidewalks, curb cuts, crosswalks, and Pedestrian Ramps, including those constructed in connection with the construction and alterations of streets, roadways and highways, remediation of existing sidewalks, curb cuts, crosswalks, and Pedestrian Ramps.

### 4. Monetary Relief.

Subject to the approval of the Court, City agrees to pay to each of the Representative Plaintiffs $10,000 as compensatory damages, an incentive award and as consideration for the release of their claims. Subject to the approval of the Court, City agrees to pay to the 35 Declarants, $800 each, in total, $28,000, as compensatory damages, an incentive award and as consideration for the release of their claims. Subject to the approval of the Court, City agrees to pay the Class Members who have not opted out and have tendered all documents and

11

information to submit a claim as required by the Settlement Administrator, a total of $22,000 as compensatory damages (the "Settlement Fund"). The Settlement Fund shall be allocated and distributed to Class Members, pro rata, but not more than $88.00 each. If there are amounts of the Settlement Fund that are unclaimed after the lapse of all applicable deadlines set forth herein, subject to the Court's approval, the Settlement Administrator shall distribute the remaining Settlement Funds back to the City for immediate use for sidewalk remediation, which amount shall be in addition to the Annual Monetary Commitment.

Subject to the Court's approval, the City agrees that Class Counsel is entitled to its reasonable fees in the amount of $693,000.65 and costs, $44,043.52, incurred in the prosecution of the action. There are no additional fee provisions and there are no "kicker" provisions. The attorneys' fees and expenses are paid separate and apart from the Settlement Fund.

The injunctive relief in the Consent Decree is neither dependent nor condition upon the Court approving the aforementioned payments, nor upon the Court awarding the particular amounts sought.

**5. Notice Plan and Settlement Administrator.**

As set forth in the Notice Plan, **Exhibit B** hereto, the notice program consists of four different components: (1) Direct Notice; (2) Informational Postings; (3) Notice by Publication; and (4) Website Posting. The forms of the notice distributed in the notice program will include a long form and a short form, proposed copies of which are set forth as exhibits to the Notice Plan. The primary form of notice is by direct mail of the long form notice sent to the 41 Representative Plaintiffs and Declarants, to residents of three Pekin Housing Authority rental buildings and seven U.S. Department of Housing and Urban Development-managed rental properties, and to residents of private assisted living and independent living facilities located in Pekin, in addition to other

potential Class Members identified by Class Counsel. As further identified in the Notice Plan, a short form of the notice will be used for informational posting at city, county and state governmental facilities and commercial establishments in the City of Pekin where it is anticipated that Class Members will have the opportunity to view. In addition, the Settlement Administrator shall request that the short form notice shall be posted at various private establishments which, based on information and belief, persons with disabilities frequent. Because there is no reasonable method to identify the residential addresses of all Class Members, the Notice Plan contemplates publication of a notice in *The Journal Star,* a Peoria, Illinois, newspaper which, upon information and belief, has a circulation of 70,000 daily and 100,000 on Sundays. Finally, the Settlement Administrator has established a dedicated webpage at hyperlink: CityofPekinRightofWaySettlement.com as a means for Class Members to obtain notice of and information about the lawsuit. The website will include hyperlinks to the Amended Complaint, Defendants' Answer and Affirmative Defenses, the Court's Order and Opinion on the Plaintiffs' Motion for Class Certification and Defendants' Motion to Dismiss, the Settlement Agreement, the Long-Form Notice, the Short-Form Notice, Exclusion Request Form, the Claim Form and other such documents as the Settlement Administrator, Class Counsel and counsel for Defendants agree to post or that the Court orders be posted on the website.

Subject to the Court's approval, the City shall engage Simpluris, Inc. ("Simpluris"), with its principal place of business at Costa Mesa, California, to serve as the Settlement Administrator for purposes of disseminating the Class Notice, responding to requests to opt out of the Class, processing Claims Form, distributing the settlement awards, managing Class Members' data, providing a website and call center support, and to perform such other responsibilities set forth in the Consent Decree. All costs associated with the Settlement Administrator shall be borne by the

City, separate and apart from the Settlement Fund. Simpluris is a highly experienced and well-regarded third-party administrator who will implement the Court's approved Notice Plan.

**6. Claim Form & Exclusion Request Form.**

In order to receive monetary payment from the Settlement Fund, Class Members must submit a claim form ("Claim Form"), attached as an exhibit to the Notice Plan, by the claims deadline which shall be no later than 90 calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star*. The Claim Form may be submitted online or by U.S. mail.

For online submissions, the Claim Form shall require the Class Member to enter their contact information and mailing address and to select a payment option from four choices: Zell, PayPal, Venmo or physical check mailed to the address provided on the Claim Form. If a Class Member selects one of those electronic payment options they must enter the email address and/or mobile telephone number associated with the selected account. Each Class Member shall also be required to attest under penalty of perjury that he or she is a person with a mobility disability who resided in the City of Pekin from December 11, 2016 through December 11, 2018 and was denied meaningful access to public pedestrian rights-of-way in the City during that timeframe. Proof of residency during that timeframe shall be required. Acceptable forms of proof include property tax bill; housing lease or rental agreement; mortgage document; or utility statement. In addition, proof of identity shall be required. Acceptable forms of proof include a current, unexpired driver's license, photo identification card or passport. The failure to provide the documents requested will result in the denial of the claim. A digital signature shall be required and make the following attestation under penalty of perjury:

> By signing below and submitting this Claim Form, I hereby swear
> under penalty of perjury that I am the person identified above and
> the information provided in this Claim Form is true and correct, and

14

that nobody has submitted another claim in connection with this Settlement on my behalf.

Class Members may also submit the paper Claim Form by mail. The paper Claim Form asks the Class Member to provide the same information as required above. The Claim Form identifies the no later than date the Claim Form must be postmarked.

Class Members desiring to opt-out of the settlement will be required to complete and execute an Exclusion Request Form attached as an exhibit to the Notice Plan. The opt-out period shall also be 90 calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star.*

### 7. Release.

In exchange for the relief afforded in the Consent Decree, the Defendants[1] will receive a release of all Released Claims.[2] The release is narrowly tailored to claims that could be asserted in the class action litigation.

## **ARGUMENT**

### A. The Settlement set forth in the Consent Decree well surpasses the Seventh Circuit's standards for the approval of class action settlements.

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements—particularly in class actions and other complex matters where the inherent costs,

---

[1] Including the name the Defendants and its and their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on its and their behalf. Consent Decree, §18.

[2] "[A]ny and all causes of action, claims, rights, damages, punitive, or statutory damages, penalties, liabilities, expenses and losses, and issues, that any of the Plaintiffs have or could have made against the Defendants in the Class Action, under any claims under federal, state, or local law, rule, or regulation." Consent Decree, §18.

delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases).

The proposed Settlement resulting from honest arm's-length negotiations by otherwise vigorous adversaries who are competent, experienced counsel, provides Class Members with monetary relief, but more importantly, substantial injunctive relief while at the same time mitigating the risk of protracted litigation and/or a negative outcome that would preclude any recovery whatsoever for the Class. The terms of the injunctive relief were first extensively negotiated by the Parties prior to any negotiations relating to the monetary terms.

**B. The Settlement should be preliminarily approved.**

Federal Rule of Civil Procedure 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Young v. Rolling in the Dough, Inc.,* No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). At the preliminary approval stage, the district court should assess whether the proposed settlement

falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id*.

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (*quoting Isby*, 75 F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable, and adequate: (a) the strength of the plaintiff's case compared to the amount of the settlement offer; (b) the length, complexity, and expense of further litigation; (c) the opinion of competent counsel; and (d) the stage of the proceedings and amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these factors weighs in favor of finding the proposed settlement fair, reasonable, and adequate, warranting its preliminary approval.

1.  **The Settlement provide substantial relief to the Class, particularly given the risk posed by continued litigation.**

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement

17

is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The settlement provides significant injunctive relief for the Plaintiffs, relief that the individual Class Members likely would not be able to obtain on their own if they brought individual actions as it requires the City to appropriate a minimum of $250,000 (the "Annual Monetary Commitment") for each year of the Term to remediate all identified deficiencies in sidewalks, curb cuts, crosswalks, and other public rights-of-way no later than the end of the City's 2026 fiscal year. In addition, the City shall appropriate $1.5 million for the first three fiscal years immediately following the Effective Date, for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and Pedestrian Ramps and all work related thereto. The Annual Monetary Commitment is the minimum amount the City is obligated to appropriate on an annual basis for the construction of sidewalks, curb cuts, crosswalks, and Pedestrian Ramps, including those constructed in connection with the construction and alterations of streets, roadways and highways, remediation of existing sidewalks, curb cuts, crosswalks, and Pedestrian Ramps.

There are significant risks in continuing with litigation. The Representative Plaintiffs believe in the strength of their claims asserted against the Defendants, however, the Defendants did raise an undue financial burden affirmative defense, which if it can be proven, could potentially limit the scope of both the injunctive and monetary relief and could considerably lengthen the number of years in which the City would have an obligation to remediate its public rights-of-way. Thus, continued litigation poses a significant risk of a much narrower scope of recovery than what has been negotiated by the Parties. Moreover, before the current term of the United States Supreme Court was the issue of whether compensatory damages that are available under Title VII of the Civil Rights Act of 1964 and the statutes that incorporate its remedies, like the Rehabilitation Act

18

of 1973, include compensation for emotional distress. *See Cummings v. Premier Rehab Keller, P.L.L.C.,* 141 S. Ct. 659, 208 L. Ed. 2d 269 (2020). On April 28, 2022, the United States Supreme Court held emotional distress damages are not recoverable in private actions to enforce the anti-discrimination provisions under the Rehabilitation Act of 1973. *Id.*, 142 S. Ct. 1562 (2022). Thus, compensatory damages are only available for the Representative Plaintiffs and those members of the Class that can prove physical damage to their respective mobility devices or personal injuries as a result of the City's acts and omissions relating to its pedestrian rights-of-way, a significant fact that favors approval of the settlement. *See, In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Having to demonstrate physical damage to their respective mobility devices or physical injuries sustained would require individual inquiries which would considerably lengthen the trial and add significantly to its expense.

While the Representative Plaintiffs maintain that Defendants have more to lose at trial and face more risks, warranting the material injunctive and monetary recovery the Representative Plaintiffs have achieved in this proposed settlement, but nonetheless acknowledge that the settlement now reduces risk to themselves and the Class Members.

### 2.   Further litigation will be protracted and expensive.

Preliminary approval is also favored because "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As explained above, there is significant risk that even if the Plaintiffs prevail in their claims that the scope of relief obtained through litigation may be significantly less than what the Parties have now negotiated.

19

Continued litigation would be lengthy, very expensive and involve extensive motion practice, including motions for summary judgment in various pretrial motions, as well as extensive fact and expert discovery including the preparation of expert reports, expert depositions and *Daubert* motions. While still very early in the discovery process, combined, Class Counsel have invested over 1,800 hours in this litigation thus far, with fees in excess of $800,000. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). Continuing with litigation, going through trial, Class Counsel estimates that the fees will likely exceed twice the amount incurred thus far.

In addition, the case will likely not be ready for trial until late 2024. Representative Plaintiffs have identified over 15 former and current city officials, third-party auditors, and others whose depositions will be taken. The City will require taking the depositions of the six Representative Plaintiffs, and likely the 35 Declarants. And then there are experts whose depositions will be required. Even if the Class recovered judgment at trial in excess of the amounts negotiated here, there is the risk of the City filing posttrial motions and an appeal that would deprive the Class of recovery for years, and possibly forever in the event of a reversal.

Representative Plaintiffs have achieved a substantial and meaningful relief for the entire Class in the very early stages of this litigation. The City has agreed to an enormous undertaking to address public rights-of-way throughout the entirety of the City. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) ("the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate and reasonable when the calculation of the value of the case took into account the time value of money).

### 3. Class Counsel are competent, well-informed, and experienced in a strongly endorse the Settlement.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon declarations submitted by class counsel as well as its own observations of class counsel during the litigation. *Id*. This Court appointed Mr. Gallegos, Ms. Sender, and Mr. Reardon as Class Counsel in recognition of their significant experience in civil rights cases, complex litigation, and good judgment. Each of these attorneys can attest that the negotiations were difficult and complex, and like any settlement, involved concessions on both sides that were necessary to make a final agreement possible. Each of the Class Counsel unanimously endorse the settlement and strongly recommended its approval. *See* **Exhibits C – E** hereto, Declarations of Attorneys Gallegos, Sender, and Reardon, respectively.

Accordingly, the third *Isby* factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### 4. Settlement was reached in the early stages of the proceedings with minimal but meaningful discovery completed.

The last *Isby* factor concerns the stage of the proceedings and the amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor "indicates

how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

The proposed settlement was reached after nearly 3 years of litigation, and it is informed by Class Counsel's investigation and its expert's analysis of the conditions of the City's public rights-of-way. Armed with this information, Representative Plaintiffs and their counsel had "a clear view of the strength and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable and adequate settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986).

Mediation before Magistrate Judge Hawley was also hard-fought. The parties engaged in two rounds of mediation, 30 days apart, to reach a monetary settlement, having previously agreed on the overwhelming majority of the terms of the injunctive relief. That settlement was only possible because of Class Counsels' in-depth analysis of what would be required of the City to comply with its federal nondiscrimination mandates public rights-of-way and their fully informed factual background of the issues gleaned in discovery.

While no depositions have yet to be taken, written discovery has been exchanged and has been extensive. In addition, Class Counsel conducted extensive informational investigations in the City, meeting with putative class members to learn of their experiences, obtained declarations from over 40 putative class members in support of its motion for class certification, surveyed portions of the City's public rights-of-way on its own and analyzed results of its engineering expert's survey and assessment of the conditions of the City's public rights-of-way. Accordingly, Class Counsel confirms that the settlement achieved and well surpassed all tests for fairness, reasonableness, and adequacy.

As the Settlement is "the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced," the Court may presume the settlement to be fair, adequate, and reasonable. H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002).[3]

Accordingly, the final factor weighs in favor of finding the Settlement embodied in the Consent Decree as fair, reasonable and adequate. A draft proposed form of the Preliminary Order Approving the Class Action Settlement is attached hereto as **Exhibit F** hereto.

C. **The proposed class notice plan provides the best practicable notice and does so in an easily understood format and is nearly identical to the notice plan previously approved by the Court.**

---

[3] *See also, e.g., Fox v. Asset Acceptance, LLC*, No. CV 14-734-GW(FFMx), 2015 U.S. Dist. LEXIS 193865, at *23 (C.D. Cal. Aug. 17, 2015) ("At this point, the parties have participated in multiple mediations and Plaintiff has conducted additional confirmatory discovery — before reaching this Settlement. . . . Such discovery supports a finding of fairness."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490, at *17-18 (S.D. Cal. Dec. 15, 2011) (Finding settlement fair, reasonable, and adequate when reached upon "only . . . limited confirmatory discovery" because the parties determined they had exchanged sufficient information to make an informed decision; the parties' counsel were well versed in class action litigation and the subject matter underlying the case; and the disputed issues were legal, not factual, such that extensive discovery may not have been required.); *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, at *14-15 (S.D. Cal. Oct. 13, 2016) (The "time and effort" associated with post-settlement and post-mediation negotiations, confirmatory discovery, and informal discovery "militate in favor or preliminary approval."); *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091 (VAB), 2019 U.S. Dist. LEXIS 96742, at *59-61 (D. Conn. June 10, 2019) (Finding plaintiffs "gained a sufficient understanding of their case such that they have had an opportunity to evaluate the strengths and weaknesses of their claims as well as the adequacy of settlement" even though "Class Counsel only completed informal and confirmatory discovery and had not yet adjudicated pending motions to dismiss. . . ."); *In re Nissan Radiator*, No. 10 CV 7493 (VB), 2013 U.S. Dist. LEXIS 116720, at *13-14 (S.D.N.Y. May 30, 2013) ("[T]he settlement agreement is the product of extensive, arm's-length negotiations by parties represented by experienced and talented counsel with expertise in these types of cases. Additionally, although settlement was reached before extensive merits discovery, plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement. . . . Therefore, the Court believes the settlement is the result of serious, informed, and non-collusive negotiations.").

Fed. R. Civ. P. 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." While actual individual notice may be the ideal, due process does not always require it. See *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) (rejecting requirement of individual notice); *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases); accord, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class [Doc. #54]. On July 7, 2021, the Parties filed a Joint Motion for Settlement Conference and Stay of Proceedings, (Doc. #55), which the Court approved on July 8, 2021, and therefore that approved Plan for Notice to the Class was not effectuated.

As set forth in Representative Plaintiffs' Memorandum of Proposed Plan of Notice, filed contemporaneously herewith, the Notice Plan is nearly identical to that previously approved by the Court, with the exception of Simpluris ("Simpluris"), a California-based corporate third-party claims administrator, will act as the Settlement Administrator responsible for implementing the four components of the Notice Plan: (1) direct notice to all reasonably identifiable Class Members; (2) notice by publication; (3) informational postings; and (4) website posting. In addition, Simpluris shall administer the settlement fund and process all claims submitted by the Class Members.

24

Accordingly, Representative Plaintiffs respectfully request that the proposed Notice Plan be approved, together with the Class Notices and Claim Form.

**D.  The Court should schedule a fairness hearing to finally approve the settlement.**

Finally, the last step in the settlement approval process after completion of the Notice Program will be a Final Approval Hearing to consider fairness, reasonableness, and adequacy of the proposed Consent Decree, and to determine the reasonableness of the requested attorneys' fee, expense and service awards. Representative Plaintiffs, contemporaneously herewith, have submitted a proposed order containing a proposed schedule of events for the Court's consideration before the hearing on the instant motion. A draft proposed form of the Final Order Approving the Class Action Settlement is attached hereto as **Exhibit G** hereto.

## <u>CONCLUSION</u>

For the foregoing reasons, Representative Plaintiffs and the Defendants respectfully request that the Court grant this joint motion in its entirety and enter an order (i) granting preliminary approval of the Consent Decree; (ii) appointing Simpluris, Inc. as the Settlement Administrator; (iii) approving the Notice Plan and the forms identified therein; (iv) scheduling a fairness hearing; (v) establishing deadlines for the filing of objections to the proposed settlement contemplated by the Consent Decree and requests for exclusion; and (vi) establishing a schedule for the performance of certain actions contemplated herein.

Dated: June 13, 2022                              Respectfully Submitted,


                                                  By: /s/ Jennifer M. Sender
                                                  Jennifer M. Sender (ARDC No. 6207774)
                                                  Andrés J. Gallegos (ARDC No. 6212168)
                                                  Class Counsel
                                                  Robbins DiMonte, Ltd.
                                                  180 N. LaSalle Street, Suite 3300

Chicago, IL 60601
Phone: (312) 782-9000
Fax: (312) 782-6690
jsender@robbinsdimonte.com
agallegos@robbinsdimonte.com

Dated: June 13, 2022                    /s/ Carl F. Reardon
                                        Carl F. Reardon (ARDC No. 2295725)
                                        Class Counsel
                                        120 Illini Dr.
                                        East Peoria, IL 61611
                                        (309) 699-6767
                                        carlreardon@comcast.net

Dated: June 13, 2022                    /s/ K. Austin Zimmer
                                        K. Austin Zimmer
                                        Counsel for the Defendants
                                        Del Galdo Law Group, LLC
                                        1441 S. Harlem Avenue
                                        Berwyn, Illinois   60402
                                        (708) 222-7000 - telephone
                                        (708) 222-7001 - facsimile
                                        zimmer@dlglawgroup.com

**Exhibit A - Consent Decree**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz, Austin Calloway, Ellen Sunderland, and Lisa Lynch, as the parent and next friend of M.L., a minor child, individually on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>City of Pekin, Illinois, a municipal corporation; Mark Luft, not individually, but in his official capacity as Mayor for the City of Pekin,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:18-cv-01438 |

## CLASS ACTION CONSENT DECREE

This Class Action Consent Decree ("Consent Decree") is made and entered into by and between the City of Pekin, Illinois (the "City"), Mark Luft, not individually, but in his official capacities as Mayor for the City of Pekin ("Mayor Luft") and Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, as the parent and next friend of M.L., a minor child (collectively, "Representative Plaintiffs"), individually on behalf of themselves and all Class Members (as defined herein). The City, Mayor Luft and the Representative Plaintiffs are referred to herein, individually as a "Party" and collectively as the "Parties."

1

## Contents

I.   RECITALS ....................................................................................................5

II.  AGREEMENT ..............................................................................................6

1.   Definitions ...................................................................................................6

2.   Term of Consent Decree ...........................................................................16

3.   Transition Plan Update .............................................................................17

4.   Surveys of the City's Streets and Pedestrian Ramps ................................19

5.   Installation and Upgrade of Sidewalks, Crosswalks and Pedestrian Ramps Schedule; Use of Contractors or In-house Crews; Training of In-house Crews; Annual Monetary Commitment; Schedule and Completion Date Adjustments ...................................23

6.   City's Covenants – Installation, Maintenance of Sidewalks, Crosswalks and Pedestrian Ramps ..........................................................................................................28

7.   Sidewalk, Crosswalk and Pedestrian Ramp Complaint Program .............31

8.   Equivalent Facilitation ..............................................................................32

9.   Policies & Procedures; Training ...............................................................32

10.  Reporting of Progress ...............................................................................33

11.  Monitoring Compliance ............................................................................34

12.  Compensation to Representative Plaintiffs, Declarants and Class Members ...............35

13.  Settlement Administrator and Settlement Notice to Class Members. ..........................36

14.  Class Counsels' Fees and Expenses ..........................................................38

15.  Conflict Resolution Process. .....................................................................39

16.  Court Approval and Effective Date ...........................................................40

17.  No Admission of Wrongdoing. ..................................................................44

18.  Releases. ....................................................................................................45

19.  Privacy of Documents and Information. ....................................................45

20.  Limitation on Public Statements About Settlement. ..................................45

2

**21.  Confidentiality.** ........................................................................................................46

**22.  Termination.** ...........................................................................................................46

**23.  Entire Agreement; Binding Effect.** .......................................................................46

**24.  Interpretation.** ........................................................................................................46

**25.  Governing Law and Choice of Forum.** ..................................................................47

**26.  Dismissal Without Prejudice; Continuing Jurisdiction.** .......................................47

**27.  Authority; City Council Approval.** ......................................................................47

**28.  Force Majeure.** .......................................................................................................48

**29.  Notices.** ..................................................................................................................48

**30.  Counterparts.** .........................................................................................................49

**31.  Drafting this Consent Decree.** ..............................................................................49

**32.  Voluntary Agreement.** ...........................................................................................49

**33.  Counterparts.** .........................................................................................................50

[Signatures Appear on the Following Page]................................................................50

## SCHEDULE & EXHIBITS

### Schedule

**4.1.7   Class Identified Priority Remediation**

### Exhibits

A      **Claim Form**
B      **Class Notice**
C      **Joint Motion for Preliminary Approval & Notice Distribution Plan**
D      **Preliminary Approval Order**
E      **Final Approval Order**

**[This Page Intentionally Left Blank]**

## I.    RECITALS

**WHEREAS,** on December 5, 2018, Representative Plaintiffs filed a class-action lawsuit, captioned *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH, in the U.S. District Court for the Central District of Illinois, Peoria Division, asserting, *inter alia*, the Defendants' failure to construct or maintain accessible pedestrian rights-of-way throughout the City of Pekin in violation of the Accessibility Laws (as defined herein);

**WHEREAS,** on April 19, 2021, the lawsuit was certified as hybrid class action lawsuit under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and the Court certified the plaintiff class to include all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe;

**WHEREAS,** the parties believe it is in their respective best interests to avoid additional expense in further prosecuting and defending the lawsuit to enter into this definitive stipulation of settlement to settle all claims asserted in the class action lawsuit and to provide further the relief contained herein;

**WHEREAS,** the City does not admit and specifically denies, that it has violated or failed to comply with or has any liability to the Representative Plaintiffs or the Class Members under any provisions of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973 or any applicable laws of the state of Illinois relating to the accessibility of the pedestrian rights-of-way for persons with mobility disabilities, any regulations or guidelines promulgated pursuant to those statutes, or any applicable laws, regulations or legal requirements. Neither this Consent Decree, nor any of its terms of provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by the City of Pekin. This Consent Decree and

its terms and provisions shall not be offered or received as evidence of any purpose whatsoever against the City in any action or proceeding, other than a proceeding to enforce the terms of this Consent Decree;

**WHEREAS,** based on extensive analysis of the facts and the applicable law in taking into account the risks and uncertainties associated with litigation and the delays that may result from trial and appeals, as well as the fair, cost-effective and assured method of resolving the potential claims of the Class represented by this Consent Decree, Class Counsel has concluded that this Consent Decree provide substantial benefit to the Class and is fair, reasonable and adequate and in the best interest of the Plaintiffs and the Class;

**WHEREAS,** the City has similarly concluded that this Consent Decree is desirable to avoid the time, risk and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of those with disabilities, to ensure compliance with laws protecting the rights of individuals with mobility disabilities and to resolve potential claims of the Plaintiffs and the Class; and

**WHEREAS,** this Consent Decree will be submitted to the United States District Court for the Central District of Illinois, Peoria Division, for preliminary and final approval under Rule 23 of the Federal Rules of Civil Procedure, as described below.

## II.    AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing, the promises and covenants contained herein and for such other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree, subject to the Court's approval, the class-lawsuit shall be fully and completely settled according to the following terms and conditions:

### 1.    Definitions

For purposes of this Consent Decree, the following terms of the following definitions:

1.1    "2013 DOJ/DOT Alteration Guidance" means the 2013 Department of Justice/Department of Transportation Joint Technical Assistance and the Title II of the Americans with Disabilities Act Requirements to Provide Curb Ramps when Streets, Roads or Highways are Altered through Resurfacing, available at: DOJ/DOT on Requirements to Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing (ada.gov)

1.2    "Accessibility Laws" means all state and federal accessibility laws, regulations and related guidelines requiring, promoting, and/or encouraging equal or improved access to persons with disabilities, including, without limitation, the following: (1) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), as may be amended hereafter, and all of its implementing regulations and technical requirements which are existing and current at the time of any sidewalk, crosswalk or Pedestrian Ramp Installation or Upgrade (as defined below); and (2) the Rehabilitation Act of 1973, 29 U.S.C. §§ 790, *et seq*., as may be amended hereafter and all of its implementing regulations and design standards. "Accessibility Laws" shall also mean any successor laws to the ADA and/or the Rehabilitation Act of 1973.

1.3    "Alteration" or "alterations" means an "alteration," as defined in the Accessibility Laws, to the public right of way, that affects or could affect pedestrian access. This includes, without limitation, any resurfacing, repaving, reconstruction, or widening of any streets, as described in the "U.S. Department of Justice/U.S. Department of Transportation Joint Technical Assistance on the "U.S. Department of Justice/U.S. Department of Transportation Joint Technical Assistance on the Title II of the Americans with Disabilities Act Requirements to Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing" found at https://www.ada.gov/ta_titleii.html.

1.4    "City" means the City of Pekin, an Illinois municipal corporation and the county

7

seat of Tazewell County in the state of Illinois.

1.5     "Claim Deadline/Claims Period" means the time period during which a Class Member may submit a claim form, which is the period beginning when the settlement administrator mailed the notice and ending 90 Days later.

1.6     "Claim Form" refers to the form by which Class Members seek benefits under this Consent Decree, substantially in the form as is attached as Exhibit A to this Consent Decree.

1.7     "Claimant" means a Class Member who has submitted a Claim Form.

1.8     "Class," or "Class Member(s)" means all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe, as certified by United States Senior District Judge Joe Billy McDade on April 19, 2021.

1.9     "Class Counsel" means, collectively, the law firms of Robbins DiMonte, Ltd., formerly known as Robbins, Salomon & Patt, Ltd. and Carl F. Reardon, Esq., as approved by the Court.

1.10     "Class Notice" means the notice of the proposed settlement to be provided to the Class Members substantially in the form as is attached as Exhibit B to this Consent Decree.

1.11     "Class Representatives" or "Representative Plaintiffs" means Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz, Austin Callaway, Ellen Sunderland, and Lisa Lynch as the parent and next friend of M.L., a minor child, collectively.

1.12     "Complaint" means a request made by persons with mobility disabilities, persons who are Blind or with vision disabilities, and their representatives, for Installation or Upgrade of a sidewalk, crosswalk, Pedestrian Ramp or ramps at a specified corner, or removal of barriers

thereon.

1.13    "Complex Corner" means a corner for which a unique design drawing must be prepared in order to install or Upgrade a Pedestrian Ramp(s) at that corner, due to an unusual site condition that makes it "technically infeasible" within the meaning of the Accessibility Laws governing alterations, or "structurally impracticable" within the meaning of the Accessibility Laws governing new construction, to make the corner readily accessible to and usable by the Class Members. Complex Corners subject to the Accessibility Laws governing new construction must be made readily accessible to and usable by the Class Members to the extent not "structurally impracticable" within the meaning of the Accessibility Laws. Complex Corners subject to the Accessibility Laws governing alterations must be made readily accessible to and usable by the Class Members "to the maximum extent feasible" within the meaning of the Accessibility Laws.

1.14    "Conflict" or "Conflicts" means any disagreement relating to any alleged violation of or alleged failure to perform any of the provisions of the Consent Decree and/or conflicts between the Parties concerning the interpretation, implementation, monitoring, compliance, and any subsequent modification of the Consent Decree. All Conflicts will be resolved using the Conflict Resolution Procedure outlined in Section 15 of the Consent Decree.

1.15    "Consent Decree" means this Agreement, including any permitted and executed amendments and exhibits hereto, subject to the Court's approval.

1.16    "Consultant" or "Transition Plan Consultant" means TWM, Inc., with its principal business address at 4940 Old Collinsville Road, Swansea, IL 62226, or a successor entity chosen pursuant to Section 16 below.

1.17    "Court" or "District Court" means the U.S. District Court for the Central District of Illinois, Peoria Division.

1.18    "Day" or "Days" means calendar days unless stated otherwise.

1.19    "Declarants" shall mean those 35 individuals with Mobility Disabilities who completed declarations in support of Plaintiffs' motion for class certification.

1.20    "Defendants" means the City of Pekin, Illinois, and Mark Luft, in his official capacity as Mayor for the City of Pekin.

1.21    "Defendants' Counsel" means Del Galdo Law Group, LLC.

1.22    "Department of Public Works" or "DOPW" means the Pekin Department of Public Works.

1.23    "Effective Date" means the date upon which the Settlement shall become effective and as is further defined in Section 17.3 below.

1.24    "Fairness Hearing" means the hearing to be held by the District Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to determine whether the settlement terms set forth in this Consent Decree are fair, reasonable and adequate and whether the settlement should be finally approved.

1.25    "FHWA Guide for Maintaining Pedestrian Facilities for Enhanced Safety" means the current guide published by the US Department of Transportation Federal Highway Administration,                          available                          at: https://safety.fhwa.dot.gov/ped_bike/tools_solve/fhwasa13037/index.cfm#toc

1.26    "Final" as applied to the term "Judgment," (as defined below), means that (i) the time for appeal or writ has expired and no appeal or petition for review has been taken, or (ii) if an appeal or petition for review is taken and the settlement set forth in the Consent Decree has been affirmed in full, the time period during which any further appeal or review can be sought (including through any appeal, petition for review, writ of certiorari or otherwise) has expired and no such

further appeal or review has been sought. In the event that no objections to the Consent Decree are raised prior to or at the Fairness Hearing, that any objections that have been raised have been fully and formally withdrawn, or that no viable objections otherwise exist at the time of the Fairness Hearing, the Judgment will become "final" as of the District Court's issuance of the Judgment. If the Judgment is set aside, materially modified, disapproved or overturned by any court, and is not fully reinstated on further appeal or review, the Judgment will not become or be "final."

1.27    "Final Approval Order" means the order by the District Court, a draft of which is attached hereto as Exhibit E, after notice and the holding of the Fairness Hearing, granting approval of the Consent Decree under Rule 23(a) of the Federal Rules of Civil Procedure. The hearing at which such final approval is considered or granted, should a hearing be held, will be called the "final approval hearing."

1.28    "Fiscal Year" ("FY") means the accounting period on which a budget is based. The City's Fiscal Year commences on May l and ends on April 30.

1.29    "Force Majeure Event" means the occurrence of one or more of the following: acts of God, such as severe acts of nature or weather events including floods, fires, earthquakes, hurricanes or explosions; war, acts of terrorism, and epidemic; acts of governmental authorities such as expropriation, condemnation, and changes in laws and regulations; strikes and labor disputes; and shortage of supplies and materials.

1.30    "Hazardous" or "Hazard" shall mean with respect to vertical surface discontinuities, any discontinuities in excess of 13 mm (0.5 inches); for horizontal openings, openings in gratings and joints with a sphere of more than 13 mm (0.5 inches) in diameter; and flangeway gaps at pedestrian at-grade rail crossings in excess of 64 mm (2.5 inches) on non-freight rail track and in excess of 75 mm (3 inches) maximum on freight rail track, all as set forth in the current version of

11

the US Access Board's Public Right of Way Accessibility Guidelines ("PROWAG"). "Hazardous"

shall also mean any other condition beyond displacements such as cross slope grades exceeding

the maximum percentage of slope set forth in PROWAG, conditions that may serve as a tripping

hazard (*e.g.,* cracks, holes, damaged surfaces, objects protruding into the walkways); protruding

objects that are hazardous for pedestrians, especially those who are blind or have low vision, and

protrusions that limit the clear width of pedestrian access routes, such as planters, signs, posts,

parking meters, bicycle racks, trash receptacles, mailboxes, etc.; and surfaces that are not firm or

stable are not slip resistant.

  1.31 "Installation" or "Install" means, as applicable, the construction, in whole or in part,

of a sidewalk, Pedestrian Ramp, street, alley or other pedestrian right-of-way.

  1.32 "Judgment" means the order and judgment entered by the District Court in the

Central District of Illinois, Peoria Division in *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-

cv- 01438–JBM–JEH, substantially in the form of as attached hereto as Exhibit E, that, among

other things, fully approves the terms of the Consent Decree, and retains the District Court's

jurisdiction to enforce the Consent Decree throughout the Term, for the purpose of, *inter alia*,

determining attorneys' fees and costs.

  1.33 "Lawsuit" means the class action complaint filed on December 5, 2018, captioned

as *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH, pending in the U.S.

District Court for the Central District of Illinois, Peoria Division.

  1.34 "Maintenance" means maintaining the City's sidewalks, curb ramps, crosswalks

and Pedestrian Ramps, which includes snow and ice removal, to ensure their safe condition and

compliance with all applicable Accessibility Laws and as required herein.

  1.35 "Mobility Disability" or "mobility disabilities" means any impairment or medical

condition that limits a person's ability to walk, ambulate, maneuver around objects, or to ascend or descend steps or slopes. A person with a mobility disability may or may not use a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist her or his navigation along sidewalks and streets or may be semi-ambulatory.

1.36    "Monitor" means the Class Counsel.

1.37    "New Construction" means "new construction" as defined in the Accessibility Laws to or on any street or corner.

1.38    "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Class Member must file or serve written objections, if any, to the Settlement in accordance with Section 13.3 of this Consent Decree.

1.39    "Opt-out/Exclusion Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Class Member must file or serve written requests for exclusion, if any, to the Settlement in accordance with Section 13.2 of the Consent Decree.

1.40    "Party" means either the Plaintiffs, inclusive of the Class Members, or the Defendants; collectively, "Parties."

1.41    "Pedestrian Ramp" means any ramp, cut, or slope where a pedestrian walkway crosses a curb that is, in whole or in part, owned, controlled or maintained by or otherwise within the responsibility of the City.

1.42    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and the notice distribution plan to the Class, Exhibit E hereto.

1.43    "Public Right of Way Accessibility Guidelines" or "PROWAG," means the guidelines established by the U.S. Access Board regarding public rights-of-way, found at

13

https://www.access-board.gov/guidelines-and-standards/streets-sidewalks/public-  rights-of-way. The most current version of PROWAG shall be utilized at the time an action requiring use of PROWAG is undertaken.

1.44    "Qualified" means possessing all the required licenses, certifications, education, training, background and experience necessary to perform the services or work contemplated.

1.45    "Released Claims" means the claims against the Defendants that the Plaintiffs shall release consisting of all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either the Plaintiffs have, or may have had, against the Defendants, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from the Class Action and any claims under federal, state or local law, rule, or regulation.

1.46    "Released Parties" means the Defendants, together with each of its and their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on its and their behalf.

1.47    "Releasing Persons" means the Class Representatives, all Class Members who do not properly or timely opt out of the Settlement, and their respective family members, heirs, administrators, successors, and assigns.

1.48    "Request for Exclusion" means a request by a Class Member to be excluded from the class that meets all of the requirements for exclusion as set out in this Consent Decree, the

14

Class Notice, and as ordered by the Court.

1.49    "Resurfacing" means an Alteration that involves work on a roadway spanning from one intersection to another, which includes overlays of additional material to the road surface, with or without milling, consistent with the July 8, 2013 "U.S. Department of Justice/U.S. Department of Transportation Joint Technical Assistance on the Title II Requirements to Provide Curb Ramps When Street Roads or Highways are Altered Through Resurfacing", and the Supplement thereto dated December 1, 2015.

1.50    "Settlement" means the settlement contemplated by this Consent Decree.

1.51    "Settlement Administrator" means Simpluris, 3194-C Airport Loop Drive, Costa Mesa, CA 92626.

1.52    "Settlement Fund" means the funds that Defendants will distribute under the terms of this Settlement in accordance with Section 12, below.

1.53    "Standard Corner" means any corner that does not require a unique design drawing to be prepared for that location in order to install or Upgrade a Pedestrian Ramp or Pedestrian Ramps at that corner. Each corner will be considered to be a Standard corner unless it is expressly designated as a Complex Corner.

1.54    "Standard design drawing" or "Standard design drawings" means the engineering standard design drawings prepared by the City to comport with the Accessibility Laws in order to provide guidance for engineers, contractors and/or developers in connection with the Installation or Upgrade of sidewalks, crosswalks and Pedestrian Ramps at Standard Corners.

1.55    "Survey" or "Surveys" means the collection of photographs and detailed data concerning crosswalks, sidewalks, corners and Pedestrian Ramps in the City and assessment of that data to determine the extent to which the sidewalks, corners and Pedestrian Ramps comply

with the Accessibility Laws, subject to the terms of the Consent Decree.

1.56   "Target Installation Schedule" means a written schedule included as an exhibit to the Updated Transition Plan that identifies the target dates for the completion of the Upgrades of sidewalks, Pedestrian Ramps, and/or other pedestrian right-of-way and the program for ongoing Pedestrian Ramp inspection and Maintenance as set forth in Sections 3, 4 & 5, below.  The Target Installation Schedule shall also identify priority locations for such work.

1.57   "Term" means the term of the Consent Decree, as set forth in Section 2 below.

1.58   "Transition Plan" means the transition plan the City prepared pursuant to 28 C.F.R. § 35.150(d)(2), dated July 9, 1992, to come into compliance with the ADA, and subsequently updated, on or about January 26, 1995, and in 2016.

1.59   "Updated Transition Plan" means the Transition Plan outlining the City's sidewalk and Pedestrian Ramp plan that the Consultant will complete, pursuant to the terms of Section 3 of the Consent Decree and 28 C.F.R. § 35.150(d)(2).

1.60   "Upgrade" or "Upgrades" means a repair, replacement, or other improvement to one or more elements of an existing sidewalk Pedestrian Ramp, or other pedestrian right-of- way, which will bring the sidewalk, Pedestrian Ramp or other pedestrian right-of-way into compliance with the Accessibility Laws.

1.61   "Website" means the publicly accessible website used by the City.

1.62   "WCAG" means version 2.0 levels A and AA of the "Web Content Accessibility Guidelines" published by the Web Accessibility Initiative (WAI) of the World Wide Web consortium (w3c), or any subsequent version(s) or technologies that are adopted during the Term.

## 2.   Term of Consent Decree

16

2.1     Term.   The Consent Decree shall become effective on the Effective Date. Upon the Consultant's completion of the Updated Transition Plan, as required in Section 3.1 below, the City shall tender the Updated Transition Plan to the Court, which shall determine the duration of the Consent Decree. The "Term" of the Consent Decree is defined as commencing upon the Effective Date an ending upon the date to be established by the Court. The Term may be extended by the occurrence of a Force Majeure Event upon notice to the Court.

2.2     Scope. The scope of the Consent Decree shall cover all of the work required to be completed as contained in the Updated Transition Plan, which, pursuant to Section 3.1 below, the City shall cause the Consultant to create within 18-months from the Effective Date. The additional work (not previously contained in the Updated Transition Plan), if any, that may be identified in any subsequent updates to the Updated Transition Plan shall be excluded from the scope of this Consent Decree. No subsequent updates to the Updated Transition Plan shall extend the Term of the Consent Decree without the Court's approval, and no work identified in the Updated Transition Plan shall be deferred beyond the Term without the Court's approval.

2.3     Disputes. If Class Counsel disputes that the construction or remediation required under this Consent Decree has been completed, this Consent Decree shall remain in effect pending the conclusion of any dispute resolution proceedings or action to enforce the Consent Decree.

**3.     Transition Plan Update**

3.1     Creation of an Updated Transition Plan. Within 18-months from the date of the final approval of this Consent Decree, the City shall cause the Consultant to create an Updated Transition Plan incorporating the Consultant's assessment of the compliance of each sidewalk, crosswalk, Pedestrian Ramp and other pedestrian right-of-way with the Accessibility Laws, and

17

which will identify streets requiring sidewalk Installation and/or Upgrade; corners that need Pedestrian Ramp Installation or Upgrades, including the prioritization criteria or methodology of sidewalks and/or Pedestrian Ramp Installation or Upgrades at Standard Corners and Complex Corners; pedestrian right-of-way requiring Upgrades; and identification of all bus stops. Additionally, the Updated Transition Plan will identify the schedule and Upgrades of sidewalks, crosswalks, Pedestrian Ramps, and/or other pedestrian right-of-way and the program for ongoing Pedestrian Ramp inspection and Maintenance as set forth in Sections 5, 6 & 7, below. The City shall also cause the Consultant to complete the Target Installation Schedule. The Updated Transition Plan and Target Installation Schedule shall be submitted to the City Council for formal adoption. The Updated Transition Plan and the Target Installation Schedule will be shared with the public throughout the Term hereof via the Website. The Target Installation Schedule shall be updated quarterly throughout the Term hereof to show completion of work and adjustments, if any, of Target Installation dates.

3.2     Public Hearings and Public Input. The City will hold at least one (1) public hearing before formal approval of the Updated Transition Plan to seek input from community members. Additionally, the City will enable people who wish to provide input, but who cannot attend public hearings, to submit input through the City's 3-1-1 telephonic system and the Website and will provide instructions for how to do so through the Website.

3.3     Class Counsel Input. At least thirty (30) Days before approving the Updated Transition Plan, and Target Installation Schedule, the City will provide a copy for review and comment to Class Counsel. Class Counsel may provide feedback no later than twenty (20) Days from the day of receipt. The City will give good faith consideration to all comments provided by Class Counsel before finalizing the Updated Transition Plan.

3.4    Completion Date of Updated Transition Plan. The City will cause the Consultant to complete the Updated Transition Plan no later than three (3) months after the completion of the surveys contemplated in Section 4.1 below. In the event the preparation of the Updated Transition Plan is delayed due to the process of obtaining input from community members, Representative Plaintiffs, the Class Members or Class Counsel, the Consultant will have a reasonable extension of the deadline to complete the Updated Transition Plan, consistent with the length of the delay. Once completed, the Updated Transition Plan will remain publicly available and posted on the Website.

3.5    Subsequent Updates to the Updated Transition Plan. Throughout the Term, the City shall update the Updated Transition Plan every five (5) years, commencing on the fifth year after the completion of the Updated Transition Plan.

**4.    Surveys of the City's Sidewalks, Crosswalks and Pedestrian Ramps**.

4.1    The Purpose and Scope of the Surveys. Subject to the Consultant's oversight and the completion of the training requirements in Section 5.3 below, through Qualified contractors managed by the City ("City managed contractors") or in-house crews employed by DOPW ("in-house crews"), the City shall conduct, or cause to be conducted, the Surveys across the City of 100% of the City's sidewalks, crosswalks and Pedestrian Ramps to identify: (a) each street that has or does not have a sidewalk; (b) whether the corners of such streets have or do not have Pedestrian Ramps; (c) whether there are crosswalks between corners and the roadway condition of the crosswalks; (d) whether the existing sidewalk meets the specific requirements of the applicable Accessibility Laws; and (e) the presence of Hazardous conditions, identifying the specific Hazards.

4.1.1    With respect to the sidewalks, the Survey data will measure the following five (5)

19

elements of those sidewalks' compliance with the Accessibility Laws: (i) beginning and end of the sidewalk; (ii) cross slope of the sidewalk; (iii) existence of panel vertical separation and measurements thereof; (iii) the general condition of sidewalk based upon ranking scale from 1 to 10; (iv) existence of obstructions; and (v) any other concerns that may be present. Those sidewalks that are not in compliance with the Accessibility Laws shall be included in the Updated Transition Plan.

4.1.2   With respect to the street corners that contain Pedestrian Ramps, if the corner Pedestrian Ramps are missing components or elements, the corner shall be marked as "non-compliant" and a detailed analysis of the elements is not required. At visually complaint (corner ramps that visually appear to be compliant without measurement) corner Pedestrian Ramps, the Survey data will measure the following thirteen (13) elements for compliance with the Accessibility Laws: (i) curb reveal; (ii) Pedestrian Ramp running slope; (iii) detectable warning surfaces; (iv) gutter slope; (v) landing dimensions (including width and length); (vi) landing cross slope; (vii) roadway grade; (viii) ramp width; (ix) flare slope; (x) ramp length; (xi) ramp cross slope; (xii) presence of ponding; and (xiii) presence of obstruction. Those Pedestrian Ramps and corners that are not in compliance with the Accessibility Laws shall be included in the Target Installation Schedule, prioritized as contemplated in Section 4.1.7 below. For purposes of the subsection, "ponding" means unwanted pooling of water at the base of a Pedestrian Ramp.

4.1.3   With respect to the crosswalks, Survey data will measure the following five (5) elements to those crosswalks to determine compliance with Accessibility Laws: (i) existence of markings; (ii) condition of markings; (iii) existence of yield or stop controls markings for approaching vehicular traffic; and (iv) slope. Those crosswalks that are not in compliance with the Accessibility Laws will be scheduled for Installation or Upgrade as part of the Consent Decree

and the Updated Transition Plan. This Survey will only look at pavement markings in crosswalks where markings are required by the then current version of the Manual on Uniform Traffic Control Devices (available at https://mutcd.info/) or other applicable law.

4.1.4    Survey Tool. The City and Consultant may utilize a survey tool for the Survey of the Pedestrian Ramps including but not limited to using mobile LiDAR technology, which utilizes laser technology to capture terrain information. Key points are placed on high-resolution imaging and correspond to various Pedestrian Ramp attributes that shall  be measured for each Pedestrian Ramp. Each Pedestrian Ramp's dimensions and measurements are thereby extracted using a software calculator. The methods and tools used for the Survey of Pedestrian Ramps, sidewalks and crosswalks shall be standardized and clearly identified in the  Updated Transition Plan.

4.1.5    Verification of Surveys' Results. With respect to those surveys that are not conducted directly by the Consultant, Consultant in the Updated Transition Plan shall be required to verify and confirm, or cause to be verified and confirmed, the completeness and thoroughness of the Surveys' results upon its completion. In the Updated Transition Plan Consultant shall confirm to Class Counsel that Consultant has reviewed the Surveys and confirms that 100% of the City's sidewalks, crosswalks and Pedestrian Ramps have been surveyed, the consistency of the methods and tools utilized, and the Surveys captured all the data required in Sections 4.1.1 – 4.1.3 above.

4.1.6    Timeline for Completing Surveys and Assessment. The City will cause the Consultant to complete the Survey data collection on measurements as described in Sections 4.1.1 – 4.1.3 by no later than twelve (12) months from the execution date of the contract between the Consultant and the City, which shall occur within five (5) Days after the Court's final approval hereof. The City and Consultant will concurrently assess this data to determine compliance with

21

the Accessibility Laws and will share with the Class Counsel all data gathered and their conclusions as to compliance with the Accessibility Laws as it becomes available and, in total, by no later than 30 Days after completion of all surveys and assessments.

4.1.7    Prioritization Criteria for Installation and Upgrades of Sidewalks, Crosswalks and Pedestrian Ramps. Prioritization shall first be given to all sidewalks, crosswalks and Pedestrian Ramps and obstructions identified in Schedule 4.1.7 hereto, which work shall commence in calendar year 2022.  Thereafter, priority shall be given to sidewalks, crosswalks and Pedestrian Ramps: (i) identified as Hazardous in the Surveys; (ii) within a 1 mile radius adjacent to where all Representative Plaintiffs reside; (iii) sidewalks, crosswalks and Pedestrian Ramps from parking areas and bus stops servicing the following residential facilities to those facilities, and all sidewalks, crosswalks and Pedestrian Ramps  within a 0.5 mile radius adjacent to Court Place Apartments, 230 Court Street; Willow Oaks Apartments, 1225 Florence Avenue; Brookmeadows, 2315 Broadway; UAW Senior Citizens Center, 44 S. Broadway; Valle Vista Apartments, 1410 Valle Vista Blvd.; Prairie View Villas, 3246 Vandever Avenue; and Sunset Hills, 1825 Vienna Court; (iii) servicing key locations for people with disabilities, such as emergency shelters, hospitals, clinics, and schools; (iv) servicing transit facilities; and (v) servicing public facilities and other places of interest/recreation (*e.g.*, senior services, government sites, child and youth services, libraries and cultural institutions).

4.1.9    Prioritization Criteria Results. Upon completion of the Surveys referenced in Sections 4.1.1 – 4.1.3, as part of the Updated Transition Plan, the City and Consultant will develop a prioritization schedule of the required Installation and Upgrades, utilizing the priority criteria in Section 4.1.7. The prioritization schedule shall also identify the estimated cost for such Installations and Upgrades and identify possible sources of funding for such Installations and

Upgrades.

5.    **Remediation of Hazardous Conditions; Installation and Upgrade of Sidewalks, Crosswalks and Pedestrian Ramps Schedule; Use of Contractors or In-house Crews; Training of In-house Crews; Annual Monetary Commitment; Schedule and Completion Date Adjustments**

5.1    Remediation of Hazardous Conditions. The City shall cause to remove or have removed barriers that are not fixed to a sidewalk or path of travel (*e.g.,* planters, newspaper stands, vehicles, etc.) as soon as practicable but no later than forty-five (45) Days upon detection. A temporary repair of all other Hazardous conditions that the Consultant deems feasible, shall be made as soon as practicable and commence even before the development of the Updated Transition Plan. Temporary and other repairs shall be performed in a manner that is consistent with the FHWA Guide for Maintaining Pedestrian Facilities for Enhanced Safety.

5.2    Schedule for the Upgrade and Installation of Sidewalks, Crosswalks and Pedestrian Ramps during the Term of the Consent Decree.

5.2.1    Consultant and the City shall prepare a written schedule with projected timelines to complete the Installation, repair or Upgrade of sidewalks, crosswalks and Pedestrian Ramps that are identified through the Surveys requiring an Installation or an Upgrade to achieve compliance with the Accessibility Laws. This will include: (i) Installations or Upgrades to sidewalks; (ii) Installations or Upgrades of crosswalks; (iii) Installations or Upgrades of Pedestrian Ramps at Standard Corners; and (iv) Installation or Upgrades of Pedestrian Ramps at Complex Corners.

5.2.2    The schedule shall also include the estimated costs and the possible sources of funding for the Installations and Upgrades.

5.2.3    Each of the timelines will be subject to an annual schedule (per Fiscal Year

23

May 1 to April 30) that will be reported publicly on the Website (and/or a subsequent website maintained by the City).

      5.2.4    For all of the Installations and Upgrades required, the City will continue to look to innovations in the industry and will make best efforts to use such innovations to complete Installations and Upgrades of sidewalks, crosswalks and Pedestrian Ramps at earlier interim and final dates than those set forth herein. The sidewalks, crosswalks and Pedestrian Ramps will be remediated through any of the means the City and Consultant may determine provided those means are consistent with PROWAG guidelines, and, upon completion such Installations, repairs and Upgrades comply with all applicable Accessibility Laws.

      5.2.5    The schedule will be included in the Target Installation Schedule which will be maintained in addition to the Updated Transition Plan as contemplated in Section 3.1 above.

      5.3    Use of Contractors or In-house Crews. Subject to the training requirements in Section 5.4 below, the City will install, repair or Upgrade all sidewalks, crosswalks and Pedestrian Ramps at Standard Corners and Complex Corners that are not in compliance with the Accessibility Laws through the use of Qualified City-managed contractors and/or in-house crews. The City will use best efforts to complete such Installations and Upgrades by the dates specified in the Target Installation Schedule. All work of the City-managed contractors or in-house crews shall be subject to oversight by the Consultant as set forth herein.

      5.4    Training, or Verification of Training, of the City-Managed Contractors and In-house Crews. As a condition precedent to all Surveys, Installations or Upgrade work commencing, if such work shall be performed by City-managed contractors and in-house crews, all personnel responsible for managing or supervising the performance of the work shall receive

24

or have completed ADA/PROWAG training from the Illinois Department of Transportation Technology Transfer Center, https://idot.illinois.gov/transportation-system/local-transportation-partners/county-engineers-and-local-public-agencies/technology-transfer-center/index,  or the Great Lakes ADA Center, https://www.adagreatlakes.org/#. The City or the Consultant shall ensure  that personnel conducting the Surveys have received adequate training on the use of the survey instrument.

5.5     Consultant's Random Inspections. The Consultant shall be required throughout the Term of the Consent Decree to inspect completed remediations, Installations or Upgrade work (collectively "Work") as set forth below. In those years when  random inspections are required, as set forth below, Consultant, solely and exclusively, shall determine which of the Work to randomly inspect. Inspections shall occur in July and October, plus or minus thirty (30) Days, of each 12-month period of the Term. If Consultant finds any of the completed Work is not in compliance with the applicable Accessibility Laws, the City shall be required to correct the Work pursuant to the Consultant's specific instructions. The Consultant shall assure the correction work has been completed and done so correctly.

5.5.1     During the first 12-month period from  the effective date of the Updated Transition Plan, Consultant shall inspect one hundred percent (100%) all Work completed. Consultant may require City-managed contractors and in-house crews to receive additional training in the performance of the Work if it deems necessary.

5.5.2     During the second 12-month period from the effective date of the Updated Transition Plan, Consultant shall inspect eighty percent (80%) of all Work completed during that time period. If Consultant finds that five percent (5%) of that Work inspected is not in compliance with the applicable Accessibility Laws, the Consultant shall inspect the remaining twenty percent

(20%) of all Work completed during the quarter.

5.5.3    During the third 12-month period from the effective date of the Updated Transition Plan Consultant shall randomly inspect sixty percent (60%) of all Work completed during that time period. If Consultant finds that three percent (3%) of the Work inspected in that quarter is not in compliance with the applicable Accessibility Laws, the Consultant shall inspect an additional twenty percent (20%) of the Work completed during that time period. If the Consultant finds again that three percent (3%) of the additional Work inspected is not in compliance with the applicable Accessibility Laws, Consultant shall inspect the remaining twenty percent (20%) of the Work completed during that time period.

5.5.4    During the fourth 12-month period from the effective date of the Updated Transition Plan Consultant shall randomly inspect forty percent (40%) of all Work completed during that time period. If Consultant finds that three percent (3%) of the Work inspected in that quarter is not in compliance with the applicable Accessibility Laws, the Consultant shall inspect an additional forty percent (40%) of the Work completed during that time period. If the Consultant finds again that three percent (3%) of the additional Work inspected is not in compliance with the applicable Accessibility Laws, Consultant shall inspect the remaining twenty percent (20%) of the Work completed during that time period.

5.5.5    Thereafter, in July and October, plus or minus thirty (30) Days of each of the remaining 12-month periods of the Term of the Consent Decree,  Consultant shall randomly inspect ten percent (10%) of all Work completed during that time period. If Consultant finds that two percent (2%) of the Work inspected in that time period is not in compliance with the applicable Accessibility Laws, the Consultant shall inspect an additional ten percent (10%) of the Work completed during that time period. If the Consultant finds again that two percent (2%) of

the additional Work inspected is not in compliance with the applicable Accessibility Laws, the inspections shall continue in the percentages contained in this subsection.

5.6     Reporting and Disputes. Consultant shall provide Class Counsel with a written summary of its inspections promptly upon completion. Any disputes between the parties relating to the inspections shall be attempted to be resolved between the parties pursuant to the meet and confer provisions of the Conflict Resolution provisions in Section 15 hereof. If no resolution is reached, either party may submit this dispute to the Court for resolution pursuant to Section 15 below.

5.6     Annual Monetary Commitment; Schedule and Completion Date Adjustments.

5.6.1     Beginning on the Effective Date (as defined in Section 17 below), the City shall appropriate or procure a minimum of $250,000 each fiscal year ("Annual Monetary Commitment"), and an additional $1.5 million during the three fiscal years but by the end of the third fiscal year following the Effective Date, for use exclusively toward the construction and the remediation required of the sidewalks, crosswalks and Pedestrian Ramps and all work related thereto required under this Consent Decree. The Annual Monetary Commitment is the minimum amount the City is obligated to appropriate on an annual basis for the construction of sidewalks, crosswalks and Pedestrian Ramps, including those constructed in connection with the construction and alterations of streets, roadways and highways, remediation of existing sidewalks, crosswalks and Pedestrian Ramps. If the Effective Date occurs midyear, the Annual Monetary Commitment for the first year of the Term hereof may be prorated based on the number of days remaining in that year. If in any fiscal year, the City is unable to appropriate the Annual Monetary Commitment due to the financial condition of the City, the City shall provide notice to Class Counsel, identifying the amounts of appropriations it can make for that fiscal year and the

Parties shall meet and confer to agree on how to utilize the reduced Annual Monetary Commitment for that fiscal year.

5.6.2    The schedule for the Installation or Upgrades of sidewalks, crosswalks and Pedestrian Ramps shall be completed in compliance with the Target Installation Schedule.   If the Parties cannot agree to adjusted completion date(s), either Party may seek to adjust the schedule and completion dates through the Conflict Resolution Process described in Section 15.

5.7    Applicable Accessibility Laws. To the extent that any of the Accessibility Laws have conflicting technical specifications for the design and construction of sidewalks, crosswalks or Pedestrian Ramps, compliance will be measured, and Installations or Upgrades, and ongoing Maintenance as required by this Consent Decree, will  be performed, in accordance with the technical specifications as required by the Federal Highway Administration. For detectable warning surfaces, the City will follow PROWAG guidelines.

5.8    Substantial Completion. The City will not be deemed to be in breach of its obligations to install or Upgrade any of the sidewalks, crosswalks and Pedestrian Ramps as and when required in the Target Installation Schedule if it (i) does not fall short of those obligations by more than five percent (5%) in any Fiscal Year,  and (ii) cures any such shortfall within the two Fiscal Years immediately following the Fiscal Year in which the shortfall occurred.

5.9    City Compliance with Funding Source Requirements. Nothing in this Consent Decree shall preclude the City from participating in and accepting funding from governmental programs, such as the United States Department of Housing and Urban Development's Community Development Block Grant Program that requires a construction of sidewalks and curb ramps at specific locations within the City.

**6.    City's Covenants – Installation, Maintenance of Sidewalks, Crosswalks and Pedestrian Ramps**

28

6.1     New Construction and Alterations. Throughout the Term hereof, the City shall ensure that all new sidewalks, crosswalks and Pedestrian Ramps that are newly constructed on or after the Effective Date comply with the requirements of all Accessibility Laws and the 2013 DOJ/DOT Alteration Guidance.

6.2     Accessible Temporary Routes. Throughout the Term hereof, whenever the City newly constructs or alters sidewalks, crosswalks or Pedestrian Ramps or adjacent construction projects obstruct currently existing paths, the City shall ensure that accessible temporary routes are provided through and around such construction and appropriate signage directing persons with Mobility Disabilities to such accessible temporary routes.

6.3     Maintaining Sidewalks, Crosswalks and Pedestrian Ramps; Inspection. The City covenants to the Class Members that it will maintain its sidewalks, crosswalks and Pedestrian Ramps as required by the Accessibility Laws, both during and after the Term so that Class Members will be able to access them safely and independently. The Maintenance will be performed on an ongoing, indefinite, and regular basis as required by the Accessibility Laws. The City will inspect for the existence of those elements set forth in Section 4.1.1 above. Snow and Ice removal will be completed based on City Code 5-4-2-1-7, which the City covenants to enforce.

6.4     Detectable Warnings. The City covenants to the Class Members that it will install or Upgrade detectable warning surfaces, both during the Term in accordance with the timeline set forth in the Updated Transition Plan, and after the Term, where they are missing, cracked or otherwise needed, due to vertical discontinuities, etc., each time it installs or Upgrades Pedestrian Ramps pursuant to the Consent Decree. The detectable warning surfaces will comply with the requirements of the Accessibility Laws, including, without limitation, PROWAG.

29

6.5     Inspection; Installation or Upgrade upon Resurfacing, Alteration or New Construction. The City covenants to the Class Members that it will routinely inspect sidewalks, crosswalks and Pedestrian Ramps where required and at all corners adjacent to planned Resurfacing, and within the scope of any Alteration or New Construction as defined by the FHWA. The City will install or Upgrade sidewalks, crosswalks and/or Pedestrian Ramps where required whenever it undertakes Resurfacing, an Alteration or a New Construction, including but not limited to, a street or infrastructure reconstruction project in compliance with the Accessibility Laws. Nothing herein shall prevent the City from addressing accessibility at any location using equivalent facilitation, if available and appropriate and as provided in the Accessibility Laws, or from providing a temporary accessible solution as appropriate and compliant with the Accessibility Laws.

6.6     Private Developers. The City covenants to the Class Members that it will:

6.6.1   Require private developers and private utility companies to install or Upgrade sidewalks, crosswalks, Pedestrian Ramps, and detectable warning surfaces, as and where required by the applicable Accessibility Laws, as part of the private developers' and private utility companies' construction projects and require the review all such private developers' and private utility companies' design and construction plans to determine compliance with applicable Accessibility Laws.


6.6.2   Upon receipt of any Complaint made by an individual member of the public concerning accessibility barriers to sidewalks, crosswalks and/or Pedestrian Ramps caused by private developers, private utility companies or other third parties, the City will communicate in writing with the developer, utility company or other third party to demand removal of the barrier.

6.6.3    Ensure that the Standard Design Drawings for sidewalks, crosswalks and accessible Pedestrian Ramp design and construction comply with the Accessibility Laws in effect at the time the work is performed. The City will make available the links to Standard Design Drawings on the Website.

6.7    Response to Complaints. The City will install or Upgrade sidewalks, crosswalks and/or Pedestrian Ramps where required in connection with Complaints under the sidewalk, crosswalk and Pedestrian Ramp Complaint program, as described in Section 7 below.

## 7.    Sidewalk, Crosswalk and Pedestrian Ramp Complaint Program

7.1    Scope and Procedure. The City will maintain a procedure for persons with mobility disabilities, persons who are Blind or with visual impairments or their representatives. to request Installation or Upgrade of a sidewalk, crosswalk and/or Pedestrian Ramp during and after the Term and to prioritize its response to those complaints. The City will record and track all such requests and semiannually (by July 15 and January 15) during the Term hereof provide Class Counsel with copies of such requests. For tracking purposes, a Complaint shall not include (i) a request which is duplicative of another Complaint concerning the same corner, and (ii) a request which does not contain a valid or identifiable address or location. If a Complaint concerns a sidewalk or crosswalk at more than one location and/or Pedestrian Ramps at more than one corner, each location or corner complained of will be recorded as a separate Complaint. All Complaints will be addressed as set forth in this Section 7.

7.2    Submission of Complaints.

7.2.1    Requests for Installation or Upgrades of sidewalks, crosswalks and/or Pedestrian Ramps may be made in person, via phone call to the City's 3-1-1 system, by submission of an online form, email or letter. The City will offer Complaint forms in electronic formats that are

accessible to people with disabilities and will provide such forms on the Website.

7.2.2    Complaints for Installation or Upgrades of sidewalks, crosswalks and/or Pedestrian Ramps received by Class Counsel during the Term shall be communicated to the City's Engineering Department.

7.3      Timing of Response to a Complaint.

7.3.1    The City will acknowledge receipt of each Complaint within fifteen (15) business Days of receiving it and provide an estimated temporary repair date, where possible.

7.3.2    If the Complaint identifies a sidewalk, Pedestrian Ramp or crosswalk not already identified in the Surveys or in the Updated Transition Plan, the City will investigate the complained issue as soon as practicable and assess its repair or upgrade priority. If upon investigation the City find a Hazardous condition, the City will provide temporary repairs, as appropriate and compliant with the Accessibility Laws, as soon as practicable, until permanent repairs can be completed.

## 8.      Equivalent Facilitation

For any Installations and Upgrades the City may use alternative designs, such as raised crosswalks, provided such alternative designs result in substantially equivalent or greater accessibility and usability, as provided in the Accessibility Laws.

## 9.      Policies & Procedures; Training

9.1      Policies & Procedures. Within 30 Days from the execution date hereof, the City shall provide Class Counsel with a copy of all of its policies and procedures relating to its compliance with Accessibility Laws; accessibility Complaint Procedures; training with respect to Accessibility Laws and Complaint Procedures; and policies and procedures applicable to its ADA/504 Coordinator. Class Counsel shall have 30 Days from their receipt of such policies and

procedures to tender comments and/or revisions to the City. City shall, in good faith, consider those comments for incorporation into revisions of same.

9.2     Training: Existing Staff & New Hires. During the Term of the Consent Decree, City shall provide training on the requirement of this Consent Decree as part of its new hire orientation to employees whose tasks are expected to include inspection, maintenance, repair or construction of the City's sidewalks, crosswalks and Pedestrian Ramps. All new hires with supervisory responsibility for the foregoing shall also receive ADA PROWAG training from the Illinois Department of Transportation Technology Transfer Center or the Great Lakes ADA Center, per Section 5.3 above.

9.3     Training: ADA/504 Coordinator. Within 30 Days from the execution date hereof, City shall provide Class Counsel with a copy of its ADA/504 Coordinator training materials. Class Counsel shall have 30 Days from the date of its receipt of such materials to review same and provide comments and suggested revisions the same within 30 Days of its receipt. City covenants to consider, in good faith, Class Counsel's comments and suggested revisions to same. If the City's ADA/504 Coordinator has not completed an ADA coordinator training program, City shall require that person to attend and complete the ADA Coordinator Training Certificate Program provided by the University Missouri - College of Human Environmental Sciences, School of Architecture Studies and the Great Plains ADA Center, *see,* www.adacoordinator.org; or the Great Lakes ADA Center, *see* https://www.adagreatlakes.org/#. When providing Class Counsel with its training materials as required in this subsection, City shall provide Class Counsel with the identity and contact information for its ADA/504 Coordinator and shall promptly inform Class Counsel of any changes of its ADA/54 Coordinator during the Term hereof.

## 10.    Reporting of Progress

10.1    Maintain Detailed Record. The City will maintain a detailed record of all sidewalks,

crosswalk and Pedestrian Ramp Installations, or Upgrades requested, planned, scheduled, performed, and completed under this Consent Decree.

10.2    Reports to Class Counsel. On a semi-annual basis throughout the Term, the City will provide Class Counsel with non-privileged documents and data concerning Installations and Upgrades of sidewalks, crosswalks, and Pedestrian Ramps, including, but not limited to, information related to temporary and permanent repairs in connection with Complaints, as referenced in Section 7 of this Consent Decree.

10.3    Reports to the Court. On an annual basis, commencing on the 12-month anniversary of the completion of the Updated Transition Plan and continuing every 12-months thereafter throughout the Term, the City shall file an annual report with the Court detailing its compliance with the Updated Transition Plan.

10.4    Reports to the Public. On a semi-annual basis throughout the Term, the City will post on the Website a report of progress under the Consent Decree. On an annual basis throughout the Term, the City will post on the Website an end-of-year report. The information to be contained in the semi-annual reports required under this Section include: (i) identification of the work scheduled for completion during the six months of the reporting period; (ii) the schedule of work to be completed during the six months of the reporting period; (iii) identification of the work completed during the six months of the reporting period; and (iv) identification of who performed the work identified in the report. The information contained in the annual reports required under this Section include: (i) identification of the work scheduled for completion during the 12 month reporting period; (ii) identification of the work completed during the 12 month reporting period; (iii) identification of who completed such work; and (iv) the cost of the work completed.

**11.    Monitoring Compliance**

Throughout the Term of the Consent Decree, the City shall notify Representative Plaintiffs and Class Counsel on any changes to the remediation schedule, any changes to the City's drawings and/or designs regarding the Public Rights-of-Way and provide Representative Plaintiffs and Class Counsel with such updated drawings and/or designs. Representative Plaintiffs and Class Counsel may also communicate directly with the Consultant to inquire as to the status and progress being made, and inspect work being done in the City to remediate the Public Rights-of-Way and to monitor compliance with the Consent Decree. The City will also make its survey database and sidewalk and Pedestrian Ramp construction database available to Representative Plaintiffs and Class Counsel for their review upon request. Notwithstanding the foregoing, any review by Representative Plaintiffs and/or Class Counsel shall be undertaken in a manner to assure that it will not unreasonably interfere with the City's operations.

### 12.    Compensation to Representative Plaintiffs, Declarants and Class Members

12.1    Representative Plaintiffs. Subject to the approval of the Court, City agrees to pay to each of the Representative Plaintiffs $10,000 as compensatory damages, an incentive award and as consideration for the release of their claims. Class Counsel shall provide City with completed W-9s for each of the Representative Plaintiffs. Payment of that amount shall be made within thirty (30) Days after the Effective Date of this Consent Decree.

12.2    Declarants. Subject to the approval of the Court, City agrees to pay to the 35 Declarants, $800 each, in total, $28,000, as compensatory damages, an incentive award and as consideration for the release of their claims. Class Counsel shall provide City with completed W-9s for each of the Representative Plaintiffs. Payment of that amount shall be made within thirty (30) Days after the Effective Date of this Consent Decree.

12.3    Class Members. Subject to the approval of the Court, City agrees to pay the Class Members who have not opted out and have tendered all documents and information to submit a claim as required by the Settlement Administrator, a total of $22,000 as compensatory damages (the "Settlement Fund"). The Settlement Fund shall be allocated and distributed to Class Members, pro rata, but not more than $88.00 each. City shall, within thirty (30) Days after the Effective Date of this Consent Decree, deposit the Settlement Fund amount into an account controlled by the Settlement Administrator for the Settlement Administrator to administer. Settlement Administer shall be responsible for providing City with completed W-9s for each of the Class Members submitting a claim.

12.4     If there are amounts of the Settlement Fund that are unclaimed after the lapse of all applicable deadlines set forth herein, subject to the Court's approval, the Settlement Administrator shall distribute the remaining Settlement Funds back to the City for immediate use for sidewalk remediation, which amount shall be in addition to the Annual Monetary Commitment.

### 13.    Settlement Administrator and Settlement Notice to Class Members.

13.1    Settlement Administrator. The Settlement Administrator shall be responsible for disseminating the Class Notice, substantially is attached hereto as Exhibit B; responding to requests to opt out of the Class; distributing the settlement awards, managing Class Members' data, providing a call center support and to perform such other responsibilities set forth in this Consent Decree. The City shall pay the Settlement Administrator an estimated amount of $29,195.00 to perform all responsibilities set forth in this Consent Decree.

13.2    Requests for Exclusion from the Settlement. Any Class Member may opt out of the Class by submitting a written Request for Exclusion with the Settlement Administrator at the

address set out in the Class Notice. To be timely, a Request for Exclusion must be postmarked no later than 90 Days after the Class Notice is issued/class notice is mailed. Requests for Exclusion must state the Class Member's full name, address, and telephone number; a statement that the Class Member wishes to be excluded from the settlement; and the case name and case number. Every Class Member who does not timely and properly submit a Request for Exclusion from the Class shall be bound by all proceedings, orders, and judgments in the Class Action. All Class Members agree that the satisfaction of all the Released Claims against the Defendants, as well as entry of the Final Approval Order, shall be binding upon all Class Members.

13.3    Objections to the Settlement. Any Class Member, who has not requested exclusion, may object to the proposed Consent Decree by submitting a written statement. Objections shall be made directly to Class Counsel by U.S. postal mail to the following: Robbins DiMonte, Ltd., 180 N. LaSalle, Suite 3300, Chicago, IL 60601. To be timely, all written objections must be received electronically or postmarked no later than 90 Days after Class Notice is issued. A written objection must state the objecting Class Member's full name, address, and telephone number, and that of his or her counsel, if any; the grounds for all objections, stated with specificity, and any evidence the objecting Class Member wishes to introduce in support of the objections; whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; proof of membership in the Class; a statement as to whether the Class Member intends to appear at the final fairness hearing, either individually or through his counsel; the Class Member's signature; and the case name and case number: *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:17-cv-01437–JBM– JEH. Any Class Member who fails to comply with the provisions of this Section shall waive and forfeit any and all rights the Class Member may have to appear separately and/or to object and

shall be bound by all the terms of this Consent Decree and by all proceedings, orders, and judgments in the Class Action.

### 14.    Class Counsels' Fees and Expenses

14.1    Attorneys' Fees and Expenses through the Final Approval of the Settlement. Concurrent with its submission of their motion in support of the Final Order and Judgment, Class Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses incurred in connection with the Lawsuit (the "Fee Application"). City agrees that Class Counsel is entitled to its reasonable fees in the amount of $693,000.65 and costs, $44,043.52, incurred in the prosecution of the Lawsuit to date, and will not contest any particular amount sought under the Fee Application, provided that the Fee Application does not seek more than $693,000.65 for attorneys' fees and does not seek more than $44,043.52, for expenses for work performed prior through the Final Approval of the Settlement.

14.2    No Additional Fee Petitions. Neither the Representative Plaintiffs nor Class Counsel shall make any other application for an award of fees and expenses in connection with the Lawsuit for fees and costs incurred prior to the entry of the Final Approval Order and Judgment. Final resolution by the District Court of the Fee Application shall not be a precondition to the Settlement or the dismissal of the Lawsuit in accordance with the Settlement, and the Fee Application may be considered separately from the proposed Settlement. Any failure by the District Court to approve the Fee Application, in whole or in part, shall have no impact on the effectiveness of the Settlement. Class Counsel acknowledges its legal obligation to refund to City any payments made under this Consent Decree pursuant to a court order that is ultimately reversed following any permitted appeal of such order.

14.3    Attorneys' Fees for Work Performed after the Effective Date. The City shall not be responsible for compensating Class Counsel for any work performed after the Effective Date.

14.4    Plaintiffs are Prevailing Parties. The City agrees that, conditioned upon the District Court granting Final Approval of this Consent Decree, and the Judgment becoming Final, Plaintiffs are prevailing parties in the above-captioned actions for purposes of awarding reasonable attorneys' fees, expenses, and costs.

14.5    Timing of the Payment of Attorneys' Fees. The Parties acknowledge and agree that City shall pay any fees and expenses awarded by the District Court to Class Counsel in connection with the Fee Application within thirty (30) Days after the latter of (i) the Effective Date of this Consent Decree, or (ii) if an appeal of attorneys' fees and costs awarded is filed, the first business day after the appellate process is complete and no further appeals are available or permitted under applicable law. Class Counsel shall send to City's counsel their respective W-9 forms and wire transfer information within five (5) business days after this Consent Decree is executed.

## 15.    Conflict Resolution Process.

All Conflicts regarding the implementation, interpretation, monitoring, compliance and modification of this Consent Decree shall be resolved as follows:

15.1.    Notice of Deficiency. If Class Counsel believes the City has failed to comply with any of this Consent Decree's terms, Class Counsel shall provide the City in writing a notice of deficiency and describe the alleged violation or failure to perform. The City shall provide a written response within thirty (30) business days of receipt of Class Counsel's notice. The City shall have a period of ninety (90) Days from the receipt of Class Counsel's notice to cure the alleged violation or failure to perform or other deficiency.

39

15.2    Meet and Confer Obligation. If a response to the notice of deficiency fails to resolve the alleged deficiency, Class Counsel and City Counsel shall meet and confer, in person, via videoconference or by telephone, and attempt to resolve the notice of deficiency for a period of at least thirty (30) Days from receipt of the response. The Parties may jointly waive the meet-and-confer obligation if they believe it would not be productive to resolving the deficiency in question.

15.3    Resolution by the District Court. If the Parties are unable to resolve a notice of deficiency through the processes described in this Section, either Party may make a motion to the District Court to enforce or seek relief from a provision of this Consent Decree, in order to resolve the dispute. Nothing in this section shall be construed to limit the Court's discretion to award reasonable attorneys' fees and costs incurred to the prevailing party.

**16.    Replacement of Consultant.**

16.1    Replacement for Cause Only. TWM, Inc. ("TWM"), shall only be replaced for "Cause." As used herein, "Cause" shall mean: (i) the voluntary termination by TWM of its contract with the City to perform its obligations hereunder, which termination shall occur upon the lapse of a sixty (60) Day advance written notice of its intent to terminate; (ii) a breach of its obligations hereunder which is not cured within thirty (30) Days of its receipt of a written notice of the occurrence of a breach; (iii) the dissolution of TWM, or its failure to continue as a going concern; (iv) the loss by TWM of any of its applicable licenses and certifications required by the State of Illinois to perform its obligations hereunder; or (v) the voluntary or involuntary bankruptcy of TWM, or an assignment of all or substantially all of its assets for the benefit of its creditors. If the City or Class Counsel disputes the basis for the termination of TWM to serve as the Consultant hereunder, the dispute shall be resolved pursuant to the Conflict Resolution provisions in Section

40

15 above. TWM shall be required to provide prompt written notice to Class Counsel and the City upon the occurrence of any of the foregoing conditions for termination.

16.2    Selection of TWM's Replacement. The Parties shall meet and confer to discuss the replacement of TWM, and its replacement shall be as mutually agreed-upon by the City and Class Counsel, selected from a pool of qualified Illinois-licensed engineering firms that are responsive to a request for proposal ("RFP") to serve as the Consultant hereunder. The City shall promptly cause to be issued an RFP upon its receipt of TWM's written notice of the occurrence of a termination event. Any dispute between the City and Class Counsel on the selection of a replacement Consultant may be submitted to the Court for resolution.

16.3    Extension of the Term of the Consent Decree. If any of the work required under this Consent Decree or the Updated Transition Plan will be materially delayed as a result of the termination of TWM as the Consultant or the selection of the replacement Consultant, the Term of the Consent Decree may be extended by the mutual agreement of the Parties, and in the absence of a mutual agreement, by the Court.

## 17.    Court Approval and Effective Date

17.1    Submission of the Consent Decree to the Court for Approval. This Consent Decree shall be subject to approval by the Court. However, nothing in this Consent Decree will be deemed to authorize the Court to change or modify any of its terms. Any change, modification or rejection of any of the provisions of this Consent Decree by the Court or any other court will constitute a material modification of this Consent Decree, will prevent the Judgment from becoming final, and will give any Party the right to terminate this Consent Decree in its entirety.

17.2    Preliminary Approval. As soon as practicable after execution of this Consent Decree, Class Counsel shall submit to the Court this Consent Decree, together with its exhibits

41

(the notice to the class and claim form, Exhibits A and B hereto); and the Parties shall jointly move the Court for preliminary approval of this Consent Decree and Notice Plan (in the form attached as Exhibit C hereto). Along with their joint motion for preliminary approval, the Parties shall submit the proposed Preliminary Approval Order attached to this Consent Decree as Exhibit D (the "Preliminary Approval Order").

17.3    Effective Date. The Effective Date of this Consent Decree shall be the date when all of the following have occurred: (i) entry of the Preliminary Approval Order; (ii) approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed the Rule 23 of the Federal Rules of Civil Procedure; and (iii) judgment has been entered by the Court and become final.

17.4    Fairness Hearing. At the fairness hearing, the Parties will jointly move for entry of the Judgment (substantially the form as attached to this Consent Decree as Exhibit E) providing for: (i) final approval of this Consent Decree as fair, adequate and reasonable; (ii) final certification of the Class; (iii) final approval of the former method of notice of the Judgment to the Class; (iv) final approval of the appointment of the Representative Plaintiffs as representatives of the Class; (v) final approval of the release of the City and the Defendants from the Release Claims, defined in Section 19 below; (vi) final approval of an order that the Class Members will be enjoined and barred from asserting any of the Release Claims against the City or any of the other Defendants following entry of Judgment and up to and including the completion of the Term; (vii) the Parties and all members to be bound by the Judgment; and (viii) the Court's retention of jurisdiction over the Parties to enforce the terms of the Judgment throughout the Term of this Consent Decree.

17.5    Objections & Opt-Out Rights. Members of the Class will have the opportunity to object to the proposed Consent Decree and may opt-out. The Parties will request that the Court

order the following procedures for assertion of objections, if any, to the Consent Decree:

17.5.1  Any Class Member may object to this Consent Decree by filing, within ninety (90) Days from the commencement of the issuance of the Notice to the Class, written objections to the Class Counsel.

17.5.2  With respect to any and all objections to this Consent Decree received by the Class Counsel, Class Counsel will provide a copy of each objection to the Defendants' counsel within two (2) Days after receipt of such objection.

17.5.3  Responses by Class Counsel to any timely filed objections may be filed with the Court no less than five (5) Days before the fairness hearing or as otherwise ordered by the Court.

17.6  Best Efforts. The Parties will take all procedural steps regarding the fairness hearing that may be requested by the Court and will otherwise use their respective best efforts to consummate the settlement embodied in this Consent Decree, and to obtain approval of this Consent Decree and entry of the Judgment.

17.7  Dismissal of the Lawsuit. The Parties agree that, upon final approval, the Court will enter the Judgment under Rule 54(b) of the Federal Rules of Civil Procedure (substantially the form attached to this Consent Decree as Exhibit G) dismissing the Lawsuit with prejudice, subject to the Court retaining jurisdiction to resolve any Dispute regarding compliance with this Consent Decree that cannot be resolved through the Dispute Resolution Process set forth herein.

17.8  Bar to Asserting Absence of Jurisdiction. Neither the City nor any of the Defendants, after the Judgment has become final, shall assert that the Court lacks jurisdiction to enforce the terms of this Consent Decree, or raise any jurisdictional defense to any enforcement proceedings permitted under the terms of this Consent Decree.

17.9  Failure by the Court to Enter the Judgment or Provide Final Approval. Should the

Court deny the Parties' request to enter the Judgment, should this Consent Decree not receive final approval by the Court for any reason, or should this Consent Decree not become final for any reason in accordance with the terms: (i) this Consent Decree will be null and void and of no force and effect; (ii) nothing in this Consent Decree will be deemed to prejudice the position of any of the Parties with respect to any matter; and (iii) neither the existence of this Consent Decree, nor its contents, will be admissible in evidence, referred to for any purpose in any litigation or proceeding, or be deemed an admission by the City of any fault, wrongdoing or liability.

17.10   Binding Agreement. This Consent Decree upon final approval, will be binding upon the City, the other Defendants, the Representative Plaintiffs, the Declarants, all Class Members and, to the extent specifically set forth in this Consent Decree, upon Class Counsel; will extinguish all Release Claims; and will constitute the final and complete resolution of all issues addressed here in. This Consent Decree is the complete and final disposition and settlement of any and all Released Claims.

## 18.    No Admission of Wrongdoing.

This Consent Decree shall not be construed or deemed to be evidence of an admission or concession on the part of any Defendant with respect to any claim, fault, liability, wrongdoing, or damage whatsoever. The Defendants expressly deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Class Action, and the Defendants continue to believe the claims asserted against them in the Class Action are without merit. Notwithstanding these denials, the Defendants have concluded that continuing to litigate the Class Action would be protracted and expensive and that, in light of its cost, risk, and uncertainty, it is desirable that the Class Action be fully and finally released as set forth in this Consent Decree.

19.     **Releases.**

Upon the Effective Date, as defined in Section 17, the Class Representatives and all members of the Class who do not timely elect to opt out of the Settlement, for themselves and for their assigns, agents, representatives, attorneys, heirs, executors, administrators, beneficiaries, and privies, release the Defendants and its and their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on its and their behalf from any and all causes of action, claims, rights, damages, punitive, or statutory damages, penalties, liabilities, expenses and losses, and issues, that any of the Plaintiffs have or could have made against the Defendants in the Class Action, under any claims under federal, state, or local law, rule, or regulation.  The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they freely and voluntarily give the release as set forth above.

20.     **Privacy of Documents and Information**.

The Parties and their Counsel agree that they shall not use any of the documents and information Defendants provided to them during the course of this litigation for any purpose other than prosecution of this Class Action and in furtherance of their respective obligations hereunder.

21.     **Limitation on Public Statements About Settlement**.

The Parties agree that both before and after Preliminary Approval of the Settlement, they shall not publish, issue, or cause to be issued any statement or press release including in print, electronic, on the internet, or other outlets concerning the Settlement without the prior written review and approval of all other Parties, which approval shall not be unreasonably withheld or delayed.

**22.    Confidentiality**.

The terms of this settlement shall remain confidential until approved by the City Council.

**23.    Termination.**

This Consent Decree is entered into only for purposes of settlement. If the Court fails to finally approve the Consent Decree (or any part thereof) or the Final Order or Judgment is not entered into for any reason, the Consent Decree will be null and void and the Parties will return to their respective positions as if this Consent Decree was never negotiated, drafted, or executed.

**24.    Entire Agreement; Binding Effect.**

This Consent Decree, together with its exhibits, which are made a part hereof and incorporated herein by this reference constitutes the entire agreement and understanding of the parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Consent Decree shall be binding unless in writing and signed by each of the parties hereto. All of the terms and provisions of this Consent Decree shall be binding upon and inure to the benefit of the Parties, the heirs, successors and assigns.

**25.    Interpretation**.

Should any court declare or determine any provision of this Consent Decree to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Consent Decree. The headings within this Consent Decree are purely for convenience and are not to be used as an aid in interpretation.

26.    **Governing Law and Choice of Forum**.

This Consent Decree is made and entered into within and shall be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Illinois, without regard to the principles of conflicts of laws. Any action to enforce this Consent Decree shall be brought only in United States District Court for the Central District of Illinois, Peoria Division.

27.    **Dismissal Without Prejudice; Continuing Jurisdiction**.

Upon the Court issuing its Final Approval, the Representative Plaintiffs shall cause to be filed a dismissal of the Lawsuit with the Court retaining continuing and exclusive jurisdiction over the Parties to this Consent Decree, including the Class Representatives and all Class Members, for purposes of the administration and enforcement of this Consent Decree.

28.    **Authority; City Council Approval.**

Each of the Parties represents, warrants and agrees that he, she or it has the full legal authority to enter into this Consent Decree, and the person executing this Consent Decree has the full right and authority to commit and bind such Party. The Parties understand and agree that this Consent Decree is subject to review and approval by the City Council for the City and that the City shall have no obligation hereunder unless and until such approval is obtained. In the event the City Council for the City does not approve this Consent Decree, this Consent Decree shall be null and

void and all obligations of each of the Parties shall cease. The City shall submit this Consent Decree to the City Council as soon as possible after the Parties' and Parties' Counsel's execution of same, but no later than thirty (30) Days after execution.

29.    **Force Majeure.**

The obligations of the City with respect to any construction or remediation required herein at a particular location may be postponed if the postponement is caused by or attributed to the occurrence of a Force Majeure Event. Upon the occurrence of a Force Measure Event the City's obligation hereunder shall be tolled for the period of the duration of the Force Majeure Event.

29.    **Notices.**

For Representative Plaintiffs & Class:    Robbins DiMonte, Ltd.
180 N. LaSalle, Suite 3300
Chicago, IL 60601
Attention: Andrés J. Gallegos, Esq. & Jennifer M. Sender, Esq.
(312) 772-9000
agallegos@robbinsdimonte.com
jsender@robbinsdimonte.com

Carl F. Reardon, Esq.
120 Illini Drive
East Peoria, IL 61611
(309) 699-6767
carlreardon@comcast.net

For the City of Pekin:    City of Pekin
111 S. Capitol Street
Pekin, Illinois 61554
(309) 477-2300
Attn: City Clerk

Del Galdo Law Group, LLC
1441 S. Harlem Avenue
Berwyn, Illinois  60402
Attn: K. Austin Zimmer, Esq.
(707) 222-7000 - telephone
(707) 222-7001 - facsimile

48

zimmer@dlglawgroup.com

For TWM, Inc.:                Mr. Robert DeConcini, President
                             4940 Old Collinsville Road
                             Swansea, IL 62226
                             (618) 624-4488
                             rdeconcini@twm-inc.com


### 30.    Counterparts.

This Consent Decree may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

### 31.    Drafting this Consent Decree.

The Parties acknowledge and agree that this Consent Decree shall for all purposes be deemed jointly drafted and fully negotiated, and as a result, shall not in any manner be interpreted in favor of, or as against, any particular Party by reason of being the drafting Party. Any rule of law that would require interpretation of any ambiguities or uncertainties in this Consent Decree against one of the Parties, shall have no application and is hereby expressly waived.

### 32.    Voluntary Agreement.

Each of the Parties represents, warrants and agrees that he, she or it has read this Consent Decree carefully, and knows and understands its contents, that this Consent Decree has been voluntarily entered into, that he, she or it has received independent legal advice from his, her or its attorneys with respect to the advisability of executing this Consent Decree and that any and all investigation and analysis of the facts deemed necessary or desirable have been conducted prior to the execution of this Consent Decree.

49

**33.    Counterparts.**

This Consent Decree may be executed by the Parties in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same Consent Decree.

**[Signatures Appear on the Following Page]**

IN WITNESS WHEREOF, the Parties hereto have approved and executed this Consent Decree on a date set forth opposite their respective signatures.

EXECUTED by the Parties as follows:

**Class Representatives**

Approved As to Form

Robbins, DiMonte, Ltd.

Dated: June 1, 2022 , 2022

By: _____
Andrés J. Gallegos, Esq., Class Counsel

Dated: June 1 , 2022

_____
Patricia Berardi

Dated: June 1 , 2022

_____
Robert Chriswell

Dated: June 1 , 2022

_____
Alice Rosemary Ortiz, deceased
by Susan Kay Devall, Executor

Dated: June 1 , 2022

_____
Austin Calloway

Dated: June 1 , 2022

_____
Ellen Sunderland

Dated: June 1 , 2022

_____
Lisa Lynch, as the parent and next friend of
M.L., a minor child

**Defendants**

Approved As to Form

Dated: _____, 2022

Dated: _____, 2022

Dated: _____, 2022

Del Galdo Law Group, LLC

_____
K. Austin Zimmer, Esq.

CITY OF PEKIN, ILLINOIS

By: _____
Mark Luft, Mayor

By: _____
Sue E. McMillan, City Clerk

## SCHEDULE & EXHIBITS

### Schedule

**4.1.7   Class Identified Priority Remediation**

### Exhibits

**A      Claim Form**
**B      Class Notice**
**C      Joint Motion for Preliminary Approval & Notice Distribution Plan**
**D      Preliminary Approval Order**
**E      Final Approval Order**

**Schedule 4.1.7**
**Class Identified Priority Remediation**

1. Sidewalk slope across the driveway Pekin Times parking lot.
2. Court Street between 4th and 5th Street excessive driveway slope to the municipal parking lot near the Tazewell building.
3. The corner Court Street and 5th Street, curb ramp slope and broken concrete.
4. Driveway slopes on Court Street down 5th Street.
5. Intersection at Margaret St. (State Route 9) and 5th Street (Route 29) broken concrete, holes in sewer grates, excessive cross slope.
6. Street pavement in the crosswalk of Margaret and 5th Street and curb cuts on those corners.
7. Narrow sidewalks and uneven surfaces along Court Street and the east side of 5th Street.
8. Curb ramps on the north side of 14th St. and Illinois Street, excessive ramp slope, small landing, broken concrete, storm sewer grate with excess openings.
9. Sidewalks, crosswalk and curb ramps along St. Joseph Pl. and Haines Avenue.
10. Sidewalks in disrepair at St. Joseph Pl. and 6th St.
11. Curb ramps, storm sewer grates and sidewalks at Koch Street and Howard Court.
12. Curb cuts at the intersection of Highwood and Lisa Court.
13. 1203 Illinois Street towards the Edison School, discontinued sidewalks, broken concrete, and missing curb cuts.
14. Curb cuts and sidewalks at the corner of Earl Street and Illinois Street.
15. 600 block of 4th Street, sidewalks in disrepair, vertical discontinuity.
16. Curb cuts on the 900 block of 4th Street.
17. Vehicles parking (at a commercial establishment) obstructing the sidewalk at 343 Derby St. and east of South Capitol and Derby Street.
18. Curb cuts at South Capitol and Derby Street.
19. Broken sidewalks, sewer grates with excessive gaps and curb cuts along 229 Derby Street.
20. Obstruction (Planter), curb cut and sewer grate with excessive gaps on the corner of 7th Street and Derby Street.
21. Sidewalks, curb cuts and sewer grates from 343 S. 4th St. and 5th Street towards Ernie's Restaurant, 613 Derby St.
22. Curb cuts and sidewalks at Bacon Street and Charles Street.
23. Lamp post obstruction of sidewalk on the west parking lot of the Pekin Public Library and at Broadway Street and Sabella St.
24. Lamp post obstruction sidewalk along Broadway and 4th Street.
25. Excessive cross slope on driveway near Sabella and Broadway to the library.
26. Outside book drop-off at the Public Library completely blocks the sidewalk and no accessible route from the main entrance of the library to the west side of the library to the west parking lot.
27. Lamp posts obstruction of sidewalks in around City Hall and the Municipal Building (South Capitol and at the east end of the funeral home parking lot).
28. Curb cuts, excessive slopes, at the intersection of Sabella and Capitol Streets.
29. Sidewalks and curb cuts at St. Mary and South Capitol Streets.
30. Missing crosswalk for curb ramps at City Hall, East across St. Mary Street.
31. Sidewalks out of plane condition directly in front of City Hall along the west side of S. Capitol St.

32. Sidewalks out of plane condition directly in front of Tazewell County Jail.
33. Curb ramps at intersections in front of representative Mike Unes' office, 19 South Capitol St.
34. Excessive gaps in pavers on sidewalks at 19 South Capitol St.
35. Curb ramps and out of plane conditions on sidewalks at the northwest corner of the Court House.
36. Excessive driveway slope on the west side of Elizabeth Street - southside of Court House.
37. Signpost obstruction just east of the driveway entrance to the Court House (along northside of Elizabeth Street)
38. Curb cuts, out of plane sidewalk conditions and no detectable warning plate at the corner of Elizabeth and 4th Street.
39. Excessive slope of driveway entrance on the west side of Elizabeth Street across from the Court House.
40. Curb cuts, excessive sewer grate gaps and sidewalks in disrepair at the corner of 6th Street and Court Street.
41. Excessive sidewalk slopes at Broadway and 14th St.
42. Curb ramps, utility pole obstruction of sidewalk, broken and missing concrete along 14th St. and Ann Eliza St.
43. Planter obstruction, curb cuts, excessive sewer grate openings at Derby and 14th Street.
44. Missing curb cuts, excessive slopes of sidewalks at the intersection of 14th St. and James Street.
45. Sidewalk deterioration, excessive cross slopes on sidewalks at Court Street and 12th St.
46. Curb cuts and narrow sidewalks at Court Street and 12th St.

***

# Exhibit A - Claim Form

# CLAIM FORM

***Berardi et al. v. City of Pekin, et al.***
**United States District Court for the Central District of Illinois**
Case No. 1:18-cv-01438

## CITY OF PEKIN RIGHT OF WAY SETTLEMENT

You may be eligible for a payment as part of a Settlement in this class-action lawsuit.
Fill out each section of this form and sign and where indicated.

**This Claims Form must be submitted no later than** ⬚⬚⬚⬚⬚⬚ **either on the Settlement Website at www.CityofPekinRightofWaySettlement.com, or by mail. If submitting this Claim Form by mail, it must be postmarked by that date and mailed to the Settlement Administrator at:**

City of Pekin Settlement Administrator
P.O. Box 26170
Santa Ana, CA 92799

| **Part One: Information** |
| --- |
| Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form. |
| Name: |
| Mailing Address: |

| City: | State: | Zip Code: |
| --- | --- | --- |

| Telephone Number: | Email Address: |
| --- | --- |

| Choose a payment method:  ☐ Zelle    ☐ PayPal    ☐ Venmo    ☐ Check |
| --- |
| Electronic Payment – If you would like to receive your settlement award electronically, please confirm your payment account details are correct. |

| Electronic Payment Email: | Electronic Payment Phone Number: |
| --- | --- |

| **Part Two: Qualification – Check all boxes that apply and provide the documents requested. Only persons meeting all of the three criteria below qualify as Class Members. If you do not provide the requested documents your claim will be denied.** |
| --- |
| ☐ **I am a person with a mobility disability and my proof of identification is enclosed.** [*Acceptable documents include a current, unexpired driver's license, photo ID card, or passport.*] |
| ☐ **I was a resident of the City of Pekin between December 11, 2016 and December 11, 2018 and my proof of residency is enclosed.** [*Acceptable documents include a tax bill, a utility statement, lease agreement, or mortgage document.*] |
| ☐ **I was denied meaningful access to the City of Pekin's curb cuts, crosswalks and sidewalks between December 11, 2016 and December 11, 2018.** |

| **Part Three: Attestation** |
| --- |
| By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf. |

| | |
| --- | --- |
| **Signature** | **Date** |

# Exhibit B - Class Notice

United States District Court for the Central District of the State of Illinois

# If You Are a Person with a Mobility Disability Residing in the City of Pekin from December 11, 2016 through December 11, 2018, You Could Get a Payment from a Class Action Settlement

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- Residents of the City of Pekin with mobility disabilities have sued the City of Pekin alleging discrimination for the City's failure to provide safe sidewalks, curb cuts and other pedestrian rights-of-way.

- The Court has allowed the lawsuit to be a class action on behalf of all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

- The Court has granted preliminary approval to a settlement between the parties. You may be eligible for money. Your legal rights are affected, whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **Submit a Claim Form** | The only way to get a payment. |
| **Exclude Yourself** | Get no payment. This is the only option that allows you to ever be a part of any other lawsuit against the City of Pekin about the claims in this case. |
| **Object** | Write to the Court about why you don't like the settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment. Give up rights. |

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 1

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the STATE of ILLINOIS

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to give final approve the settlement. Payment will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

### Any questions? Read on and visit www.CityofPekinRightofWaySettlement.com

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                    PAGE 3
1. Why did I get this notice?
2. What is this lawsuit about?
3. What is a class action and who is involved?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**                                             PAGE 4
5. How do I know if I am a part of the settlement?
6. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**                               PAGE 5
7. What does the settlement provide?
8. What can I get from the settlement?
9. What if I cannot utilize the City of Pekin's sidewalks in the future?

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM**                      PAGE 6
10. How can I get a payment?
11. When would I get my payment?
12. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**                               PAGE 7
13. How do I get out of the settlement?
14. If I don't exclude myself, can I sue the City of Pekin for the same thing later?
15. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU**                                         PAGE 8
16. Do I have a lawyer in the case?
17. Should I get my own lawyer?
18. How will the lawyers be paid?

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the State of ILLINOIS

## OBJECTING TO THE SETTLEMENT                                    PAGE 8

19. How do I tell the Court that I don't like the settlement?
20. What is the difference between objecting and excluding?


## THE COURT'S FAIRNESS HEARING                                   PAGE 9

21. When and where will the Court decide whether to approve the settlement?
22. Do I have to come to the hearing?
23. May I speak at the hearing?


## IF YOU DO NOTHING                                               PAGE 10

24. What happens if I do nothing at all?


## GETTING MORE INFORMATION                                        PAGE 10

16. Are there more details about the settlement?
17. How do I get more information?


# BASIC INFORMATION

| **1.   Why did I get this notice?** |
| --- |

Information obtained by the attorneys for the Plaintiffs identified you as a person with a mobility disability who resides in the City of Pekin.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments the settlement allows. You will be informed of the progress of the settlement.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them and how to get them.

The Court in charge of the case is the United States District Court for the Central District of Illinois and the case is known as *Berardi, et al., v. City of Pekin, et al.,* Civil Action No. 1:18–cv –01438–JBM–JEH.

| **2.   What is this lawsuit about?** |
| --- |

The lawsuit claimed that the City of Pekin discriminated against persons with mobility disabilities who resided in the City between the dates of December 11, 2016 and December 11, 2018, because it did not provide sidewalks and curb cuts in many locations throughout the City, did not maintain the sidewalks, and because it placed physical barriers such as oversized planters, mailboxes and light posts on certain sidewalks throughout the City that prevented persons with mobility disabilities to use those sidewalks. The City denies that it discriminated against residents with disabilities.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 3

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the State of ILLINOIS

### 3.   What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case Patricia Berardi, Robert Criswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland and Lisa Lynch as the parent and next friend of M.L., a minor child) sue on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members."  The persons who sued—and all the Class Members like them—are called the Plaintiffs.  The persons they sued (in this case the City and all persons who served as trustees when the lawsuit was filed on December 5, 2018) are called the Defendants. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class. United States District Court Magistrate Judge Jonathan E. Hawley is in charge of this class action.

### 4.   Why is there a settlement?

The Court did not decide in favor of the plaintiffs or defendants. Instead, both sides agreed to a settlement. That way, they avoid the uncertainty and cost of a trial. And as the City has agreed to fix the problems with the sidewalks and curb cuts the parties agreed that the City's financial resources are best spent fixing those problems and providing the class with some compensation instead of continuing to fight the lawsuit. The class representatives and the attorneys believe the settlement is best for everyone with mobility disabilities that have been denied the use of the City's sidewalks.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

### 5.   How do I know if I am part of the settlement?

District Court Judge Joe Billy McDade decided that everyone who fits this description is a Class Member: *All people with mobility disabilities who were residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.*

### 6.   I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-855-238-2675, which is the toll-free telephone number for Simpluris, the Class Action Settlement Administrator, or email Simpluris at info@CityofPekinRightofWaySettlement.com, and ask if you qualify as a member of the class, or you can fill out and return the Claim Form described on page 6, in question 10, to see if you qualify.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 4

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the STATE of ILLINOIS

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**7.   What does the settlement provide?**

The City has agreed to hire an engineering firm, TWM, Inc., to conduct a survey of 100 % of the City's sidewalks, curb cuts and crosswalks and to develop a plan for the City to fix problems that are discovered. It will take approximately 18-months from the date the Court issues its final approval of the settlement for that survey to be conducted and for the engineering firm and the City to develop a specific schedule for the work that will need to be done.

The City will spend a minimum of $250,000 each fiscal year for use exclusively towards the fixing of identified problems existing in the sidewalks, curb cuts and crosswalks. However, the City will spend an additional $1,5000,000 for fixing those problems in the first three years. Priority will be given to those sidewalks, curb cuts and crosswalks that are unsafe and identified in a schedule to the Consent Decree, then to those within a 1-mile radius of where the Class Representatives live. After that, the City will fix identified problems in existing sidewalks, curb cuts and crosswalks where there is a concentration of people with mobility disabilities, and where seniors live. After that, the City will fix sidewalks, curb cuts and crosswalks that service emergency shelters, hospitals, clinics, and schools.

In addition, the City has agreed to pay the Class Representatives $10,000 for their damages and for helping with the lawsuit. Also, there are 35 people that have assisted the attorneys who the Court approved to represent the class, and those 35 people will be paid $800 each. Finally, the City has agreed to create a $22,000 fund to pay all of the other class members who timely submit claims.

**8.   What can I get from the settlement?**

If you qualify as a Class Member and submit your Claim Form before the deadline (see question 10 below on page 6) you will be entitled to receive payment from the $22,000 fund. The amount of your payment will depend upon the number of other people who qualify as Class Members and submit their Claim Form before the deadline, but no class member will receive more than $88.00.

**9.   What if I cannot utilize the City of Pekin's sidewalks in the future?**

The City has agreed to maintain a complaint system for its sidewalks, curb cuts and crosswalks. If you have problems utilizing any of the City's sidewalks, curb cuts or crosswalks in the future, you can call 3-1-1, which is the number the City will used for you to make complaints regarding the sidewalks, curb cuts and crosswalks, or you can submit a complaint using the City's online form, which can be found at www. https://www.ci.pekin.il.us/ada_portal/file_a_grievance.php, or you can email your complaint to jaesker@ci.pekin.il.us.

Alternatively, if you cannot use the City's sidewalks, curb cuts or crosswalks in the future you may also file a complaint with the United States Department of Justice or file a lawsuit against the City. To file a complaint

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 5

with the Department of Justice, you can do so by mail at the address below or you may use the Department of Justice's online complete form, which is located at https://www.ada.gov/filing_complaint.htm.

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
4CON, 9th Floor
Washington, DC 20530

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

**10. How can I get a payment?**

To qualify for payment, you must send in a Claim Form. A Claim Form is attached to this notice. You may also get a Claim Form on the settlement website at www.CityofPekinRightofWaySettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for and sign it. The claim form may be submitted electronically on the website, or it may be mailed to the Settlement Administrator at the address set forth in the form. It must be submitted on the website or postmarked no later than **[Pending]. [Date] is the deadline to submit your Claim Form.**

**11. When would I get my payment?**

The Court will hold the hearing on **[date]** to decide whether to approve the settlement. If Magistrate Judge Hawley approves the settlement after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a Claim Form will be informed of the progress of the settlement. Please be patient.

**12.  What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you are staying in the Class, and that means you cannot sue, continue to sue, or be part of any other lawsuit against the City of Pekin about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the Claim Form, you'll agree to a "Release of Claims," attached to the Claim Form, which describes exactly the legal claims that you give up if you get settlement benefits. Keep in mind the claims in this lawsuit are for the period of time from between the dates of December 11, 2016 and December 11, 2018 only.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 6

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the settlement, but you want to keep the right to sue or continue to sue the City of Pekin, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or is sometimes referred to as "opting out of the settlement class"

### 13.  How do I get out of the settlement?

To exclude yourself from the settlement, you must complete an Exclusion Request Form, available at www.CityofPekinRightofWaySettlement.com or you can send a letter by mail saying that you want to be excluded from *Berardi, et al., v. City of Pekin, et al.* Be sure to include your name, address, telephone number and your signature. You must mail your Exclusion Request Form or exclusion letter postmarked no later than **[date]** to:

City of Pekin Settlement Administrator
PO Box 25225
Santa Ana, CA 92799

You can't exclude yourself on the phone or by email. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) the City of Pekin in the future.

### 14.  If I don't exclude myself, can I sue the City of Pekin for the same thing later?

Yes. But you may only be able to sue for disability-based discrimination as a result of the City's failure, *after* December 11, 2018, to provide safe and accessible sidewalks.

By not excluding yourself you will be legally bound by all of the orders the Court and the settlement approved by the Court in this lawsuit, which means that you cannot sue the City for the same legal claims addressed in this lawsuit for the time period between December 11, 2016 and December 11, 2018. **Remember, the exclusion deadline is [pending, 2022].**

If you start your own lawsuit against the City after you exclude yourself, you have to hire and pay your own lawyer for that lawsuit, and you have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against the City, you should talk to your own lawyer soon because your claims may be subject to a statute of limitations.

### 15.  If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a Claim Form to ask for any money. But you may sue, continue to sue, or be part of a different lawsuit against the City of Pekin.

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the State of Illinois

## THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in the case?**

The Court decided that Andrés Gallegos and Jennifer Sender with the law firm of Robbins DiMonte, Ltd., (formerly known as Robbins, Salomon & Patt, Ltd.) in Chicago, Illinois, and attorney Carl Reardon, in East Peoria, Illinois, are qualified to represent you and all Class Members. Together the attorneys are called "Class Counsel." They are experienced in handling similar cases involving disability-based discrimination. More information about Andrés Gallegos and Jennifer Sender, their practices and experience are available at www.robbinsdimonte.com.

**17. Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel is working on your behalf but if you want your own lawyer, you have the right to do so but you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

**18. How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees and expenses in the amount of $693,000.65 and costs of $44,043.52. The Court may award less than these amounts. The City of Pekin will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payment to the Class Representatives, the Declarants or any the Class Members. The City of Pekin has agreed not to opposes fees and expenses. The City of Pekin will also separately pay the cost of Simpluris, Inc. to administer the settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

**19. How do I tell the Court that I don't like the settlement?**

If you are a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *Berardi v. City of Pekin.* Your letter should include: (a) the name, address, telephone number and, if applicable, email address; (b) if represented by your own attorney, the name, address, telephone number and email address of your attorney; (c) a statement identifying the specific reasons for your objections;

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 8

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the STATE of ILLINOIS

and (d) a statement of whether your objection applies just to you or the entire Class. Mail the objection to these three different places post marked no later than **[pending, 2022]**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>211 U.S. Courthouse<br>100 N.E. Monroe Street<br>Peoria, IL 61602 | Andrés Gallegos<br>Robbins DiMonte, Ltd.<br>180 N. LaSalle, Ste. 3300<br>Chicago, Illinois 60601 | K. Austin Zimmer<br>Del Galdo Law Group, LLC<br>1441 S. Harlem Ave.<br>Berwyn, Illinois 60402 |

**20. What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may also ask to speak, but you do not have to.

**21. When and where will the Court decide whether to approve the settlement?**

The Court will hold a fairness hearing at **[Time]**, on **[date, 2022]**, at the United States District Court for the Central District of Illinois, 211 U.S. Courthouse, 100 N.E. Monroe Street, Peoria, Illinois. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Magistrate Judge Hawley will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**22. Do I have to come to the hearing?**

No. Class Counsel will answer questions Magistrate Judge Hawley may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to the Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 9

U̲N̲I̲T̲E̲D̲ S̲T̲A̲T̲E̲S̲ D̲I̲S̲T̲R̲I̲C̲T̲ C̲O̲U̲R̲T̲ for the C̲E̲N̲T̲R̲A̲L̲ D̲I̲S̲T̲R̲I̲C̲T̲ of the S̲T̲A̲T̲E̲ of I̲L̲L̲I̲N̲O̲I̲S̲

**23.  May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Berardi v. City of Pekin*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than [date, 2022], and be sent to the Clerk of the Court, Class Counsel and Defense Counsel at the three addresses on page 8, in question 19. You cannot speak at the hearing if you excluded yourself.

## IF YOU DO NOTHING

**24. What happens if I do nothing at all?**

If you do nothing, you'll get no money from the settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the City of Pekin about the legal issues in this case that occurred between December 11, 2016 and December 11, 2018. Subject to the statute of limitations, you may sue the City of Pekin about the legal issues in this case for any time period after December 11, 2018.

## GETTING MORE INFORMATION

**23. Are more details about the settlement?**

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to **Andrés Gallegos, Robbins DiMonte, Ltd., 180 N. LaSalle, Suite 3300, Chicago, Illinois 60601**; or to the **City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799,** or by visiting the website www.CityofPekinRightofWaySettlement.com.

**24. How do I get more information?**

You can call **1-855-238-2675** toll free; email: info@CityofPekinRightofWaySettlement.com; write to **City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799,** or visit the website, www.CityofPekinRightofWaySettlement.com, where are you will find answers to come in question about the settlement, a Claim Form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

Date: June _, 2022

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 10

# Exhibit C - Joint Motion for Preliminary Approval & Notice Distribution Plan

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

Patricia Berardi, Robert Chriswell, Susan Kay
Duvall, as the Executor of the Last Will and
Testament of Alice Rose Mary Ortiz; Austin
Calloway, Ellen Sunderland, and Lisa Lynch, *as
the parent and next friend of ML, a minor child,*
individually on behalf of themselves and all other
persons similarly situated,

        Plaintiffs,

v.

City of Pekin, Illinois, a municipal corporation;
Mark Rothert, *in his official capacity as the Pekin
City Manager*; John McCabe, John P. Abel,
Michael Garrison, Mark Luft, Lloyd Orrick,
Michael Ritchason and Jim Schramm, *in their
official capacities as Council Members for the City
of Pekin,*

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:18-cv-01438

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

1

# Table of Contents

**INTRODUCTION** ..................................................................................................5

**FACTUAL AND PROCEDURAL BACKGROUND** ...........................................6

**THE CONSENT DECREE** ................................................................................8

**1.   Term.** .......................................................................................................8

**2.   Injunctive Relief.** ....................................................................................8

**3.   Annual Monetary Commitment.** ..........................................................11

**4.   Monetary Relief.** ...................................................................................11

**5.   Notice Plan and Settlement Administrator.** .......................................12

**6.   Claim Form & Exclusion Request Form.** ...........................................14

**7.   Release.** .................................................................................................15

**ARGUMENT** ....................................................................................................15

   **A.   The Settlement set forth in the Consent Decree well surpasses the Seventh Circuit's standards for the approval of class action settlements.** ...............15

   **B.   The Settlement should be preliminarily approved.** ...................................16

      **1.   The Settlement provide substantial relief to the Class, particularly given the risk posed by continued litigation.** .....................................17

      **2.   Further litigation will be protracted and expensive.** ...............................19

      **3.   Class Counsel are competent, well-informed, and experienced in a strongly endorse the Settlement.** .........................................................21

      **4.   Settlement was reached in the early stages of the proceedings with minimal but meaningful discovery completed.** ......................................21

   **C.   The proposed class notice plan provides the best practicable notice and does so in an easily understood format and is nearly identical to the notice plan previously approved by the Court.** ...................................................................23

   **D.   The Court should schedule a fairness hearing to finally approve the settlement.** ......25

**CONCLUSION** ................................................................................................25

**EXHIBITS**

A      **Consent Decree**
B      **Notice Plan**
C      **Declaration of Andrés J. Gallegos, Esq.**
D      **Declaration of Jennifer M. Sender, Esq.**
E      **Declaration of Carl F. Reardon, Esq.**
F      **Proposed Preliminary Order Approving the Settlement**
G      **Proposed Final Order Approving the Settlement**

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) 13

*AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) ............14

*AT&T Mobility*, 270 F.R.D. at 347 ..........................................................................................15

*Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH ..................................6

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ................................................................17

*Cummings v. Premier Rehab Keller, P.L.L.C.,* 141 S. Ct. 659, 208 L. Ed. 2d 269 (2020)...........16

*Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998) ..................................................................13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011).........................................................................................................................19

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ........................................................................13

*Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) ......................................................21

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) ............................................................................15

*Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) .........................................................18

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ............18

*Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000)...............................18

*Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) .........................................21

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ...............................................................................................................................21

*Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013).............................................................................................................................18

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ..................................................................13, 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ............................................................................................................................................21

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ........................................17

*Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013)....................................................................................................................................16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) ..................14

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986) ...........................................................................................................................19

*Young v. Rolling in the Dough, Inc.,* No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020).................................................................................................................................14

**STATUTES**

Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*.......................................... 6

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*.................................................... 6

**RULES**

Fed. R. Civ. P. 23(b)(2) ................................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ................................................................................................... 7

Fed. R. Civ. P. 23(e)(2) .................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B)............................................................................................21

# INTRODUCTION

After nearly 3 years of litigation, numerous months of negotiations between the Parties with respect to the nonmonetary terms of a consent decree, and subsequent mediations before Magistrate Judge Jonathan E. Hawley with respect to the monetary terms, the Parties have reached an agreement to provide meaningful injunctive relief with compensatory damages for the Class.

Based on extensive analysis of the facts and the applicable law and taking into account the risks and uncertainties associated with litigation and the delays that may result from trial and appeals, as well as the fair, cost-effective and assured method of resolving the potential claims of the Class represented by the proposed Consent Decree, Class Counsel has concluded that the proposed Consent Decree provides substantial benefit to the Class and is fair, reasonable and adequate and in the best interests of the Representative Plaintiffs, the Declarants and the Class. Similarly, the City has concluded that the proposed Consent Decree is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of those with disabilities, to ensure compliance with laws protecting the rights of individuals with mobility disabilities and to resolve potential claims of the Representative Plaintiffs, the Declarants, and the Class.

Balancing the risks against the substantial attendant benefits, the Court should find that the settlement contained in the proposed Consent Decree is fair, adequate and reasonable and enter an Order: (i) granting preliminary approval of the Consent Decree; (ii) approving the form and manner of the Notice Plan and appointing a Settlement Administrator; (iii) establishing deadlines for requests for exclusion and the filing of objections to the proposed settlement contemplated by the Consent Decree; and (iv) scheduling a fairness hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Patricia Berardi; Robert Chriswell; Austin Calloway; Ellen Sunderland; and Lisa Lynch, as the parent and next friend of M.L. (collectively, "Representative Plaintiffs"), are residents, and decedent Alice Rose Mary Ortiz was a resident, of the City of Pekin, Illinois, living with mobility disabilities. Defendants are the City of Pekin, Illinois; its City Manager, Mark Rothert; and its city council members: John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason, and Jim Schramm.

On December 5, 2018, Representative Plaintiffs filed a putative class-action lawsuit, captioned *Berardi, et al. v. City of Pekin, et al.,* Case No. 1:18-cv-01438–JBM–JEH, in the U.S. District Court for the Central District of Illinois, Peoria Division, asserting, *inter alia*, the Defendants' failure to construct or maintain accessible pedestrian rights-of-way throughout the City of Pekin in violation of the Accessibility Laws (as defined therein). (Doc #1). The lawsuit alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, et seq. (*Id.*).

On December 17, 2019, the Parties submitted their initial joint motion to stay proceedings to engage in settlement negotiations. (Doc. #18). Written discovery was exchanged between the parties to help inform them in their subsequent negotiations, and no depositions were taken. Additional joint motions were subsequently filed to continue to stay proceedings as the parties continued settlement negotiations, all of which were granted. (Doc. ##19, 21 & 23). Counsel for the Parties attended a face-to-face meeting on January 23, 2020, at Pekin City Hall to discuss the items of a settlement proposal and since then have engaged in many months, through October 2020, of discussions and negotiations of a potential settlement of the injunctive issues. Thereafter however, settlement negotiations stagnated.

On December 21, 2020, Plaintiffs filed their motion for class certification. (Doc. #27). On February 24, 2021, Plaintiffs filed their First Amended Complaint. (Doc. #34). On April 19, 2021, the lawsuit was certified as hybrid class action lawsuit under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and the Court certified the plaintiff class to include all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe. (Doc. # 47). The Court defined the class claims as whether Defendants have violated Title II of the ADA, and Section 504 of the Rehabilitation Act, by denying class members the benefits of city services, programs, or activities – namely, meaningful access to the Pekin sidewalk system and pedestrian rights-of-way – on the basis of Plaintiffs' and Class Members' mobility disabilities. (*Id.*). The Court further designated the six named plaintiffs as the class representatives and designated the Andrés J. Gallegos and Jennifer M. Sender, with Robbins, Salomon & Patt, Ltd., now known as Robbins DiMonte, Ltd., and Attorney Carl Reardon as class counsel. (*Id.*).

On May 3, 2021, Representative Plaintiffs filed their Memorandum of Proposed Plan for Notice to the Class. (Doc. #48). On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class (Doc. #54). On July 7, 2021, the Parties filed a Joint Motion for Settlement Conference and Stay of Proceedings, (Doc. #55), which the Court approved on July 8, 2021.

Having made significant progress on the terms of the injunctive relief through previous months of negotiations, the Parties engaged in settlement conferences before Magistrate Judge Jonathan E. Hawley on September 13, 2021 and on October 13, 2021, to focus on reaching a

settlement with respect to the monetary relief for the Representative Plaintiffs, the Declarants, and the putative Class Members, as well as reasonable attorneys' fees and expenses. All the while the stay in the proceedings remained in effect. The latter settlement conference resulted in the Parties' reaching a tentative agreement as to monetary terms of a settlement. The mutually agreed-upon terms of the injunctive and monetary relief are memorialized in the Consent Decree.

## THE CONSENT DECREE

The proposed Consent Decree, attached hereto as **Exhibit A**,  has the following material terms, and all capitalized terms shall have the meanings ascribed to them in the proposed Consent Decree:

1. **Term.**

The Consent Decree shall become effective on the Effective Date and shall remain in effect until the completion of the City's construction and remediation of the public rights-of-way throughout the City as required therein. The specific Term of the Consent Decree shall be established by the Court upon the City's submission of the completed Updated Transition Plan to the Court.

2. **Injunctive Relief.**

The City shall engage the engineering firm, TWM, Inc., with its principal business address at 4940 Old Collinsville Road, Swansea, IL 62226, to serve as its consultant ("Consultant") during the term of the Consent Decree and to conduct and/or oversee the survey of 100% of all City's sidewalks, crosswalks, curb cuts and other public rights-of-way for purpose of obtaining a comprehensive, detailed, accurate and complete inventory of those elements, identifying which require remediation or installation, updating the City's Transition Plan and setting forth a priority

installation schedule to remediate and or install sidewalks, crosswalks, curb cuts and other public rights-of-way in compliance with Applicable Laws. As a condition precedent to all such surveys, and subsequent installations and upgrade work commencing, if such work will be performed by City-managed contractors or in-house crews, all such personnel shall be trained by the Consultant, or the Consultant shall verify such contractors' and crews' have received adequate training on the requirements of sidewalks, crosswalks, and public rights-of-way under the Accessibility Laws and on the use of the survey instrument.

The survey shall identify: (a) each street that has or does not have a sidewalk; (b) whether the corners of such streets have or do not have Pedestrian Ramps; (c) whether there are crosswalks between corners and the roadway condition of the crosswalks; (d) whether the existing sidewalk is in disrepair; and (e) all obstructions impeding full access on the sidewalk. The City shall hold at least one public hearing before the issuance of the Updated Transition Plan, seeking input from the community. Class Counsel will provide comments to the Updated Transition Plan as well.

Prioritization for remediation work shall first be given to all sidewalks, crosswalks, and Pedestrian Ramps that the Named Plaintiffs have identified in a schedule to the Consent Decree. The remediation work in that schedule shall commence during calendar year 2022. Thereafter, priority shall be given based upon geographic factors, including, but not be limited to sidewalks, crosswalks and Pedestrian Ramps along streets, within a 1-mile radius: (i) adjacent to where all Representative Plaintiffs reside; (ii) where the concentration of people with Mobility Disabilities, Visual Disabilities, and the senior population reside; (iii) servicing key locations for people with disabilities, such as emergency shelters, hospitals, clinics, and schools; (iv) servicing transit facilities; and (v) servicing public facilities and other places of interest/recreation (*e.g.*, senior services, government sites, child and youth services, libraries and cultural institutions).

Throughout the Term of the Consent Decree, the City shall ensure that all new sidewalks, curb cuts, crosswalks and Pedestrian Ramps that are newly constructed on or after the Effective Date comply with the requirements of all Accessibility Laws. Throughout the Term of the Consent Decree, whenever the City newly constructs or alters sidewalks, curb cuts, crosswalks or Pedestrian Ramps or adjacent construction projects obstruct the pedestrian rights-of-way, the City shall ensure that accessible temporary routes are provided through and around such construction and appropriate signage directing persons with Mobility Disabilities to such accessible temporary routes. The City covenants to the Class Members that it will maintain its sidewalks, crosswalks and Pedestrian Ramps as required by the Accessibility Laws, both during and after the Term so that members of the Class will be able to access them safely and independently. Maintenance will be performed on an ongoing, indefinite, and regular basis as required by the Accessibility Laws. The City covenants to the Class Members that it will routinely inspect sidewalks, crosswalks and Pedestrian Ramps where required and at all corners adjacent to planned Resurfacing, and within the scope of any Alteration or New Construction as defined by the Federal Highway Administration. The City shall require private developers and private utility companies to, *inter alia,* install or Upgrade sidewalks, crosswalks, Pedestrian Ramps, and detectable warning surfaces where required as part of the private developers' and private utility companies' construction projects, consistent with the Accessibility Laws.

The City shall maintain a complaint procedure for members of the public to request Installation or Upgrade of a sidewalk, crosswalk and/or Pedestrian Ramp during and after the Term. The City will record and track all such requests and semiannually (by July 15 and January 15) during the Term provide Class Counsel with copies of such requests. The City will acknowledge receipt of each complaint within 15 days of receiving it and provide an estimated

temporary repair date. The City will provide temporary repairs, as appropriate, consistent with the Accessibility Laws, within 60 days of receiving the complaint, and will provide permanent repairs within the same fiscal year that the complaint is received, and if cannot make those repairs within the fiscal year, those repairs shall be scheduled for completion within the next immediately following fiscal year. Class Counsel throughout the Term of the Consent Decree shall monitor the City's compliance with the Consent Decree.

### 3.  Annual Monetary Commitment.

Beginning on the Effective Date, the City shall appropriate a minimum of $250,000 each fiscal year ("Annual Monetary Commitment"), in addition to $1.5 million for the first three fiscal years immediately following the Effective Date, for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and Pedestrian Ramps and all work related thereto. The Annual Monetary Commitment is the minimum amount the City is obligated to appropriate on an annual basis for the construction of sidewalks, curb cuts, crosswalks, and Pedestrian Ramps, including those constructed in connection with the construction and alterations of streets, roadways and highways, remediation of existing sidewalks, curb cuts, crosswalks, and Pedestrian Ramps.

### 4.  Monetary Relief.

Subject to the approval of the Court, City agrees to pay to each of the Representative Plaintiffs $10,000 as compensatory damages, an incentive award and as consideration for the release of their claims. Subject to the approval of the Court, City agrees to pay to the 35 Declarants, $800 each, in total, $28,000, as compensatory damages, an incentive award and as consideration for the release of their claims. Subject to the approval of the Court, City agrees to pay the Class Members who have not opted out and have tendered all documents and

11

information to submit a claim as required by the Settlement Administrator, a total of $22,000 as compensatory damages (the "Settlement Fund"). The Settlement Fund shall be allocated and distributed to Class Members, pro rata, but not more than $88.00 each. If there are amounts of the Settlement Fund that are unclaimed after the lapse of all applicable deadlines set forth herein, subject to the Court's approval, the Settlement Administrator shall distribute the remaining Settlement Funds back to the City for immediate use for sidewalk remediation, which amount shall be in addition to the Annual Monetary Commitment.

Subject to the Court's approval, the City agrees that Class Counsel is entitled to its reasonable fees in the amount of $693,000.65 and costs, $44,043.52, incurred in the prosecution of the action. There are no additional fee provisions and there are no "kicker" provisions. The attorneys' fees and expenses are paid separate and apart from the Settlement Fund.

The injunctive relief in the Consent Decree is neither dependent nor condition upon the Court approving the aforementioned payments, nor upon the Court awarding the particular amounts sought.

**5.  Notice Plan and Settlement Administrator.**

As set forth in the Notice Plan, **Exhibit B** hereto, the notice program consists of four different components: (1) Direct Notice; (2) Informational Postings; (3) Notice by Publication; and (4) Website Posting. The forms of the notice distributed in the notice program will include a long form and a short form, proposed copies of which are set forth as exhibits to the Notice Plan. The primary form of notice is by direct mail of the long form notice sent to the 41 Representative Plaintiffs and Declarants, to residents of three Pekin Housing Authority rental buildings and seven U.S. Department of Housing and Urban Development-managed rental properties, and to residents of private assisted living and independent living facilities located in Pekin, in addition to other

potential Class Members identified by Class Counsel. As further identified in the Notice Plan, a short form of the notice will be used for informational posting at city, county and state governmental facilities and commercial establishments in the City of Pekin where it is anticipated that Class Members will have the opportunity to view. In addition, the Settlement Administrator shall request that the short form notice shall be posted at various private establishments which, based on information and belief, persons with disabilities frequent. Because there is no reasonable method to identify the residential addresses of all Class Members, the Notice Plan contemplates publication of a notice in *The Journal Star,* a Peoria, Illinois, newspaper which, upon information and belief, has a circulation of 70,000 daily and 100,000 on Sundays. Finally, the Settlement Administrator has established a dedicated webpage at hyperlink: CityofPekinRightofWaySettlement.com as a means for Class Members to obtain notice of and information about the lawsuit. The website will include hyperlinks to the Amended Complaint, Defendants' Answer and Affirmative Defenses, the Court's Order and Opinion on the Plaintiffs' Motion for Class Certification and Defendants' Motion to Dismiss, the Settlement Agreement, the Long-Form Notice, the Short-Form Notice, Exclusion Request Form, the Claim Form and other such documents as the Settlement Administrator, Class Counsel and counsel for Defendants agree to post or that the Court orders be posted on the website.

Subject to the Court's approval, the City shall engage Simpluris, Inc. ("Simpluris"), with its principal place of business at Costa Mesa, California, to serve as the Settlement Administrator for purposes of disseminating the Class Notice, responding to requests to opt out of the Class, processing Claims Form, distributing the settlement awards, managing Class Members' data, providing a website and call center support, and to perform such other responsibilities set forth in the Consent Decree. All costs associated with the Settlement Administrator shall be borne by the

City, separate and apart from the Settlement Fund. Simpluris is a highly experienced and well-regarded third-party administrator who will implement the Court's approved Notice Plan.

**6. Claim Form & Exclusion Request Form.**

In order to receive monetary payment from the Settlement Fund, Class Members must submit a claim form ("Claim Form"), attached as an exhibit to the Notice Plan, by the claims deadline which shall be no later than 90 calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star*. The Claim Form may be submitted online or by U.S. mail.

For online submissions, the Claim Form shall require the Class Member to enter their contact information and mailing address and to select a payment option from four choices: Zell, PayPal, Venmo or physical check mailed to the address provided on the Claim Form. If a Class Member selects one of those electronic payment options they must enter the email address and/or mobile telephone number associated with the selected account. Each Class Member shall also be required to attest under penalty of perjury that he or she is a person with a mobility disability who resided in the City of Pekin from December 11, 2016 through December 11, 2018 and was denied meaningful access to public pedestrian rights-of-way in the City during that timeframe. Proof of residency during that timeframe shall be required. Acceptable forms of proof include property tax bill; housing lease or rental agreement; mortgage document; or utility statement. In addition, proof of identity shall be required. Acceptable forms of proof include a current, unexpired driver's license, photo identification card or passport. The failure to provide the documents requested will result in the denial of the claim. A digital signature shall be required and make the following attestation under penalty of perjury:

> By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and

14

that nobody has submitted another claim in connection with this Settlement on my behalf.

Class Members may also submit the paper Claim Form by mail. The paper Claim Form asks the Class Member to provide the same information as required above. The Claim Form identifies the no later than date the Claim Form must be postmarked.

Class Members desiring to opt-out of the settlement will be required to complete and execute an Exclusion Request Form attached as an exhibit to the Notice Plan. The opt-out period shall also be 90 calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star.*

### 7. Release.

In exchange for the relief afforded in the Consent Decree, the Defendants[1] will receive a release of all Released Claims.[2] The release is narrowly tailored to claims that could be asserted in the class action litigation.

## ARGUMENT

### A. The Settlement set forth in the Consent Decree well surpasses the Seventh Circuit's standards for the approval of class action settlements.

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements—particularly in class actions and other complex matters where the inherent costs,

---

[1] Including the name the Defendants and its and their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on its and their behalf. Consent Decree, §18.

[2] "[A]ny and all causes of action, claims, rights, damages, punitive, or statutory damages, penalties, liabilities, expenses and losses, and issues, that any of the Plaintiffs have or could have made against the Defendants in the Class Action, under any claims under federal, state, or local law, rule, or regulation." Consent Decree, §18.

delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class

could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980)

(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873,

875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts

naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th

ed. 2002) (collecting cases).

The proposed Settlement resulting from honest arm's-length negotiations by otherwise

vigorous adversaries who are competent, experienced counsel, provides Class Members with

monetary relief, but more importantly, substantial injunctive relief while at the same time

mitigating the risk of protracted litigation and/or a negative outcome that would preclude any

recovery whatsoever for the Class. The terms of the injunctive relief were first extensively

negotiated by the Parties prior to any negotiations relating to the monetary terms.

**B.  The Settlement should be preliminarily approved.**

Federal Rule of Civil Procedure 23(e) provides that a court may approve a proposed class

settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see

also Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Young v.

Rolling in the Dough, Inc.,* No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020).

At the preliminary approval stage, the district court should assess whether the proposed settlement

falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id*.

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (*quoting Isby*, 75 F.3d 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable, and adequate: (a) the strength of the plaintiff's case compared to the amount of the settlement offer; (b) the length, complexity, and expense of further litigation; (c) the opinion of competent counsel; and (d) the stage of the proceedings and amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these factors weighs in favor of finding the proposed settlement fair, reasonable, and adequate, warranting its preliminary approval.

### 1. The Settlement provide substantial relief to the Class, particularly given the risk posed by continued litigation.

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement

is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The settlement provides significant injunctive relief for the Plaintiffs, relief that the individual Class Members likely would not be able to obtain on their own if they brought individual actions as it requires the City to appropriate a minimum of $250,000 (the "Annual Monetary Commitment") for each year of the Term to remediate all identified deficiencies in sidewalks, curb cuts, crosswalks, and other public rights-of-way no later than the end of the City's 2026 fiscal year. In addition, the City shall appropriate $1.5 million for the first three fiscal years immediately following the Effective Date, for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and Pedestrian Ramps and all work related thereto. The Annual Monetary Commitment is the minimum amount the City is obligated to appropriate on an annual basis for the construction of sidewalks, curb cuts, crosswalks, and Pedestrian Ramps, including those constructed in connection with the construction and alterations of streets, roadways and highways, remediation of existing sidewalks, curb cuts, crosswalks, and Pedestrian Ramps.

There are significant risks in continuing with litigation. The Representative Plaintiffs believe in the strength of their claims asserted against the Defendants, however, the Defendants did raise an undue financial burden affirmative defense, which if it can be proven, could potentially limit the scope of both the injunctive and monetary relief and could considerably lengthen the number of years in which the City would have an obligation to remediate its public rights-of-way. Thus, continued litigation poses a significant risk of a much narrower scope of recovery than what has been negotiated by the Parties. Moreover, before the current term of the United States Supreme Court was the issue of whether compensatory damages that are available under Title VII of the Civil Rights Act of 1964 and the statutes that incorporate its remedies, like the Rehabilitation Act

18

of 1973, include compensation for emotional distress. *See Cummings v. Premier Rehab Keller, P.L.L.C.,* 141 S. Ct. 659, 208 L. Ed. 2d 269 (2020). On April 28, 2022, the United States Supreme Court held emotional distress damages are not recoverable in private actions to enforce the anti-discrimination provisions under the Rehabilitation Act of 1973. *Id.*, 142 S. Ct. 1562 (2022). Thus, compensatory damages are only available for the Representative Plaintiffs and those members of the Class that can prove physical damage to their respective mobility devices or personal injuries as a result of the City's acts and omissions relating to its pedestrian rights-of-way, a significant fact that favors approval of the settlement. *See, In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Having to demonstrate physical damage to their respective mobility devices or physical injuries sustained would require individual inquiries which would considerably lengthen the trial and add significantly to its expense.

While the Representative Plaintiffs maintain that Defendants have more to lose at trial and face more risks, warranting the material injunctive and monetary recovery the Representative Plaintiffs have achieved in this proposed settlement, but nonetheless acknowledge that the settlement now reduces risk to themselves and the Class Members.

**2.   Further litigation will be protracted and expensive.**

Preliminary approval is also favored because "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As explained above, there is significant risk that even if the Plaintiffs prevail in their claims that the scope of relief obtained through litigation may be significantly less than what the Parties have now negotiated.

Continued litigation would be lengthy, very expensive and involve extensive motion practice, including motions for summary judgment in various pretrial motions, as well as extensive fact and expert discovery including the preparation of expert reports, expert depositions and *Daubert* motions. While still very early in the discovery process, combined, Class Counsel have invested over 1,800 hours in this litigation thus far, with fees in excess of $800,000. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). Continuing with litigation, going through trial, Class Counsel estimates that the fees will likely exceed twice the amount incurred thus far.

In addition, the case will likely not be ready for trial until late 2024. Representative Plaintiffs have identified over 15 former and current city officials, third-party auditors, and others whose depositions will be taken. The City will require taking the depositions of the six Representative Plaintiffs, and likely the 35 Declarants. And then there are experts whose depositions will be required. Even if the Class recovered judgment at trial in excess of the amounts negotiated here, there is the risk of the City filing posttrial motions and an appeal that would deprive the Class of recovery for years, and possibly forever in the event of a reversal.

Representative Plaintiffs have achieved a substantial and meaningful relief for the entire Class in the very early stages of this litigation. The City has agreed to an enormous undertaking to address public rights-of-way throughout the entirety of the City. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) ("the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate and reasonable when the calculation of the value of the case took into account the time value of money).

### 3.  Class Counsel are competent, well-informed, and experienced in a strongly endorse the Settlement.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon declarations submitted by class counsel as well as its own observations of class counsel during the litigation. *Id*. This Court appointed Mr. Gallegos, Ms. Sender, and Mr. Reardon as Class Counsel in recognition of their significant experience in civil rights cases, complex litigation, and good judgment. Each of these attorneys can attest that the negotiations were difficult and complex, and like any settlement, involved concessions on both sides that were necessary to make a final agreement possible. Each of the Class Counsel unanimously endorse the settlement and strongly recommended its approval. *See* **Exhibits C – E** hereto, Declarations of Attorneys Gallegos, Sender, and Reardon, respectively.

Accordingly, the third *Isby* factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### 4.  Settlement was reached in the early stages of the proceedings with minimal but meaningful discovery completed.

The last *Isby* factor concerns the stage of the proceedings and the amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor "indicates

how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

The proposed settlement was reached after nearly 3 years of litigation, and it is informed by Class Counsel's investigation and its expert's analysis of the conditions of the City's public rights-of-way. Armed with this information, Representative Plaintiffs and their counsel had "a clear view of the strength and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable and adequate settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986).

Mediation before Magistrate Judge Hawley was also hard-fought. The parties engaged in two rounds of mediation, 30 days apart, to reach a monetary settlement, having previously agreed on the overwhelming majority of the terms of the injunctive relief. That settlement was only possible because of Class Counsels' in-depth analysis of what would be required of the City to comply with its federal nondiscrimination mandates public rights-of-way and their fully informed factual background of the issues gleaned in discovery.

While no depositions have yet to be taken, written discovery has been exchanged and has been extensive. In addition, Class Counsel conducted extensive informational investigations in the City, meeting with putative class members to learn of their experiences, obtained declarations from over 40 putative class members in support of its motion for class certification, surveyed portions of the City's public rights-of-way on its own and analyzed results of its engineering expert's survey and assessment of the conditions of the City's public rights-of-way. Accordingly, Class Counsel confirms that the settlement achieved and well surpassed all tests for fairness, reasonableness, and adequacy.

As the Settlement is "the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced," the Court may presume the settlement to be fair, adequate, and reasonable. H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002).[3]

Accordingly, the final factor weighs in favor of finding the Settlement embodied in the Consent Decree as fair, reasonable and adequate. A draft proposed form of the Preliminary Order Approving the Class Action Settlement is attached hereto as **Exhibit F** hereto.

**C. The proposed class notice plan provides the best practicable notice and does so in an easily understood format and is nearly identical to the notice plan previously approved by the Court.**

---

[3] *See also, e.g., Fox v. Asset Acceptance, LLC*, No. CV 14-734-GW(FFMx), 2015 U.S. Dist. LEXIS 193865, at *23 (C.D. Cal. Aug. 17, 2015) ("At this point, the parties have participated in multiple mediations and Plaintiff has conducted additional confirmatory discovery — before reaching this Settlement. . . . Such discovery supports a finding of fairness."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490, at *17-18 (S.D. Cal. Dec. 15, 2011) (Finding settlement fair, reasonable, and adequate when reached upon "only . . . limited confirmatory discovery" because the parties determined they had exchanged sufficient information to make an informed decision; the parties' counsel were well versed in class action litigation and the subject matter underlying the case; and the disputed issues were legal, not factual, such that extensive discovery may not have been required.); *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, at *14-15 (S.D. Cal. Oct. 13, 2016) (The "time and effort" associated with post-settlement and post-mediation negotiations, confirmatory discovery, and informal discovery "militate in favor or preliminary approval."); *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091 (VAB), 2019 U.S. Dist. LEXIS 96742, at *59-61 (D. Conn. June 10, 2019) (Finding plaintiffs "gained a sufficient understanding of their case such that they have  had an opportunity to evaluate the strengths and weaknesses of their claims as well as the adequacy of settlement" even though "Class Counsel only completed informal and confirmatory discovery and had not yet adjudicated pending motions to dismiss. . . ."); *In re Nissan Radiator*, No. 10 CV 7493 (VB), 2013 U.S. Dist. LEXIS 116720, at *13-14 (S.D.N.Y. May 30, 2013) ("[T]he settlement agreement is the product of extensive, arm's-length negotiations by parties represented by experienced and talented counsel with expertise in these types of cases. Additionally, although settlement was reached before extensive merits discovery, plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement. . . . Therefore, the Court believes the settlement is the result of serious, informed, and non-collusive negotiations.").

Fed. R. Civ. P. 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." While actual individual notice may be the ideal, due process does not always require it. See *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) (rejecting requirement of individual notice); *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases); accord, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class [Doc. #54]. On July 7, 2021, the Parties filed a Joint Motion for Settlement Conference and Stay of Proceedings, (Doc. #55), which the Court approved on July 8, 2021, and therefore that approved Plan for Notice to the Class was not effectuated.

As set forth in Representative Plaintiffs' Memorandum of Proposed Plan of Notice, filed contemporaneously herewith, the Notice Plan is nearly identical to that previously approved by the Court, with the exception of Simpluris ("Simpluris"), a California-based corporate third-party claims administrator, will act as the Settlement Administrator responsible for implementing the four components of the Notice Plan: (1) direct notice to all reasonably identifiable Class Members; (2) notice by publication; (3) informational postings; and (4) website posting. In addition, Simpluris shall administer the settlement fund and process all claims submitted by the Class Members.

24

Accordingly, Representative Plaintiffs respectfully request that the proposed Notice Plan be approved, together with the Class Notices and Claim Form.

**D.  The Court should schedule a fairness hearing to finally approve the settlement.**

Finally, the last step in the settlement approval process after completion of the Notice Program will be a Final Approval Hearing to consider fairness, reasonableness, and adequacy of the proposed Consent Decree, and to determine the reasonableness of the requested attorneys' fee, expense and service awards. Representative Plaintiffs, contemporaneously herewith, have submitted a proposed order containing a proposed schedule of events for the Court's consideration before the hearing on the instant motion. A draft proposed form of the Final Order Approving the Class Action Settlement is attached hereto as **Exhibit G** hereto.

## <u>CONCLUSION</u>

For the foregoing reasons, Representative Plaintiffs and the Defendants respectfully request that the Court grant this joint motion in its entirety and enter an order (i) granting preliminary approval of the Consent Decree; (ii) appointing Simpluris, Inc. as the Settlement Administrator; (iii) approving the Notice Plan and the forms identified therein; (iv) scheduling a fairness hearing; (v) establishing deadlines for the filing of objections to the proposed settlement contemplated by the Consent Decree and requests for exclusion; and (vi) establishing a schedule for the performance of certain actions contemplated herein.

Dated: June 13, 2022                                      Respectfully Submitted,


By: /s/ Jennifer M. Sender
Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Class Counsel
Robbins DiMonte, Ltd.
180 N. LaSalle Street, Suite 3300

25

Chicago, IL 60601
Phone: (312) 782-9000
Fax: (312) 782-6690
jsender@robbinsdimonte.com
agallegos@robbinsdimonte.com


Dated: June 13, 2022                    /s/ Carl F. Reardon
                                        Carl F. Reardon (ARDC No. 2295725)
                                        Class Counsel
                                        120 Illini Dr.
                                        East Peoria, IL 61611
                                        (309) 699-6767
                                        carlreardon@comcast.net


Dated: June 13, 2022                    /s/ K. Austin Zimmer
                                        K. Austin Zimmer
                                        Counsel for the Defendants
                                        Del Galdo Law Group, LLC
                                        1441 S. Harlem Avenue
                                        Berwyn, Illinois   60402
                                        (708) 222-7000 - telephone
                                        (708) 222-7001 - facsimile
                                        zimmer@dlglawgroup.com

**Exhibit D - Preliminary Approval Order**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child,* individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | ) ) ) ) ) ) ) ) | Case No. 1:18-cv-01438 |
| Defendants. | | |

**ORDER**

The Parties have applied to the Court for an order preliminarily approving the settlement of this action in accord with the Proposed Consent Decree ("Consent Decree"), which sets forth the terms and conditions of the proposed settlement and dismissal of the action with prejudice, with the Court retaining jurisdiction to enforce the Consent Decree throughout its term. Having read the papers submitted and carefully considered the arguments of relevant legal authority, and good cause appearing, the court GRANTS the Parties' Joint Motion for Preliminary Approval of Class Action Settlement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court hereby preliminarily approves the Consent Decree. The Court finds on a preliminary basis that the Consent Decree is fair, adequate and reasonable to all potential Class Members. It further appears to the Court that the settlement at this time will avoid substantial additional cost to all Parties, as well as avoid the delay and risks presented by for the prosecution of issues either in the current or separate litigation proceedings which are addressed by the Consent Decree. It further appears that the Consent Decree has been reached as the result of good faith, prolonged, serious, and non-collusive arm's-length negotiations.

2.      The Court hereby approves Simpluris, Inc., with its principal place of business at Costa Mesa, California, to serve as the Settlement Administrator.

3.      The Court hereby approves, as to form and content, the proposed long notice form, short notice form, claim form and exclusion request form attached as exhibits to the Proposed Plan for Notice to the Class (the "Notice Plan"). The Court finds that the distribution of the notice in the manner and form set forth in the Notice Plan meets the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e). The Notice Plan includes a notice scheme that is the best practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Parties shall submit declarations to the Court as part of the Motion for the Final Approval of the Class Action Settlement confirming compliance with the notice provisions of the Notice Plan.

4.      A hearing on final approval of the Consent Decree ("Fairness Hearing") shall be held before the Court on a date set by the Court, in Section 6.i. below, to determine all necessary matters concerning the Consent Decree, including whether the proposed Consent Decree's terms and conditions are fair, adequate, and reasonable, and whether the Consent Decree should receive

final approval by the Court, as well as to rule on Class Counsel's motion requesting an award of reasonable attorneys' fees, costs and expenses.

5.      Any Class Member may object to the Consent Decree, no later than ninety (90) calendar days after the newspaper publication of the Settlement Notice (the "Objection Deadline"), in *The Journal Star,* by filing written objections with the Court, Class Counsel and Defense Counsel. Any Class Member may object to any aspect of the proposed Consent Decree either on his or her own or through an attorney hired at his or her expense. Any Class Member who wishes to object to the proposed Consent Decree may file a written statement of objection no later than the Objection Deadline. Such statement should include: (a) the name, address, and, if available, telephone number and email address of the Class Member objecting; (b) if represented by counsel, the name, address, telephone number and email address of his or her counsel; (c) a statement identifying the specific grounds for the Class Member's objections; and (d) a statement of whether his or her objection applies to the Class Member or the entire class. Any Class Member who wishes to object to the proposed Consent Decree may also present objections at the Fairness Hearing. The procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Members' objection to the Consent Decree, in accordance with due process rights of all Class Members. Pending the Fairness Hearing, all proceedings in this action, other than proceedings necessary to carry out and enforce the terms and conditions of the Consent Decree and this Order, are hereby stayed. Additionally, the Court enjoins all Class Members from asserting or maintaining any claims to be released by the Consent Decree until the date of the Fairness Hearing.

Any Class Member may opt-out of the settlement by completing and executing an Exclusion Request Form attached as an exhibit to the Notice Plan. The opt-out period shall also be ninety (90)

calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star.*

6.      In accordance with the above, the Court adopts the following schedule:

a.      Within ten (10) calendar days after entry of the Order Granting Preliminary Approval, the Settlement Administrator shall mail the Long Notice Form, in the form of Exhibit A to the Notice Plan, together with the Claim Form and Exclusion Request Form, Exhibits C and D, respectively, to the Notice Plan, to each known potential Class Member and those that can be identified through reasonable means.

b.      Within ten (10) calendar days after entry of the Order Granting Preliminary Approval, Class Counsel shall cause the Short Form Notice, in the form of Exhibit B to the Notice Plan, to be posted in the City and state governmental facilities and commercial establishments in the City of Pekin set forth in the Notice Plan.

c.      Commencing within ten (10) calendar days after entry of the Order Granting Preliminary Approval, the City shall cause to be published the long notice form, in the form of Exhibit E to the Notice Plan, in *The Journal Star*, to appear three days per week (Mondays, Thursdays and Sundays) for the 12-week (90 day) duration of the opt out period.

d.      Within fifteen (15) calendar days after entry of the Order Granting Preliminary Approval, the Settlement Administrator shall post on the case specific website established by the Settlement Administrator hyperlinks to the documents and forms identified in the Notice Plan.

e.      Within fifteen (15) calendar days after entry of the Order Granting Preliminary Approval, Class Counsel shall request Advocates for Access Center for Independent

Living to post the Website Notice, in the form of Exhibit F to the Notice Plan, on its website, requesting that it be maintained on its website for ninety (90) calendar days.

      f.     Thirty-five (35) calendar days prior to the Objection Deadline, Plaintiffs shall file a Motion for an Award of Reasonable Attorneys' Fees, Expenses and Costs. The hearing on that Motion shall be concurrent with the Fairness Hearing.

      g.     Each Class Member shall be given a full opportunity to object to the proposed settlement and Class Counsel's request for an award of reasonable attorneys' fees, expenses and costs, and to participate at the Fairness Hearing. Any Class Member seeking to object to the proposed settlement may submit an objection to the Court in writing, via regular email or filed in person.

      h.     The Parties shall file a Joint Motion for Final Approval and may respond to objections, if any, no later than five (5) calendar days prior to the Fairness Hearing. On the same date, the Parties shall also file statements of compliance with notice requirements.

      i.     The Fairness Hearing shall be held on _____ , 2022 at _____ a.m. in Courtroom ____ of the above referenced Court.

      7.     In the event the Court does not grant final approval to the settlement, or for any reason the Parties fail to obtain a Final Judgment and Order Approving Settlement as contemplated by the Consent Decree or the Consent Decree is terminated pursuant to its terms for any reason, or the Effective Date does not occur for any reason, then the Consent Decree and all orders and findings entered in connection with the Consent Decree and the settlement shall become null and void and be of no further force and effect whatsoever, shall not be used or referred to for any purpose whatsoever, and shall not be admissible or discoverable in this or any other proceeding.

8.      This Order shall not be construed or used as an admission, concession or declaration by or against the City of any fault, wrongdoing, breach or liability. It shall not be deemed to be a stipulation as to the proprietary of class certification, or any admission of fact or law regarding any request for class certification, and any other action or proceeding, whether or not involving the same or similar claims. Nor shall this Order be construed or used as an admission, concession or declaration by or against Plaintiffs or any other Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any defenses or claims he, she, or it may have in the action or in any other proceeding.

**IT IS SO ORDERED.**

Dated: _____

_____
United States Magistrate Judge

**Exhibit E - Final Approval Order**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child*, individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, not individually, but in his official capacity as the Pekin City Manager; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, not individually, but in their official capacities as Council Members for the City of Pekin, | ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-01438 |
| Defendants. | | |

**FINAL JUDGMENT AND ORDER APPROVING CLASS ACTION SETTLEMENT**

WHEREAS, on _____ 2022, the Court held a hearing (the "Fairness Hearing") to determine, among other things, whether the settlement in this action by the Defendants City of Pekin (the "City"), Mark Rothert, not individually, but in his official capacity as the Pekin City Manager; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, not individually, but in their official capacities as Council Members for the City of Pekin (collectively, "Defendants"); and the Plaintiffs, Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, as the parent and next friend of ML, a

1

minor child (collectively, "Representative Plaintiffs") as set forth in the Consent Decree a copy of which is attached hereto as Exhibit 1 (the "Consent Decree") is fair, reasonable and adequate, such that an Order of Final Approval should be issued and final judgment upon said Consent Decree should be entered by the Court;

WHEREAS, the Fairness Hearing was attended by the Parties, through their respective counsel of record in this action and by such other individuals and entities as set forth in the record of this matter; and

WHEREAS, the Court has issued its Order giving final approval to the Parties' settlement as set forth in the Consent Decree after the Fairness Hearing.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.      The Court, for purposes of this Judgment, adopts the terms and definitions set forth in the Consent Decree.

2.      The Court has jurisdiction over the subject matter of this action, the Representative Plaintiffs, the Class, the Consent Decree, and the Defendants.

3.      The Court finds that the notice to the Class Members of the pendency of this action and of the proposed settlement was disseminated by each of the means required under the Consent Decree and the Order of this Court, dated _____, 2022, and was otherwise fully implemented.

4.      The Court finds that such notice to the Class Members, as ordered and implemented, was reasonably calculated under circumstances to apprise the Class Members of the pendency of this action, all material elements of the proposed settlement, and their opportunity (a) to submit written objections to the settlement, and (b) to appear at the Fairness Hearing to object to or comment on the settlement. The Notice of Settlement was reasonable and best notice

2

practicable to all Class Members and complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules. A full and fair opportunity has been afforded to members of the Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Class, as set forth below, are bound by this Judgment.

5.      On April 19, 2021, the Court certified the Class, appointed the Representative Plaintiffs as representatives of the Class, and appointed the following counsel as Class Counsel to represent the Class Members: (i) Andrés J. Gallegos and Jennifer M. Sender with Robbins DiMonte, Ltd., formerly Robbins, Salomon & Patt, Ltd.; and (ii) Attorney Carl Reardon.

6.      The Court finds that the Class continues to meet the requirements for class certification under the Federal Rules for Civil Procedure and all other applicable laws and rules. In particular, the Court finds that: (a) joinder of the Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers; (b) there are questions of law and fact common to the Class; (c) Representative Plaintiffs' claims are typical of the claims of the Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Class and will continue to do so; (e) Plaintiffs and the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sorts of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Class, so that the final declaratory and injunctive relief is appropriate to the Class.

7.      The Court grants final approval to the settlement set forth in the Consent Decree and finds that it is fair, reasonable, adequate and in the best interests of the Class as a whole. The

Court grants final approval of the release of the Defendants from the Release Claims as set forth in the Consent Decree.

8.      The Court further finds that the City's Annual Monetary Commitment, which requires the City to appropriate such funds for the first three fiscal years immediately following the effective date of the Consent Decree for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and pedestrian ramps and all work related thereto as contemplated by the Consent Decree is proper and reasonably calculated based on available information to maintain and ensure accessibility of pedestrian rights-of-way located in the City of Pekin to persons with Mobility Disabilities. Accordingly, the settlement shall be consummated in accordance with the terms and conditions of the Consent Decree.

9.      As required by the Consent Decree, the Court will establish the "term" of the Consent Decree after the engineering consultant completes the Updated Transition Plan.

10.      Objections to the settlement are overruled for the reasons explained in the Court's accompanying findings.

11.      The Class Representatives and the Class Members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively deemed to have released and forever discharge the Defendants from all Released Claims as set forth in the Consent Decree. All Class Members are bound by this Judgment.

12.      The Court approves Class Counsels' request for attorneys' fees and expenses, finding the amounts request to be reasonable.

13.      The benefits described in the Consent Decree are the only consideration, fees, costs and expenses that the City shall be obligated to give to any party or entity, including without limitation the Class Representatives, the Class Members, and Class Counsel in connection with

the claims released in the Consent Decree and/or the payment of attorneys' fees, costs and expenses in this action.

14.     The Consent Decree and this Judgment are not admissions of liability or fault by the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation of law by the City. The Consent Decree is not a concession by the Parties and, to the fullest extent permitted by law, neither this Judgment, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal or administrative action or proceeding to establish any liability of, or admission by the City.

15.     Notwithstanding the foregoing, nothing in this Judgment shall be interpreted to prohibit the use of this Judgment to consummate or enforce the Consent Decree or Judgment, or to defend against the assertion of Release Claims in any other proceeding, or as otherwise required by law.

16.     In accordance with the terms of the Consent Decree, which is attached hereto, the Court reserves exclusive and continuing jurisdiction over the Representative Plaintiffs, the Class Members, the Defendants and the Consent Decree throughout the term of the Consent Decree, for the sole purpose of supervising the implementation, enforcement, construction, and interpretation of the Consent Decree and this Judgment. In that regard, any challenges to the Consent Decree's terms or implementation, whether under state or federal law, shall be subject to the exclusive and continuing jurisdiction of this Court.

**IT IS SO ORDERED.**

Dated: _____

_____
United States Magistrate Judge

5

**Exhibit B - Notice Plan**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child,* individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager;* John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | ) ) ) ) ) ) ) ) | Case No. 1:18-cv-01438 |
| Defendants. | | |

**PLAINTIFFS' PROPOSED PLAN FOR NOTICE**
**TO THE CLASS AND SUPPORTING MEMORANDUM**

**EXHIBITS**

A      Long Notice Form

B      Short Notice Form

C      Claim Form

D      Exclusion Form

E      Newspaper Announcement

F      Website Notice

## I.    INTRODUCTION

On April 19, 2021, the Court certified a class in this lawsuit [Doc. #47]. The Court certified the following Class:

> "All persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016, through December 11, 2018, and who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe."

The Court certified the class as a hybrid class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class [Doc. #54].

On July 8, 2021, the Court approved the Parties' Joint Motion for Settlement Conference and stayed the proceedings pending the settlement conference. The Parties engaged in settlement conferences before Magistrate Judge Jonathan E. Hawley on September 13, 2021 and on October 13, 2021, all the while the stay in the proceedings remained in effect, the latter settlement conference resulting in the Parties' reaching a tentative agreement as to monetary terms of a settlement. The Parties' having since reached agreement on the nonmonetary terms of the settlement, hereby propose the following notice plan to inform the Class Members of the proposed settlement and their rights and options as Class Members. The proposed notice plan is substantially similar to the notice plan previously approved by the Court when notice to the Class of the Court's certification of the action as a class action and of their opt out rights were contemplated.

Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

2

While actual individual notice may be the ideal, due process does not always require it. See *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) (rejecting requirement of individual notice); *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases); accord, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174–75, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process. See *Hughes v. Kore of Indiana Enterprise, Inc.,* 731 F.3d 672, 676–77 (7th Cir. 2013). As long as the alternative means satisfy the standard of Rule 23(b)(3), there is no due process violation. *See, e.g., Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 418 (N.D.Ill. 2012). Courts have routinely held that when reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted. *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012); Federal Judicial Center, *Manual for Complex Litigation* § 21.311, pp. 287–88 (4th ed.2004).

In *Hughes v. Kore of Indiana Enterprise, Inc.,* 731 F.3d 672, 676–77 (7th Cir. 2013)*,* where each plaintiff's claim was valued at approximately $1,000 or less, the court approved a notice plan consisting of sticker notices on the defendant's two ATMs, publication of a notice in the primary local newspaper, and notice on a website. *Hughes,* 731 F.3d at 676–77. In Hughes, the

court did not insist on first-class mail even though the notice plan likely would not reach everyone in the class, because the notice plan was "commensurate with the stakes." *Id.* at 676. Courts have routinely held that when reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted. *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012); Federal Judicial Center, *Manual for Complex Litigation* § 21.311, pp. 287–88 (4th ed.2004).

On July 6, 2021, the Court approved Plaintiffs' Amended Proposed Plan for Notice to the Class, to inform potential Class Members of the Court's certification of the action as a class action and of their rights to opt out of the class [Doc. #54].

On July 8, 2021, the Court approved the Parties' Joint Motion for Settlement Conference and stayed the proceedings pending the settlement conference. The Parties engaged in settlement conferences before Magistrate Judge Jonathan E. Hawley on September 13, 2021 and on October 13, 2021, all the while the stay in the proceedings remained in effect, the latter settlement conference resulting in the Parties' reaching a tentative agreement as to monetary terms of a settlement. The Parties' having since reached agreement on the nonmonetary terms of the settlement, hereby propose the following notice plan to inform the Class Members of the proposed settlement and their rights and options as Class Members. The proposed notice plan is substantially similar to the notice plan previously approved by the Court when notice to the Class of the Court's certification of the action as a class action and of their opt out rights were contemplated.

## II.    PROPOSED NOTICE PLAN

### A.    The Notice Program

Pending this Court's approval, Simpluris ("Simpluris") with its principal place of business in Costa Mesa, California, will serve as the Settlement Administrator, and will be responsible for

4

administrating the Notice Program. The Notice Program consists of four different components: (1) Direct Notice; (2) Notice by Publication; (3) Informational Postings and (4) Website Posting. Simpluris has significant experience acting as settlement and claims administrators in similar actions. The City  will bear the costs of the Notice Program.

The forms of the notice distributed in the Notice Program will include a Long Form and a Short Form. A copy of the proposed Long Notice Form is attached as **Exhibit A**, hereto and a copy of the proposed Short Notice Form is attached as **Exhibit B**, hereto. The proposed Long Form and Short Form follow the sample notices published at the Federal Judicial Center, https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf and include the following in design elements:

- Designed using page-layout techniques (e.g., headlines) to command class members' attention;
- Carry all of the information required by Rule 23;
- Are written in clear, concise, easily understood, non-legal language;
- The long form uses topic headings in question form, with a detailed table of contents; and rearranges materials to correspond more exactly with section headings, and uses the personal "you" rather than third-person references to "claimants."
- Contains sufficient information for a class member to make an informed decision;
- Avoid redundancy and unnecessary details.


Further, to avoid the appearance of junk mail, Simpluris proposes sending the direct notice in standard white, flat envelopes with the return address including the title "City of Pekin Settlement Administrator," with its address at PO Box 25225, Santa Ana, CA 92799. The envelope shall include a line stating: "Notice to Pekin, Illinois, citizens with a mobility disability from December 11, 2016, to December 11, 2018."

B.      Direct Mail – Long Notice Form

The primary form of notice is by direct mail. According to statistics published by the United States Census Bureau, based on the 2019 census, only 2% of the population of the City of Pekin speak a language other than English.[1] Accordingly, the notice forms will be disseminated only in English. Plaintiffs will bear the costs of the direct notice.

Direct Notices will be sent to the following individuals:

1.      The 41 named plaintiffs' and Class member declarants' residential addresses that are currently known.

2.      Residents of the three Pekin Housing Authority rental buildings. Class Counsel will compile addresses for all of the rental units in those rental buildings. There are 196 rental units in the Pekin Housing Authority buildings. https://www.pekinhousingauthority.com/properties/

3.      Class Counsel will compile addresses for all of the rental units of the seven HUD-managed rental properties in Pekin.[2] These buildings in total house 726 rental units. https://resources.hud.gov/

4.      Residents who have applied to the City of Pekin for and received handicapped parking spots in front of their residences. Class Counsel has obtained the names and addresses from the Defendants of all residents who have requested handicapped parking in front of their homes.

5.      Class Counsel shall cause to be obtained a mailing list from Advocates for Access Center for Independent Living for its consumers and cause Simpluris to mail long notices to each address on the Advocates for Access mailing list.

6.      Residents who have ramped entrances to their homes. Class Counsel will obtain the addresses of any homes with visible ramped entrances identified by a Google Map search of Pekin conducted by Class Counsel. Class Counsel shall provide those addresses to Simpluris to mail long notices to each of those identified residence.

---

[1] https://www.census.gov/quickfacts/pekincityillinois
[2] Court Place Apartments, 230 Court Street; Willow Oaks Apartments, 1225 Florence Avenue; Brookmeadows, 2315 Broadway; UAW Senior Citizens Center, 44 S. Broadway; Valle Vista Apartments, 1410 Valle Vista Blvd.; Prairie View Villas, 3246 Vandever Avenue; and Sunset Hill, 1825 Vienna Court, which are all located within the city limits of Pekin.

6.  Residents of private assisted living and independent living facilities located in Pekin, including John M. Evans (looks like 76 units), Morningside of Pekin (61 units), and The Villas of Holly Brook (40 units). Class Counsel obtained information regarding the number of units at each facility from information on the websites or direct communication with the respective facility. Class counsel will compile addresses for all of the units in those facilities to provide to Simpluris for the mailing of long notices.

The Settlement Administrator will mail the long notice form, together with the Claim Form and Exclusion Request Form, attached hereto as **Exhibits C** and **D** respectively, to the identified residential addresses via United States Post Service first class mail. For any direct mail notices that are returned as undeliverable, the Settlement Administrator will trace for new addresses and resend the notices. The Settlement Administrator will also send out notices to any requests for notices received through requests received telephonically, via electronic mail or postal mail.

According to HUD statistics, 63% of households in the Midwest that are tenants (versus owners) and in the low income and below levels (low income, very low income, and extremely low income)[3] have one household member with an ambulatory disability.[4] Based on that data, it can be reasonably assumed that of the total 922 rental units in the HUD housing and Pekin Housing Authority buildings in Pekin, a minimum of 580 persons with mobility disabilities would receive direct mailed notice of the Class.

Further, according to HUD data, 21% of persons over the age of 65 years old have an ambulatory disability.[5]   Accordingly, direct mailed notice to the 177 units of the privately owned

---

[3] Most HUD programs base eligibility on these thresholds of income. *CHAS Affordability Analysis*, at page 3. https://www.huduser.gov/publications/pdf/CHAS_affordability_Analysis.pdf
[4] *A Picture of Disability and Designated Housing*, U.S. Department of Housing and Urban Development, March 6, 2015, p. 15, Table 4, "Percentage of households with at least one disabled person by type of disability, tenure status, and household income as a percent of HAMFI" https://www.huduser.gov/portal/sites/default/files/pdf/mdrt_disability_designated_housing.pdf

[5] 2019 Profile of Older Americans by the Administration on Aging, part of the Administration for

assisted/independent living facilities in Pekin, will conservatively provide notice to an additional 17 – 26 class member, assuming there may be residents in those units under 65 years old and do not have mobility disabilities.

Based on HUD statistics of age and mobility disability, direct mail notice to the HUD housing apartments, Pekin Housing Authority apartments and the private assisted/independent living facilities in Pekin, will result in providing notice to approximately 597 members of the Class. With the addition of the 41 known class members, direct mail notice should reach the 100% of the estimated 600 class members which Class Counsel conservatively calculated based on the same statistics.  Even with a margin of error of 20%, the direct notice plan would reach 80% of the class.

This proposed direct mail notice plan is conducive to reaching demographics of the class. As the aforementioned HUD data demonstrates, the largest concentration of persons with mobility disabilities is among households that are tenants with low incomes. The proposed notice plan concentrates on HUD and Pekin Public Authority rental housing. Further, by mailing the notice directly to each rental unit address, rather than a specific occupant, the Notice Plan avoids challenges of inaccurate addresses, outdated addresses, and mobility.

The notice form will also be posted on the class litigation website maintained by Simpluris, at the hyperlink: CityofPekinRightofWaySettlement.com.

C.     Informational Posting – Short Notice Form

---

Community Living, an operating division of the U.S. Department of Health and Human Services, page                                                                                                                                      19. https://acl.gov/sites/default/files/Aging%20and%20Disability%20in%20America/2019ProfileOlderAmericans508.pdf

A short form of the notice will be used to post at certain city, county and state governmental facilities and commercial establishments in the City of Pekin where it is anticipated that Class Members will have the opportunity to view. Class Counsel proposes posting the short notice in various locations at the following establishments: Pekin City Hall; the Pekin Library; the Pekin Post Office; the Illinois Department of Employment Security, Pekin; Tazewell County Court Administration Building; Tazewell County Clerk; Housing Authority of the City of Pekin Administrative Office; Pekin Housing Authority rental buildings including Broadway Apartments, 1901 Broadway Street; Golden Arms Apartments, 343 South 4th Street; Park Ridge Estates, 201 High Point Lane; and HUD-managed rental properties in Pekin including Court Place Apartments, 230 Court Street; Willow Oaks Apartments, 1225 Florence Avenue; Brookmeadows, 2315 Broadway; UAW Senior Citizens Center, 44 S. Broadway; Valle Vista Apartments, 1410 Valle Vista Blvd.; Prairie View Villas, 3246 Vandever Avenue; and Sunset Hill, 1825 Vienna Court. In addition, the Settlement Administrator shall request that the short form notice shall be posted at various locations in the following private establishments which, based on information and belief, persons with disabilities frequent: Unity Point Health – Pekin Hospital, 600 S. 13th St.; Schnucks, 1001 Court Street; Kroger, 1607 Broadway Street; ALDI, 3475 Court Street; Walmart, 3320 Veterans Drive; BP, 111 N. Capitol Street and 435 Derby Street; and Circle K, 111 N. Capitol Street. In addition, the Class Counsel shall request that the short form of the notice shall also be posted at the following nursing homes and assisted living facilities in Pekin: Hallmark House Nursing Center, 2501 Allentown Road; Timber Creek Rehab & Health Care, 2220 State Street; John M. Evans Supported Living Community, 1320 Executive Court; John Evans Living Center, 328 S. 4th Street; Grand Victorian of Pekin, 2700 14th Street; Morningside of Pekin, 2700 14th Street; Pekin Manor, 1520 El Camino Drive; and Amy's Country Manor, 2949 S. 14th St.

D.     Publication

Because there is no reasonable method to identify the residential addresses of all Class Members, Plaintiffs propose publication of a notice in local publications. Plaintiffs propose publication in *The Journal Star* which, upon information and belief, has a circulation of 70,000 daily and 100,000 on Sundays.[6] Plaintiffs propose publication of a 1/6th page notice, 3 columns, measuring 3.002" by 5", three days per week (Mondays, Thursdays and Sundays) for the 12-week (90 day) duration of the opt out period. A copy of the proposed newspaper notice is attached hereto as **Exhibit E**.

E.     Website Notice.

Simpluris has established a dedicated webpage at hyperlink: CityofPekinRightofWaySettlement.com as a means for Class Members to obtain notice of and information about the lawsuit. The website will include hyperlinks to the Amended Complaint, Defendants' Answer and Affirmative Defenses, the Court's Order and Opinion on the Plaintiffs' Motion for Class Certification and Defendants' Motion to Dismiss, the Long-Form Notice, the Short-Form Notice, Exclusion Request Form, the Claim Form and other such documents as Simpluris, Class Counsel and counsel for Defendants agree to post or that the Court orders be posted on the website. These documents will remain on the website at least until entry of the Final Judgment or Order. The website will also publish a toll-free telephone number for inquiries: 855-238-2675.

In addition, Class Counsel has requested that Advocates for Access, a center for independent living in Peoria Heights, Illinois, and Advocates for Access has agreed, to post

---

[6] https://www.ihsa.org/data/media/illdaily.htm

information contained in the website notice, **Exhibit F** hereto, on its website, http://advocatesforaccess.com/. Advocates for Access is a nonprofit organization, empowering persons with disabilities to live independent self-directed lives and provides housing referral, community reintegration and other independent living services to persons with disabilities in Tazewell County in addition to other surrounding counties.

       G.      Settlement Administrator

       1.      Pending this Court's approval, Simpluris shall serve as the Settlement Administrator. Simpluris (https://www.simpluris.com/) has been performing comprehensive corporate, financial and legal services across the United States for longer than 14 years. Since 2007, Simpluris has administered over 6,000 matters and distributed over 5 billion in funds. From class action settlement to corporate remediation, its nationwide team handles even the most complex matters with the accuracy and transparency.

       2.      In this case, the Parties propose that the Settlement Administrator's responsibilities shall include (but are not necessarily limited to):

- obtaining, with the assistance of Class Counsel, as proposed *supra*, the residential addresses of identifiable Class Members and other residents to which direct notice will be mailed;

- providing U.S. Mail Notice to Class Members and residents who may be members of the Class;

- providing, as proposed *supra*, notice to *The Journal Star* for publication within the notice period;

- establishing and maintaining the lawsuit webpage on the Simpluris' website;

- establishing and maintaining a mailing address for receiving Exclusion Request Forms from the Class and Claims;

- processing all requests for Exclusion Request Forms, Claims and providing reports of the identity of opt-outs (if any) to the Parties;

- responding to any Class Member/potential Class Member Inquiries; and

- at a reasonable time upon the expiration of the notice period, informing the Parties and the Court the identifies of each Class Member who timely and properly requested exclusion from the Class.

H.    Opt-Out Procedures

Class Members who do not wish to participate in the Class may opt-out of the lawsuit by sending the Exclusion Request Form, **Exhibit D** hereto, to the Settlement Administrator at the address designated in the form. Plaintiffs propose that the opt-out period be 90 calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star*. Class Members who timely opt-out of the Class will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. A Class Member must opt-out of the Class by the opt-out period. The Settlement Administrator will communicate any opt-out requests to Class Counsel and Defendants, who will in turn report them to the Court.

## III.    CONCLUSION

Plaintiffs respectfully request that this Court approve the elements of this Notice Plan as the elements represent the best notice that is practicable under the circumstances. Plaintiffs have identified reasonable methods to identify Class Members to whom direct notice can be provided and methods that are reasonably calculated to provide Notice to unknown Class Members.

Date: June 13, 2022.

Respectfully submitted,

/s/ *Jennifer M. Sender*
Jennifer M. Sender (ARDC No. 6207774)

Andrés J. Gallegos (ARDC No. 6212168)

ROBBINS DIMONTE, LTD.
Attorneys for Plaintiffs
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Phone: (312) 782-9000
Fax: (312) 782-6690
jsender@robbinsdimonte.com
agallegos@robbinsdimonte.com

/s/ *Carl Reardon*
CARL F. REARDON (ARDC No. 2295725)

Attorney for Plaintiffs
120 Illini Drive
East Peoria, IL 61611
(309) 699-6767
carlreardon@comcast.net

*Counsel for the Class*

**Exhibit A - Long Notice Form**

# If You Are a Person with a Mobility Disability Residing in the City of Pekin from December 11, 2016 through December 11, 2018, You Could Get a Payment from a Class Action Settlement

*A court authorized this notice. This is not a solicitation from a lawyer.*

- Residents of the City of Pekin with mobility disabilities have sued the City of Pekin alleging discrimination for the City's failure to provide safe sidewalks, curb cuts and other pedestrian rights-of-way.

- The Court has allowed the lawsuit to be a class action on behalf of all persons with mobility disabilities who were residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

- The Court has granted preliminary approval to a settlement between the parties. You may be eligible for money. Your legal rights are affected, whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim Form** | The only way to get a payment. |
| **Exclude Yourself** | Get no payment. This is the only option that allows you to ever be a part of any other lawsuit against the City of Pekin about the claims in this case. |
| **Object** | Write to the Court about why you don't like the settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment. Give up rights. |

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the STATE of ILLINOIS

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to give final approve the settlement. Payment will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

**Any questions? Read on and visit www.CityofPekinRightofWaySettlement.com**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                    PAGE 3
   1. Why did I get this notice?
   2. What is this lawsuit about?
   3. What is a class action and who is involved?
   4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**                                             PAGE 4
   5. How do I know if I am a part of the settlement?
   6. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**                               PAGE 5
   7. What does the settlement provide?
   8. What can I get from the settlement?
   9. What if I cannot utilize the City of Pekin's sidewalks in the future?

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM**                      PAGE 6
  10. How can I get a payment?
  11. When would I get my payment?
  12. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**                               PAGE 7
  13. How do I get out of the settlement?
  14. If I don't exclude myself, can I sue the City of Pekin for the same thing later?
  15. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU**                                         PAGE 8
  16. Do I have a lawyer in the case?
  17. Should I get my own lawyer?
  18. How will the lawyers be paid?

## OBJECTING TO THE SETTLEMENT — PAGE 8
19. How do I tell the Court that I don't like the settlement?
20. What is the difference between objecting and excluding?

## THE COURT'S FAIRNESS HEARING — PAGE 9
21. When and where will the Court decide whether to approve the settlement?
22. Do I have to come to the hearing?
23. May I speak at the hearing?

## IF YOU DO NOTHING — PAGE 10
24. What happens if I do nothing at all?

## GETTING MORE INFORMATION — PAGE 10
16. Are there more details about the settlement?
17. How do I get more information?

## BASIC INFORMATION

### 1. Why did I get this notice?

Information obtained by the attorneys for the Plaintiffs identified you as a person with a mobility disability who resides in the City of Pekin.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments the settlement allows. You will be informed of the progress of the settlement.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them and how to get them.

The Court in charge of the case is the United States District Court for the Central District of Illinois and the case is known as *Berardi, et al., v. City of Pekin, et al.,* Civil Action No. 1:18–cv –01438–JBM–JEH.

### 2. What is this lawsuit about?

The lawsuit claimed that the City of Pekin discriminated against persons with mobility disabilities who resided in the City between the dates of December 11, 2016 and December 11, 2018, because it did not provide sidewalks and curb cuts in many locations throughout the City, did not maintain the sidewalks, and because it placed physical barriers such as oversized planters, mailboxes and light posts on certain sidewalks throughout the City that prevented persons with mobility disabilities to use those sidewalks. The City denies that it discriminated against residents with disabilities.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 3

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT of the State of Illinois

### 3.  What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case Patricia Berardi, Robert Criswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland and Lisa Lynch as the parent and next friend of M.L., a minor child) sue on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members."  The persons who sued—and all the Class Members like them—are called the Plaintiffs.  The persons they sued (in this case the City and all persons who served as trustees when the lawsuit was filed on December 5, 2018) are called the Defendants. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class. United States District Court Magistrate Judge Jonathan E. Hawley is in charge of this class action.

### 4.  Why is there a settlement?

The Court did not decide in favor of the plaintiffs or defendants. Instead, both sides agreed to a settlement. That way, they avoid the uncertainty and cost of a trial. And as the City has agreed to fix the problems with the sidewalks and curb cuts the parties agreed that the City's financial resources are best spent fixing those problems and providing the class with some compensation instead of continuing to fight the lawsuit. The class representatives and the attorneys believe the settlement is best for everyone with mobility disabilities that have been denied the use of the City's sidewalks.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

### 5.  How do I know if I am part of the settlement?

District Court Judge Joe Billy McDade decided that everyone who fits this description is a Class Member: *All people with mobility disabilities who were residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.*

### 6.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-855-238-2675, which is the toll-free telephone number for Simpluris, the Class Action Settlement Administrator, or email Simpluris at info@CityofPekinRightofWaySettlement.com, and ask if you qualify as a member of the class, or you can fill out and return the Claim Form described on page 6, in question 10, to see if you qualify.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 4

# THE SETTLEMENT BENEFITS – WHAT YOU GET

**7.   What does the settlement provide?**

The City has agreed to hire an engineering firm, TWM, Inc., to conduct a survey of 100 % of the City's sidewalks, curb cuts and crosswalks and to develop a plan for the City to fix problems that are discovered. It will take approximately 18-months from the date the Court issues its final approval of the settlement for that survey to be conducted and for the engineering firm and the City to develop a specific schedule for the work that will need to be done.

The City will spend a minimum of $250,000 each fiscal year for use exclusively towards the fixing of identified problems existing in the sidewalks, curb cuts and crosswalks. However, the City will spend an additional $1,5000,000 for fixing those problems in the first three years. Priority will be given to those sidewalks, curb cuts and crosswalks that are unsafe and identified in a schedule to the Consent Decree, then to those within a 1-mile radius of where the Class Representatives live. After that, the City will fix identified problems in existing sidewalks, curb cuts and crosswalks where there is a concentration of people with mobility disabilities, and where seniors live. After that, the City will fix sidewalks, curb cuts and crosswalks that service emergency shelters, hospitals, clinics, and schools.

In addition, the City has agreed to pay the Class Representatives $10,000 for their damages and for helping with the lawsuit. Also, there are 35 people that have assisted the attorneys who the Court approved to represent the class, and those 35 people will be paid $800 each. Finally, the City has agreed to create a $22,000 fund to pay all of the other class members who timely submit claims.

**8.   What can I get from the settlement?**

If you qualify as a Class Member and submit your Claim Form before the deadline (see question 10 below on page 6) you will be entitled to receive payment from the $22,000 fund. The amount of your payment will depend upon the number of other people who qualify as Class Members and submit their Claim Form before the deadline, but no class member will receive more than $88.00.

**9.   What if I cannot utilize the City of Pekin's sidewalks in the future?**

The City has agreed to maintain a complaint system for its sidewalks, curb cuts and crosswalks. If you have problems utilizing any of the City's sidewalks, curb cuts or crosswalks in the future, you can call 3-1-1, which is the number the City will used for you to make complaints regarding the sidewalks, curb cuts and crosswalks, or you can submit a complaint using the City's online form, which can be found at www. https://www.ci.pekin.il.us/ada_portal/file_a_grievance.php, or you can email your complaint to jaesker@ci.pekin.il.us.

Alternatively, if you cannot use the City's sidewalks, curb cuts or crosswalks in the future you may also file a complaint with the United States Department of Justice or file a lawsuit against the City. To file a complaint

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 5

with the Department of Justice, you can do so by mail at the address below or you may use the Department of Justice's online complete form, which is located at https://www.ada.gov/filing_complaint.htm.

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
4CON, 9th Floor
Washington, DC 20530

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

**10. How can I get a payment?**

To qualify for payment, you must send in a Claim Form. A Claim Form is attached to this notice. You may also get a Claim Form on the settlement website at www.CityofPekinRightofWaySettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for and sign it. The claim form may be submitted electronically on the website, or it may be mailed to the Settlement Administrator at the address set forth in the form. It must be submitted on the website or postmarked no later than **[Pending]. [Date] is the deadline to submit your Claim Form.**

**11. When would I get my payment?**

The Court will hold the hearing on **[date]** to decide whether to approve the settlement. If Magistrate Judge Hawley approves the settlement after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a Claim Form will be informed of the progress of the settlement. Please be patient.

**12.  What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you are staying in the Class, and that means you cannot sue, continue to sue, or be part of any other lawsuit against the City of Pekin about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the Claim Form, you'll agree to a "Release of Claims," attached to the Claim Form, which describes exactly the legal claims that you give up if you get settlement benefits. Keep in mind the claims in this lawsuit are for the period of time from between the dates of December 11, 2016 and December 11, 2018 only.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the settlement, but you want to keep the right to sue or continue to sue the City of Pekin, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or is sometimes referred to as "opting out of the settlement class"

### 13.  How do I get out of the settlement?

To exclude yourself from the settlement, you must complete an Exclusion Request Form, available at www.CityofPekinRightofWaySettlement.com or you can send a letter by mail saying that you want to be excluded from *Berardi, et al., v. City of Pekin, et al.* Be sure to include your name, address, telephone number and your signature. You must mail your Exclusion Request Form or exclusion letter postmarked no later than **[date]** to:

City of Pekin Settlement Administrator
PO Box 25225
Santa Ana, CA 92799

You can't exclude yourself on the phone or by email. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) the City of Pekin in the future.

### 14.  If I don't exclude myself, can I sue the City of Pekin for the same thing later?

Yes. But you may only be able to sue for disability-based discrimination as a result of the City's failure, *after* December 11, 2018, to provide safe and accessible sidewalks.

By not excluding yourself you will be legally bound by all of the orders the Court and the settlement approved by the Court in this lawsuit, which means that you cannot sue the City for the same legal claims addressed in this lawsuit for the time period between December 11, 2016 and December 11, 2018. **Remember, the exclusion deadline is [pending, 2022].**

If you start your own lawsuit against the City after you exclude yourself, you have to hire and pay your own lawyer for that lawsuit, and you have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against the City, you should talk to your own lawyer soon because your claims may be subject to a statute of limitations.

### 15.  If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a Claim Form to ask for any money. But you may sue, continue to sue, or be part of a different lawsuit against the City of Pekin.

United States District Court for the Central District of the State of Illinois

## The Lawyers Representing You

**16. Do I have a lawyer in the case?**

The Court decided that Andrés Gallegos and Jennifer Sender with the law firm of Robbins DiMonte, Ltd., (formerly known as Robbins, Salomon & Patt, Ltd.) in Chicago, Illinois, and attorney Carl Reardon, in East Peoria, Illinois, are qualified to represent you and all Class Members. Together the attorneys are called "Class Counsel." They are experienced in handling similar cases involving disability-based discrimination. More information about Andrés Gallegos and Jennifer Sender, their practices and experience are available at www.robbinsdimonte.com.

**17. Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel is working on your behalf but if you want your own lawyer, you have the right to do so but you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

**18. How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees and expenses in the amount of $693,000.65 and costs of $44,043.52. The Court may award less than these amounts. The City of Pekin will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payment to the Class Representatives, the Declarants or any the Class Members. The City of Pekin has agreed not to opposes fees and expenses. The City of Pekin will also separately pay the cost of Simpluris, Inc. to administer the settlement.

## Objecting to the Settlement

You can tell the Court that you don't agree with the settlement or some part of it.

**19. How do I tell the Court that I don't like the settlement?**

If you are a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *Berardi v. City of Pekin.* Your letter should include: (a) the name, address, telephone number and, if applicable, email address; (b) if represented by your own attorney, the name, address, telephone number and email address of your attorney; (c) a statement identifying the specific reasons for your objections;

and (d) a statement of whether your objection applies just to you or the entire Class. Mail the objection to these three different places post marked no later than **[pending, 2022]**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>211 U.S. Courthouse<br>100 N.E. Monroe Street<br>Peoria, IL 61602 | Andrés Gallegos<br>Robbins DiMonte, Ltd.<br>180 N. LaSalle, Ste. 3300<br>Chicago, Illinois 60601 | K. Austin Zimmer<br>Del Galdo Law Group, LLC<br>1441 S. Harlem Ave.<br>Berwyn, Illinois 60402 |

**20. What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## The Court's Fairness Hearing

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may also ask to speak, but you do not have to.

**21. When and where will the Court decide whether to approve the settlement?**

The Court will hold a fairness hearing at **[Time]**, on **[date, 2022]**, at the United States District Court for the Central District of Illinois, 211 U.S. Courthouse, 100 N.E. Monroe Street, Peoria, Illinois. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Magistrate Judge Hawley will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**22. Do I have to come to the hearing?**

No. Class Counsel will answer questions Magistrate Judge Hawley may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to the Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

Questions? Call 1-855-238-2675 Toll Free or Visit www.CityofPekinRightofWaySettlement.com

Page | 9

### 23. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Berardi v. City of Pekin*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than [date, 2022], and be sent to the Clerk of the Court, Class Counsel and Defense Counsel at the three addresses on page 8, in question 19. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

### 24. What happens if I do nothing at all?

If you do nothing, you'll get no money from the settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the City of Pekin about the legal issues in this case that occurred between December 11, 2016 and December 11, 2018. Subject to the statute of limitations, you may sue the City of Pekin about the legal issues in this case for any time period after December 11, 2018.

# GETTING MORE INFORMATION

### 23. Are more details about the settlement?

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to **Andrés Gallegos, Robbins DiMonte, Ltd., 180 N. LaSalle, Suite 3300, Chicago, Illinois 60601**; or to the **City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799,** or by visiting the website www.CityofPekinRightofWaySettlement.com.

### 24. How do I get more information?

You can call **1-855-238-2675** toll free; email: info@CityofPekinRightofWaySettlement.com; write to **City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799,** or visit the website, www.CityofPekinRightofWaySettlement.com, where are you will find answers to come in question about the settlement, a Claim Form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

Date: June _, 2022

**Exhibit B - Short Notice Form**

**Class Action Litigation Short Form Notice**
*Berardi, et al., v. City of Pekin, et al.,* **Civil Action No. 1:18–cv–01438–JBM–JEH**

# IF YOU ARE A PERSON WITH A MOBILITY DISABILITY RESIDING IN THE CITY OF PEKIN FROM DECEMBER 11, 2016 THROUGH DECEMBER 11, 2018, A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS

*A court authorized this notice.  This is not a solicitation from a lawyer.*

**Read This Notice Carefully. The Lawsuit May Affect Your Rights.**

- Residents of the City of Pekin with mobility disabilities have sued the City of Pekin alleging discrimination for the City's failure to provide safe sidewalks, curb cuts and other pedestrian rights-of-way.

- The Court has allowed the lawsuit to be a class action on behalf of all persons with mobility disabilities who are residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

- The Court has granted preliminary approval to a settlement between the parties. You may be eligible for money. Your legal rights are affected, whether you act or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be a part of any other lawsuit against the City of Pekin about the claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in a Long Form Notice available at www.CityofPekinRightofWaySettlement.com

- The Court in charge of this case still has to decide whether to give final approve the settlement. Payment will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

Visit the website, www.CityofPekinRightofWaySettlement.com, where you can find out more information about the settlement. There you will find documents and orders filed and issued in this case, the Consent Decree, containing the settlement terms; the Long Form Notice, Exclusion Request Form, as well as a Claim Form. You may contact the Settlement Administrator, toll free at: 855-238-2675; or by mail at: City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799. You may also speak to one of the lawyers representing the class by calling toll free 1-800-419-2750 or (312) 782-9000.

**Exhibit C - Claim Form**

# CLAIM FORM

***Berardi et al. v. City of Pekin, et al.***
**United States District Court for the Central District of Illinois**
Case No. 1:18-cv-01438

## CITY OF PEKIN RIGHT OF WAY SETTLEMENT

You may be eligible for a payment as part of a Settlement in this class-action lawsuit.
Fill out each section of this form and sign and where indicated.

**This Claims Form must be submitted no later than _____ either on the Settlement Website at www.CityofPekinRightofWaySettlement.com, or by mail. If submitting this Claim Form by mail, it must be postmarked by that date and mailed to the Settlement Administrator at:**

City of Pekin Settlement Administrator
P.O. Box 26170
Santa Ana, CA 92799

| Part One: Information |
|---|
| Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form. |
| Name: |
| Mailing Address: |

| City: | State: | Zip Code: |
|---|---|---|

| Telephone Number: | Email Address: |
|---|---|

| Choose a payment method:  ☐ Zelle      ☐ PayPal      ☐ Venmo      ☐ Check |
|---|
| Electronic Payment – If you would like to receive your settlement award electronically, please confirm your payment account details are correct. |

| Electronic Payment Email: | Electronic Payment Phone Number: |
|---|---|

**Part Two: Qualification – Check all boxes that apply and provide the documents requested. Only persons meeting all of the three criteria below qualify as Class Members. If you do not provide the requested documents your claim will be denied.**

☐ **I am a person with a mobility disability and my proof of identification is enclosed.** [*Acceptable documents include a current, unexpired driver's license, photo ID card, or passport.*]

☐ **I was a resident of the City of Pekin between December 11, 2016 and December 11, 2018 and my proof of residency is enclosed.** [*Acceptable documents include a tax bill, a utility statement, lease agreement, or mortgage document.*]

☐ **I was denied meaningful access to the City of Pekin's curb cuts, crosswalks and sidewalks between December 11, 2016 and December 11, 2018.**

| Part Three: Attestation |
|---|
| By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf. |

| | |
|---|---|
| **Signature** | **Date** |

**Exhibit D – Exclusion Request Form**

# EXCLUSION REQUEST FORM

*Berardi, et al., v. City of Pekin, et al.,* Case No. 1:18–cv –01438–JBM–JEH

U.S. District Court for the Central District of Illinois

If you decide that you do not want to participate in this lawsuit, you must exclude yourself from the action – that is sometimes referred to as "opting out". If you exclude yourself, you will not receive any money from the Class Action. You will not be bound by the terms of any judgment or settlement in the Class Action, and you keep your rights, if any, to sue the defendants regarding the issues in this case. If you opt out, you cannot change your mind later and opt back into the Class Action.

In order to exercise your right to exclude yourself from the class, this Exclusion Request Form must be completed and submitted to the Settlement Administrator via email at [pending] or at the address below and postmarked no later than _____, **2022** at 5:00 p.m. CST.

**City of Pekin Settlement Administrator**
**PO Box 25225**
**Santa Ana, CA 92799**

**DO NOT COMPLETE THIS FORM IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT**

CONTACT INFORMATION

First Name | Middle Name | Last Name

Street Address

City/Municipality | Zip Code

Home Telephone Number | Cellular Number | Email Address

***By signing this form, I understand I will not be eligible to receive any money or other relief that may be obtained as a result of this lawsuit or a settlement. I further understand that by opting out, I retain all the rights I may have to assert my own claim against defendants named in the lawsuit relating to the subject matter of the complaint that has been filed in the lawsuit.***

Date

Signature of Class Member | Print Name

\*\*\*

**Exhibit E - Newspaper Announcement**

**Class Action Litigation Notice**
*Berardi, et al., v. City of Pekin, et al.,* **Civil Action No. 1:18–cv–01438–JBM–JEH**

# IF YOU ARE A PERSON WITH A MOBILITY DISABILITY RESIDING IN THE CITY OF PEKIN FROM DECEMBER 11, 2016 THROUGH DECEMBER 11, 2018, A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS

*A court authorized this notice. This is not a solicitation from a lawyer.*

Residents of the City of Pekin with mobility disabilities have sued the City of Pekin alleging discrimination for the City's failure to provide safe sidewalks, curb cuts and other pedestrian rights-of-way.

The Court has allowed the lawsuit to be a class action on behalf of all persons with mobility disabilities who are residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

The Court has granted preliminary approval to a settlement between the parties. You may be eligible for money. Your legal rights are affected, whether you act or don't act.

To determine if you are a member of the Class and to learn of your legal rights to get a payment, exclude yourself from the Class, object to the settlement, participate in the final approval hearing, visit the website, www.CityofPekinRightofWaySettlement.com. You may contact the Settlement Administrator, toll free at: 855-238-2675; or by mail at: City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799. You may also speak to one of the lawyers representing the class by calling toll free 1-800-419-2750 or (312) 782-9000.

**Exhibit F - Website Notice**

**Class Action Litigation Website Notice**
*Berardi, et al., v. City of Pekin, et al.,* **Civil Action No. 1:18–cv–01438–JBM–JEH**

# IF YOU ARE A PERSON WITH A MOBILITY DISABILITY RESIDING IN THE CITY OF PEKIN FROM DECEMBER 11, 2016 THROUGH DECEMBER 11, 2018, A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS

*A court authorized this notice.  This is not a solicitation from a lawyer.*

**Read This Notice Carefully. The Lawsuit May Affect Your Rights.**

- Residents of the City of Pekin with mobility disabilities have sued the City of Pekin alleging discrimination for the City's failure to provide safe sidewalks, curb cuts and other pedestrian rights-of-way.

- The Court has allowed the lawsuit to be a class action on behalf of all persons with mobility disabilities who are residents of the City of Pekin from December 11, 2016 through December 11, 2018, who were denied meaningful access to public pedestrian rights-of-way in the City during that timeframe.

- The Court has granted preliminary approval to a settlement between the parties. You may be eligible for money. Your legal rights are affected, whether you act or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be a part of any other lawsuit against the City of Pekin about the claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in a Long Form Notice available at www.CityofPekinRightofWaySettlement.com.

- The Court in charge of this case still has to decide whether to give final approve the settlement. Payment will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

Visit the website, www.CityofPekinRightofWaySettlement.com, where you can find out more information about the settlement. There you will find documents and orders filed and issued in this case, the Consent Decree, containing the settlement terms; the Long Form Notice, Exclusion Request Form, as well as a Claim Form. You may contact the Settlement Administrator, toll free at: 855-238-2675; or by mail at: City of Pekin Settlement Administrator, PO Box 25225, Santa Ana, CA 92799. You may also speak to one of the lawyers representing the class by calling toll free 1-800-419-2750 or (312) 782-9000.

**Exhibits C – Declarations of Andrés J. Gallegos, Esq.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz, Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child, individually on behalf of themselves and all other persons similarly situated,* | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 1:18-cv-01438 |
| v. | ) | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### DECLARATION OF ANDRES J. GALLEGOS, ESQ. IN SUPPORT OF THE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Andrés J. Gallegos, declare:

1. I am a shareholder of the law firm of Robbins DiMonte, Ltd. ("RD"). RD serves as lead counsel for the Representative Plaintiffs in the above-captioned action and one of the firms appointed, on April 19, 2021, as Class Counsel pursuant to Fed. R. Civ. Pro. 23(g)(1). (Doc. # 47). I submit this declaration in support of the parties' Joint Motion for Preliminary Approval of Class Action Settlement. I make this declaration based on my personal knowledge of the lawsuit and its proceedings.

2. Before this action was filed, RD and our co-counsel, Carl Reardon ("Mr. Reardon"), investigated the factual allegations ultimately made in the complaint filed on December 5, 2018, in the U.S. District Court for the Central District of Illinois, Peoria Division, on behalf of the

Representative Plaintiffs and the Class. The filing of the class action complaint was the result of our extensive investigation that began in January 2018 when we learned of the systemic and pervasive inaccessibility of pedestrian rights-of-way in the City of Pekin. Soon thereafter we engaged an expert to conduct a preliminary survey and assess the conditions of the City of Pekin's pedestrian rights-of-way and we had several in-person meetings in Pekin with groups of potential class members to learn of their struggles to safely navigate those pedestrian rights-of-way and to learn of the detrimental impact of the City's neglect of those pedestrian rights-of-way have on those residents' quality of life.

3.      Very early in the litigation, after the parties completed their written discovery, and before depositions were taken, the parties agreed that a potential settlement should be explored as it was in the mutual best interests of all parties to expend the City of Pekin's financial resources towards remediating substantial problems existing in its pedestrian rights-of-way instead of engaging in continued lengthy and costly litigation. The settlement is a product of significant months of intense negotiations between the parties and their counsel, with the assistance of the Court, as Magistrate Judge Jonathan E. Hawley, facilitated several settlement conferences between the parties. The settlement negotiations were conducted by experienced counsel with the full understanding about the strengths and weaknesses of their respective cases.

4.      My law partner, Jennifer Sender, myself, and other RD attorneys assigned as counsel to RD's disability rights class action and multi-party complex litigation are experienced litigators and experienced counselors in alternative dispute resolution, who have regularly engaged in major complex litigation and Structured Negotiation and have extensive experience handling class-action lawsuits in both state and federal courts.

5.      I founded and lead our law firm's national disability rights practice and have for the past 25+ years concentrated a major portion of my practice in advocating for the rights of persons with disabilities, to include protecting their rights under the Americans with Disabilities Act, the Rehabilitation Act of 1973 and the Patient Protection and Affordable Care Act. In January 2010, I was appointed by Illinois Governor Pat Quinn to be a member of the Governor's Task Force on Employment and Economic Opportunities for People with Disabilities, and in September 2010 the Governor appointed me to the Statewide Independent Living Council of Illinois, and I was reappointed to the Statewide Independent Living Council several times since. In 2015, I was the recipient of the prestigious Paul G. Hearne Leadership Award from the American Association of People with Disabilities in recognition of my efforts to advocate for the rights of persons with disabilities. I serve as a member of the Board of Directors of the American Association on Health & Disability, a cross-disability national nonprofit organization dedicated to ensuring health equity for children and adults with disabilities through policy, research, education, and dissemination. I am the immediate-past Chairman of the Board of Directors for Access Living of Metropolitan Chicago, Chicago's Center for Independent Living, and have been a member of its Board since 2010. I am also a member of the Board of Directors of Disability Lead, a Chicago- based nonprofit organization whose mission is to increase civic engagement and diverse leadership in the Chicago region by developing and building a network of leaders with disabilities. In 2018, I received a Congressional appointment to serve as a member of the National Council on Disability. The National Council on Disability is an independent federal agency that advises the President, his Administration, Congress and heads of federal agencies on policy matters affecting the lives of persons with disabilities throughout the country and in our territories. On the afternoon of his

inauguration on January 20, 2021, President Biden appointed me as the Chairman of the National Council on Disability.

6.      Based on my extensive experience representing and advocating for persons with disabilities throughout the country, and my experience in litigating and negotiating resolutions of complex cases like this action, under the circumstances I believe the settlement is an excellent result for the Representative Plaintiffs and the Class Members. I further believe the settlement meets each of the requirements for preliminary approval and that the monetary compensation to the Representative Plaintiffs, the declarants and class members is fair. This lawsuit was brought primarily to compel the City of Pekin to remediate its pedestrian rights-of-way; financial recovery was a distant secondary objective.

I declare under penalty of perjury under the laws of the state of Illinois and United States the foregoing is true and correct.

Executed and this 13th day of June 2022, at Chicago, Illinois.

/s/ Andrés J. Gallegos
Andrés J. Gallegos

**Exhibit D - Declaration of Jennifer M. Sender, Esq.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz, Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child, individually on behalf of themselves and all other persons similarly situated,*<br><br>        Plaintiffs,<br><br>     v.<br><br>City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,*<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:18-cv-01438 |

## DECLARATION OF JENNIFER M. SENDER, ESQ. IN SUPPORT OF THE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Jennifer M. Sender, declare:

1.　　I am a shareholder of the law firm of Robbins DiMonte, Ltd. ("RD"). RD serves as lead counsel for the Representative Plaintiffs in the above-captioned action and one of the firms appointed, on April 19, 2021, as Class Counsel pursuant to Fed. R. Civ. Pro. 23(g)(1). (Doc. # 47). I submit this declaration in support of the parties' Joint Motion for Preliminary Approval of Class Action Settlement. I make this declaration based on my personal knowledge of the lawsuit and its proceedings.

2.　　Before this action was filed, RD and our co-counsel, Carl F. Reardon ("Mr. Reardon"), investigated the factual allegations ultimately made in the complaint filed on December 5, 2018, in the U.S. District Court for the Central District of Illinois, Peoria Division, on behalf of

the Representative Plaintiffs and the Class. The filing of the class action complaint was the result of our extensive investigation that began in January 2018 when we learned of the systemic and pervasive inaccessibility of pedestrian rights-of-way in the City of Pekin. Soon thereafter we engaged an expert to conduct a preliminary survey and assess the conditions of the City of Pekin's pedestrian rights-of-way and we had several in-person meetings in Pekin with groups of potential class members to learn of their struggles to safely navigate those pedestrian rights-of-way and to learn of the detrimental impact of the City's neglect of those pedestrian rights-of-way have on those residents' quality of life.

3.      Very early in the litigation, after the parties completed their written discovery, and before depositions were taken, the parties agreed that a potential settlement should be explored as it was in the mutual best interests of all parties to expend the City of Pekin's financial resources towards remediating substantial problems existing in its pedestrian rights-of-way instead of engaging in continued lengthy and costly litigation. The settlement is a product of significant months of intense negotiations between the parties and their counsel, with the assistance of the Court, as Magistrate Judge Jonathan E. Hawley, facilitated several settlement conferences between the parties. The settlement negotiations were conducted by experienced counsel with the full understanding about the strengths and weaknesses of their respective cases.

4.      As stated in the declaration tendered here by my law partner, Andrés J. Gallegos, myself, and other RD attorneys assigned as counsel to RD's disability rights class action and multi-party complex litigation are experienced litigators and experienced counselors in alternative dispute resolution, who have regularly engaged in major complex litigation and Structured Negotiation and have extensive experience handling class-action lawsuits in both state and federal courts.

2

5.      I have significant experience over my 30 years of practice as a litigator, representing both plaintiffs and defendants in state and federal courts in complex, multi-party, and class action litigation, and have negotiated numerous settlements in those cases. For the last 10 years I have been an integral member of our law firm's national disability rights practice advocating for, and representing individuals, groups of individuals and classes of individuals in enforcing and protecting their rights under the various federal civil rights legislation. Together with Mr. Gallegos, I have, as a subject matter expert, co-presented at national symposiums on compliance matter under the Americans with Disabilities Act and the Rehabilitation Act of 1973, the two federal statutes that are the basis for the class claims asserted at the case at bar.

6.      Based on my extensive experience representing persons with disabilities throughout the country, and my experience in litigating and negotiating resolutions of complex cases like this action, under the circumstances I believe the settlement is an excellent result for the Representative Plaintiffs and the Class Members. I further believe the settlement meets each of the requirements for preliminary approval and that the monetary compensation to the Representative Plaintiffs, the declarants and class members is fair. This lawsuit was brought primarily to compel the City of Pekin to remediate its pedestrian rights-of-way; financial recovery was a distant secondary objective.

I declare under penalty of perjury under the laws of the state of Illinois and United States the foregoing is true and correct.

Executed and this 13th day of June 2022, at Chicago, Illinois.

/s/ Jennifer M. Sender
Jennifer M. Sender

3

**Exhibit E - Declaration of Carl F. Reardon, Esq.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

|  |  |  |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz, Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child, individually on behalf of themselves and all other persons similarly situated,* | ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) | Case No. 1:18-cv-01438 |
| v. | ) |  |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | ) ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## DECLARATION OF CARL F. REARDON, ESQ. IN SUPPORT OF THE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Carl F. Reardon, declare:

1.      I am an attorney, in solo practice. Together with my co-counsel, Andrés J. Gallegos and Jennifer Sender, shareholders of Robbins DiMonte, Ltd. ("RD"), on April 19, 2021, I was appointed by the Court as Class Counsel pursuant to Fed. R. Civ. Pro. 23(g)(1). (Doc. # 47). I submit this declaration in support of the parties' Joint Motion for Preliminary Approval of Class Action Settlement. I make this declaration based on my personal knowledge of the lawsuit and its proceedings.

2.      Before this action was filed, I, together with my co-counsel, investigated the factual allegations ultimately made in the complaint filed on December 5, 2018, in the U.S. District Court for the Central District of Illinois, Peoria Division, on behalf of the Representative Plaintiffs and

1

the Class. The filing of the class action complaint was the result of our extensive investigation that began in January 2018 when we learned of the systemic and pervasive inaccessibility of pedestrian rights-of-way in the City of Pekin. Soon thereafter RD engaged an expert to conduct a preliminary survey and assess the conditions of the City of Pekin's pedestrian rights-of-way and we had several in-person meetings in Pekin with groups of potential class members to learn of their struggles to safely navigate those pedestrian rights-of-way and to learn of the detrimental impact of the City's neglect of those pedestrian rights-of-way have on those residents' quality of life. Subsequent to filing the class action complaint in this matter, I had several individual meetings with over 40 potential class members and assisted 35 of them in completing declarations in support of our motion for class certification.

3.      Very early in the litigation, after the parties completed their written discovery, and before depositions were taken, the parties agreed that a potential settlement should be explored as it was in the mutual best interests of all parties to expend the City of Pekin's financial resources towards remediating substantial problems existing in its pedestrian rights-of-way instead of engaging in continued lengthy and costly litigation. The settlement is a product of significant months of intense negotiations between the parties and their counsel, with the assistance of the Court, as Magistrate Judge Jonathan E. Hawley, facilitated several settlement conferences between the parties. The settlement negotiations were conducted by experienced counsel with the full understanding about the strengths and weaknesses of their respective cases.

4.      I have been practicing law since 1965 as a solo practitioner, as city attorney for the City of East Peoria, Illinois, for 13 years; and village attorney for the Village of North Pekin, Illinois, for 25 years. As such, I have extensive experience in municipal law, and in that capacity, I have prosecuted claims, defended, or have directed and managed the defense, of my municipal

defended, or have directed and managed the defense, of my municipal clients in numerous complex litigation matters. As such, I am a very experienced litigator and a very seasoned attorney.

6.      Based on my extensive experience in litigating and negotiating resolutions of complex cases, under the circumstances I believe the settlement is an excellent result for the Representative Plaintiffs and the Class Members. I further believe the settlement meets each of the requirements for preliminary approval and that the monetary compensation to the Representative Plaintiffs, the declarants and class members is fair. This lawsuit was brought primarily to compel the City of Pekin to remediate its pedestrian rights-of-way; financial recovery was a distant secondary objective.

I declare under penalty of perjury under the laws of the state of Illinois and United States the foregoing is true and correct.

Executed and this 13th day of June 2022, at East Peoria, Illinois.


                                          /s/ Carl F. Reardon
                                          Carl F. Reardon

**Exhibit F - Draft Proposed Form of the Preliminary Order Approving the Class Action Settlement**

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child,* individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, *in his official capacity as the Pekin City Manager*; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, *in their official capacities as Council Members for the City of Pekin,* | ) ) ) ) ) ) ) ) |
| Defendants. | |

Case No. 1:18-cv-01438

**ORDER**

The Parties have applied to the Court for an order preliminarily approving the settlement of this action in accord with the Proposed Consent Decree ("Consent Decree"), which sets forth the terms and conditions of the proposed settlement and dismissal of the action with prejudice, with the Court retaining jurisdiction to enforce the Consent Decree throughout its term. Having read the papers submitted and carefully considered the arguments of relevant legal authority, and good cause appearing, the court GRANTS the Parties' Joint Motion for Preliminary Approval of Class Action Settlement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court hereby preliminarily approves the Consent Decree. The Court finds on a preliminary basis that the Consent Decree is fair, adequate and reasonable to all potential Class Members. It further appears to the Court that the settlement at this time will avoid substantial additional cost to all Parties, as well as avoid the delay and risks presented by for the prosecution of issues either in the current or separate litigation proceedings which are addressed by the Consent Decree. It further appears that the Consent Decree has been reached as the result of good faith, prolonged, serious, and non-collusive arm's-length negotiations.

2.     The Court hereby approves Simpluris, Inc., with its principal place of business at Costa Mesa, California, to serve as the Settlement Administrator.

3.     The Court hereby approves, as to form and content, the proposed long notice form, short notice form, claim form and exclusion request form attached as exhibits to the Proposed Plan for Notice to the Class (the "Notice Plan"). The Court finds that the distribution of the notice in the manner and form set forth in the Notice Plan meets the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e). The Notice Plan includes a notice scheme that is the best practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Parties shall submit declarations to the Court as part of the Motion for the Final Approval of the Class Action Settlement confirming compliance with the notice provisions of the Notice Plan.

4.     A hearing on final approval of the Consent Decree ("Fairness Hearing") shall be held before the Court on a date set by the Court, in Section 6.i. below, to determine all necessary matters concerning the Consent Decree, including whether the proposed Consent Decree's terms and conditions are fair, adequate, and reasonable, and whether the Consent Decree should receive

final approval by the Court, as well as to rule on Class Counsel's motion requesting an award of reasonable attorneys' fees, costs and expenses.

5.      Any Class Member may object to the Consent Decree, no later than ninety (90) calendar days after the newspaper publication of the Settlement Notice (the "Objection Deadline"), in *The Journal Star,* by filing written objections with the Court, Class Counsel and Defense Counsel. Any Class Member may object to any aspect of the proposed Consent Decree either on his or her own or through an attorney hired at his or her expense. Any Class Member who wishes to object to the proposed Consent Decree may file a written statement of objection no later than the Objection Deadline. Such statement should include: (a) the name, address, and, if available, telephone number and email address of the Class Member objecting; (b) if represented by counsel, the name, address, telephone number and email address of his or her counsel; (c) a statement identifying the specific grounds for the Class Member's objections; and (d) a statement of whether his or her objection applies to the Class Member or the entire class. Any Class Member who wishes to object to the proposed Consent Decree may also present objections at the Fairness Hearing. The procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Members' objection to the Consent Decree, in accordance with due process rights of all Class Members. Pending the Fairness Hearing, all proceedings in this action, other than proceedings necessary to carry out and enforce the terms and conditions of the Consent Decree and this Order, are hereby stayed. Additionally, the Court enjoins all Class Members from asserting or maintaining any claims to be released by the Consent Decree until the date of the Fairness Hearing.

Any Class Member may opt-out of the settlement by completing and executing an Exclusion Request Form attached as an exhibit to the Notice Plan. The opt-out period shall also be ninety (90)

calendar days from the initial date the notice of the class action and its settlement is published in *The Journal Star.*

6.      In accordance with the above, the Court adopts the following schedule:

a.      Within ten (10) calendar days after entry of the Order Granting Preliminary Approval, the Settlement Administrator shall mail the Long Notice Form, in the form of Exhibit A to the Notice Plan, together with the Claim Form and Exclusion Request Form, Exhibits C and D, respectively, to the Notice Plan, to each known potential Class Member and those that can be identified through reasonable means.

b.      Within ten (10) calendar days after entry of the Order Granting Preliminary Approval, Class Counsel shall cause the Short Form Notice, in the form of Exhibit B to the Notice Plan, to be posted in the City and state governmental facilities and commercial establishments in the City of Pekin set forth in the Notice Plan.

c.      Commencing within ten (10) calendar days after entry of the Order Granting Preliminary Approval, the City shall cause to be published the long notice form, in the form of Exhibit E to the Notice Plan, in *The Journal Star*, to appear three days per week (Mondays, Thursdays and Sundays) for the 12-week (90 day) duration of the opt out period.

d.      Within fifteen (15) calendar days after entry of the Order Granting Preliminary Approval, the Settlement Administrator shall post on the case specific website established by the Settlement Administrator hyperlinks to the documents and forms identified in the Notice Plan.

e.      Within fifteen (15) calendar days after entry of the Order Granting Preliminary Approval, Class Counsel shall request Advocates for Access Center for Independent

Living to post the Website Notice, in the form of Exhibit F to the Notice Plan, on its website, requesting that it be maintained on its website for ninety (90) calendar days.

       f.     Thirty-five (35) calendar days prior to the Objection Deadline, Plaintiffs shall file a Motion for an Award of Reasonable Attorneys' Fees, Expenses and Costs. The hearing on that Motion shall be concurrent with the Fairness Hearing.

       g.     Each Class Member shall be given a full opportunity to object to the proposed settlement and Class Counsel's request for an award of reasonable attorneys' fees, expenses and costs, and to participate at the Fairness Hearing. Any Class Member seeking to object to the proposed settlement may submit an objection to the Court in writing, via regular email or filed in person.

       h.     The Parties shall file a Joint Motion for Final Approval and may respond to objections, if any, no later than five (5) calendar days prior to the Fairness Hearing. On the same date, the Parties shall also file statements of compliance with notice requirements.

       i.     The Fairness Hearing shall be held on _____ , 2022 at _____ a.m. in Courtroom ____ of the above referenced Court.

       7.     In the event the Court does not grant final approval to the settlement, or for any reason the Parties fail to obtain a Final Judgment and Order Approving Settlement as contemplated by the Consent Decree or the Consent Decree is terminated pursuant to its terms for any reason, or the Effective Date does not occur for any reason, then the Consent Decree and all orders and findings entered in connection with the Consent Decree and the settlement shall become null and void and be of no further force and effect whatsoever, shall not be used or referred to for any purpose whatsoever, and shall not be admissible or discoverable in this or any other proceeding.

8.      This Order shall not be construed or used as an admission, concession or declaration by or against the City of any fault, wrongdoing, breach or liability. It shall not be deemed to be a stipulation as to the proprietary of class certification, or any admission of fact or law regarding any request for class certification, and any other action or proceeding, whether or not involving the same or similar claims. Nor shall this Order be construed or used as an admission, concession or declaration by or against Plaintiffs or any other Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any defenses or claims he, she, or it may have in the action or in any other proceeding.

**IT IS SO ORDERED.**

Dated: _____

_____
United States Magistrate Judge

**Exhibit G - Draft Proposed Form of the Final Order Approving the Class Action Settlement**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, *as the parent and next friend of ML, a minor child*, individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| City of Pekin, Illinois, a municipal corporation; Mark Rothert, not individually, but in his official capacity as the Pekin City Manager; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, not individually, but in their official capacities as Council Members for the City of Pekin, | ) ) ) ) ) ) ) ) | Case No. 1:18-cv-01438 |
| Defendants. | | |

## FINAL JUDGMENT AND ORDER APPROVING CLASS ACTION SETTLEMENT

WHEREAS, on _____ 2022, the Court held a hearing (the "Fairness Hearing") to determine, among other things, whether the settlement in this action by the Defendants City of Pekin (the "City"), Mark Rothert, not individually, but in his official capacity as the Pekin City Manager; John McCabe, John P. Abel, Michael Garrison, Mark Luft, Lloyd Orrick, Michael Ritchason and Jim Schramm, not individually, but in their official capacities as Council Members for the City of Pekin (collectively, "Defendants"); and the Plaintiffs, Patricia Berardi, Robert Chriswell, Susan Kay Duvall, as the Executor of the Last Will and Testament of Alice Rose Mary Ortiz; Austin Calloway, Ellen Sunderland, and Lisa Lynch, as the parent and next friend of ML, a

1

minor child (collectively, "Representative Plaintiffs") as set forth in the Consent Decree a copy of which is attached hereto as Exhibit 1 (the "Consent Decree") is fair, reasonable and adequate, such that an Order of Final Approval should be issued and final judgment upon said Consent Decree should be entered by the Court;

WHEREAS, the Fairness Hearing was attended by the Parties, through their respective counsel of record in this action and by such other individuals and entities as set forth in the record of this matter; and

WHEREAS, the Court has issued its Order giving final approval to the Parties' settlement as set forth in the Consent Decree after the Fairness Hearing.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.      The Court, for purposes of this Judgment, adopts the terms and definitions set forth in the Consent Decree.

2.      The Court has jurisdiction over the subject matter of this action, the Representative Plaintiffs, the Class, the Consent Decree, and the Defendants.

3.      The Court finds that the notice to the Class Members of the pendency of this action and of the proposed settlement was disseminated by each of the means required under the Consent Decree and the Order of this Court, dated _____, 2022, and was otherwise fully implemented.

4.      The Court finds that such notice to the Class Members, as ordered and implemented, was reasonably calculated under circumstances to apprise the Class Members of the pendency of this action, all material elements of the proposed settlement, and their opportunity (a) to submit written objections to the settlement, and (b) to appear at the Fairness Hearing to object to or comment on the settlement. The Notice of Settlement was reasonable and best notice

2

practicable to all Class Members and complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules. A full and fair opportunity has been afforded to members of the Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Class, as set forth below, are bound by this Judgment.

5.     On April 19, 2021, the Court certified the Class, appointed the Representative Plaintiffs as representatives of the Class, and appointed the following counsel as Class Counsel to represent the Class Members: (i) Andrés J. Gallegos and Jennifer M. Sender with Robbins DiMonte, Ltd., formerly Robbins, Salomon & Patt, Ltd.; and (ii) Attorney Carl Reardon.

6.     The Court finds that the Class continues to meet the requirements for class certification under the Federal Rules for Civil Procedure and all other applicable laws and rules. In particular, the Court finds that: (a) joinder of the Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers; (b) there are questions of law and fact common to the Class; (c) Representative Plaintiffs' claims are typical of the claims of the Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Class and will continue to do so; (e) Plaintiffs and the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sorts of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Class, so that the final declaratory and injunctive relief is appropriate to the Class.

7.     The Court grants final approval to the settlement set forth in the Consent Decree and finds that it is fair, reasonable, adequate and in the best interests of the Class as a whole. The

Court grants final approval of the release of the Defendants from the Release Claims as set forth in the Consent Decree.

8. The Court further finds that the City's Annual Monetary Commitment, which requires the City to appropriate such funds for the first three fiscal years immediately following the effective date of the Consent Decree for use exclusively toward the construction and the remediation required of the sidewalks, curb cuts, crosswalks and pedestrian ramps and all work related thereto as contemplated by the Consent Decree is proper and reasonably calculated based on available information to maintain and ensure accessibility of pedestrian rights-of-way located in the City of Pekin to persons with Mobility Disabilities. Accordingly, the settlement shall be consummated in accordance with the terms and conditions of the Consent Decree.

9. As required by the Consent Decree, the Court will establish the "term" of the Consent Decree after the engineering consultant completes the Updated Transition Plan.

10. Objections to the settlement are overruled for the reasons explained in the Court's accompanying findings.

11. The Class Representatives and the Class Members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively deemed to have released and forever discharge the Defendants from all Released Claims as set forth in the Consent Decree. All Class Members are bound by this Judgment.

12. The Court approves Class Counsels' request for attorneys' fees and expenses, finding the amounts request to be reasonable.

13. The benefits described in the Consent Decree are the only consideration, fees, costs and expenses that the City shall be obligated to give to any party or entity, including without limitation the Class Representatives, the Class Members, and Class Counsel in connection with

4

the claims released in the Consent Decree and/or the payment of attorneys' fees, costs and expenses in this action.

14.     The Consent Decree and this Judgment are not admissions of liability or fault by the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation of law by the City. The Consent Decree is not a concession by the Parties and, to the fullest extent permitted by law, neither this Judgment, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal or administrative action or proceeding to establish any liability of, or admission by the City.

15.     Notwithstanding the foregoing, nothing in this Judgment shall be interpreted to prohibit the use of this Judgment to consummate or enforce the Consent Decree or Judgment, or to defend against the assertion of Release Claims in any other proceeding, or as otherwise required by law.

16.     In accordance with the terms of the Consent Decree, which is attached hereto, the Court reserves exclusive and continuing jurisdiction over the Representative Plaintiffs, the Class Members, the Defendants and the Consent Decree throughout the term of the Consent Decree, for the sole purpose of supervising the implementation, enforcement, construction, and interpretation of the Consent Decree and this Judgment. In that regard, any challenges to the Consent Decree's terms or implementation, whether under state or federal law, shall be subject to the exclusive and continuing jurisdiction of this Court.

**IT IS SO ORDERED.**

Dated: _____

_____
United States Magistrate Judge

5