E-FILED
Tuesday, 27 October, 2026 03:30:25 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

PATRICIA BERARDI; ROBERT CHRISWELL; AUSTIN CALLOWAY; ELLEN SUNDERLAND; LISA LYNCH; and SUSAN DUVALL, individually and on behalf of all others similarly situated,
*Plaintiff*,

v.

CITY OF PEKIN; MARK ROTHERT; JOHN MCCABE; JOHN ABEL; MICHAEL GARRISON; MARK LUFT; LLOYD ORRICK; MICHAEL RITCHASON; and JIM SCHRAMM,
*Defendant*.

Case No. 1:18-cv-01438-RLH

**ORDER & OPINION**

Now before the Court is Plaintiffs' Second Motion for Attorneys' Fees (Doc. 116), seeking $66,780 for legal services performed following entry of the parties' Consent Decree. Plaintiffs contend the requested fees are recoverable for work monitoring the City of Pekin's compliance with the Decree. Defendants oppose the motion, arguing the Decree precludes compensation for postjudgment work and Plaintiffs did not prevail in the subsequent proceedings. Before considering the reasonableness of the requested fees, the Court must determine whether Plaintiffs are entitled to compensation under the Decree and applicable law.

**BACKGROUND**

In December 2018, Plaintiffs brought this class action under the Americans with Disabilities Act of 1990 ("ADA"), alleging the City of Pekin had systematically failed to maintain accessible curb ramps, sidewalks, and other pedestrian crossings. (Doc. 1). The parties agreed to a class-wide settlement in October 2022, and the Court entered a Consent Decree the following month. (Doc. 73, 76). The Consent Decree requires the City to remediate its inaccessible pedestrian rights of way by, among other measures, commissioning a plan to identify all noncompliant rights of way and implementing a monitoring scheme overseen by the designated consultant, TWM. (*See generally* Doc. 73-1). Notably, the Consent Decree does not specify a termination date.

In October 2025, Plaintiffs filed a motion requesting that the Court determine the duration of the Consent Decree. (Doc. 85). Plaintiffs argued the City had not met its reporting and compliance obligations under the Consent Decree and sought a termination date no sooner than 2040. (Doc. 92). Defendants, in turn, maintained they had "fully complied with the letter and spirit" of the Decree and asked the Court to terminate it "as soon as reasonably possible." (Doc. 87 at 2, 5). Plaintiffs subsequently moved for an order compelling enforcement of the Decree and appointment of an independent monitor. (Doc. 98, 99).

In its August 10, 2026 Order ("August 10 Order"), the Court found the evidence demonstrated the City's compliance with the spirit of the Consent Decree. (Doc. 115). The Court denied Plaintiffs' motions to compel enforcement of the Consent Decree

and appoint an independent monitor.[1] *Id.* The Court also declined to establish a termination date for the Consent Decree, granting in part and denying in part Plaintiffs' motion to determine the Decree's duration. *Id.*

Following entry of the August 10 Order, Plaintiffs filed their Second Motion for Attorneys' Fees. (Doc. 116). Plaintiffs seek $66,780 in attorneys' fees for monitoring work undertaken to ensure compliance with the Decree and legal work performed in the proceedings that culminated in the August 10 Order. *Id.* All work for which Plaintiffs seek fees was performed after the Consent Decree's Effective Date.

## LEGAL STANDARD

Under the "American Rule," each litigant ordinarily bears its own attorneys' fees unless a statute or contract provides otherwise. *Peter v. NantKwest, Inc.*, 589 U.S. 23, 28 (2019). The ADA is one such statutory exception. It provides that, in any action commenced pursuant to the ADA, "the court or agency, in its discretion, may allow the prevailing party … a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A prevailing party is one who has obtained a judicially sanctioned material alteration of the parties' legal relationship. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–04 (2001). In *Buckhannon*, the Supreme Court recognized that a court-

[1] Plaintiffs had also moved for an Immediate Ruling on Plaintiffs' Motion for Appointment of an Independent Monitor (Doc. 106) and for a Ruling on Plaintiffs' Motion to Enforce Consent Decree (Doc. 107). The August 10 Order rendered both motions moot. (Doc. 115).

ordered consent decree constitutes a "material alteration of the legal relationship of the parties" sufficient to confer prevailing-party status. *Id.* at 604.

Reasonable attorneys' fees may also be recoverable for postjudgment work undertaken to secure compliance with a consent decree. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558–59 (1986). Such work may be compensable even when it does not result in additional judicial relief. *Id.* Although a consent decree confers prevailing-party status, that status does not necessarily entitle a party to attorneys' fees for unsuccessful, separable postdecree litigation. *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 770–71 (7th Cir. 2004). In determining whether fees are recoverable for postdecree work, courts distinguish between activities undertaken to monitor compliance with the decree and unsuccessful litigation seeking additional relief. *Id.*

A consent decree is construed according to ordinary principles of contract interpretation. *U.S. v. City of Northlake, Ill.*, 942 F.2d 1164, 1167 (7th Cir. 1991). Courts interpret a consent decree according to its terms, considering the agreement as a whole and giving effect to its provisions. *Id.* Parties may also agree to waive statutory attorneys' fees as part of a settlement. *See Evans v. Jeff D.*, 475 U.S. 717, 730–32 (1986). Accordingly, whether postjudgment fees are recoverable depends not only on the applicable fee-shifting statute but also on the terms of the parties' Consent Decree.

## DISCUSSION

### I. Interpretation of the Consent Decree

The parties dispute the meaning of § 14.3 of the Consent Decree, which provides: "The City shall not be responsible for compensating Class Counsel for any work performed after the Effective Date."[2] (Doc. 73-1 at 38). Defendants contend this provision unambiguously bars Plaintiffs from recovering attorneys' fees for postjudgment monitoring. Plaintiffs, however, argue § 14.3 does not constitute a "clear and unmistakable" waiver of their right to statutory monitoring fees. According to Plaintiffs, the structure of the Consent Decree confirms § 14.3 does not apply to such work. Specifically, Plaintiffs argue § 14.3 appears in a section addressing only prejudgment fees. They also rely on § 15.3, which governs the resolution of disputes by the Court and provides, in part, "Nothing in this section shall be construed to limit the Court's discretion to award reasonable attorneys' fees and costs incurred to the prevailing party." *Id.* at 40.

The Court agrees with Defendants that § 14.3 unambiguously excludes compensation for routine postjudgment monitoring. Section 14 does not address only prejudgment fees, as Plaintiffs suggest. Section 14.1 establishes the agreed compensation for work performed through final approval of the settlement, while § 14.2 prohibits additional fee petitions for work performed before entry of the Final Approval Order and Judgment. *Id.* at 37–38. Section 14.3 then expressly addresses "[a]ttorneys' [f]ees for [w]ork [p]erformed after the Effective Date." *Id.* at 38. Its

[2] "Class Counsel," as defined by the Consent Decree, refers to Plaintiffs' counsel. (*See* Doc. 73-1 at 8).

placement and heading are consistent with its plain language, which disclaims the City's responsibility to compensate Class Counsel for "any work" performed after that date.

Plaintiffs correctly observe that § 14.3 does not specifically reference monitoring, enforcement, or statutory fee-shifting. (Doc. 120 at 2). But the absence of those terms does not render the provision ambiguous. Rather than identifying particular categories of excluded work, the parties agreed to exclude compensation for any work performed after the Effective Date. That language necessarily encompasses routine monitoring activities undertaken after the Decree became effective. Plaintiffs' interpretation would leave § 14.3 with little independent effect, particularly because § 14.2 already addresses additional petitions for fees incurred before final approval.

Nor does this interpretation render § 15.3 meaningless. Section 15 establishes a conflict-resolution process for disputes concerning the implementation, interpretation, monitoring, compliance, and modification of the Decree. Section 15.1 requires Class Counsel to provide written notice of an alleged deficiency and affords the City an opportunity to respond and cure it. If the deficiency remains unresolved, § 15.2 requires the parties to meet and confer, subject to an agreed waiver of that requirement. Section 15.3 then permits either party to seek relief from the Court if those procedures fail to resolve the dispute. In that context, § 15.3 preserves the Court's discretion to award reasonable attorneys' fees and costs to the prevailing party.

Read together, §§ 14.3 and 15.3 establish a distinction between routine postdecree work and litigation arising from the Decree's conflict-resolution process. Section 14.3 generally excludes compensation for work performed after the Effective Date, including routine monitoring. Section 15.3 preserves the possibility of a fee award to a prevailing party in a dispute brought before the Court through the prescribed procedures. This interpretation gives effect to both provisions without treating either as superfluous.

Plaintiffs' reliance on the ADA's statutory fee-shifting provision does not alter this conclusion. Although reasonable postjudgment monitoring fees may ordinarily be recoverable under federal civil-rights statutes, parties may negotiate limitations on attorneys' fees as part of a settlement. *See Evans*, 475 U.S. at 730–32. Here, § 14.3 expressly addresses the City's responsibility for compensation after the Effective Date and broadly excludes such compensation. The Court therefore concludes the parties agreed the City would not be responsible for Plaintiffs' attorneys' fees incurred in routine postdecree monitoring, notwithstanding the availability of such fees under the ADA in the absence of that agreement.

## II. Fees for Monitoring Activities

Section 11 of the Consent Decree authorizes Class Counsel to monitor the City's compliance, including by reviewing information, inspecting remediation work, and communicating with TWM. (Doc. 73-1 § 11). Plaintiffs contend these activities were necessary to ensure the City fulfilled its obligations under the Decree.

The Court does not dispute Class Counsel's authority to undertake those activities. However, authorization to monitor compliance does not establish an entitlement to compensation. Section 11 contains no provision requiring the City to pay Class Counsel for monitoring, and § 14.3 expressly excludes compensation for work performed after the Effective Date.

The Court recognizes that reasonable postjudgment monitoring may ordinarily be compensable under federal fee-shifting statutes. *See Delaware Valley*, 478 U.S. at 558–59; *Alliance*, 356 F.3d at 770–71. Those decisions, however, do not establish an unrestricted entitlement to monitoring fees where the parties have expressly agreed otherwise. Plaintiffs remain authorized to monitor the City's compliance, but the Consent Decree does not require the City to compensate Class Counsel for routine monitoring activities. Accordingly, Plaintiffs cannot recover fees for those activities under § 11 or the general principles governing postjudgment monitoring.

## III. Fees for the Subsequent Proceedings

The remaining question is whether Plaintiffs are entitled to fees under § 15.3 for the proceedings culminating in the Court's August 10 Order. Section 15.3 preserves the Court's discretion to award reasonable attorneys' fees and costs to a prevailing party in a dispute brought before the Court through the Decree's conflict-resolution process. That process requires written notice of an alleged deficiency, an opportunity for the City to respond and cure it, and efforts by the parties to resolve the dispute before seeking judicial intervention. (Doc. 73-1 §§ 15.1–15.3). Although the record does not clearly establish whether Plaintiffs satisfied each of these

requirements before filing their motions, the Court need not resolve that question. Even assuming Plaintiffs complied with the prescribed procedures, they have not established entitlement to fees under § 15.3 because they did not prevail in the subsequent enforcement proceedings.

The Court denied Plaintiffs' motion to enforce the Consent Decree (Doc. 98) and motion to appoint an independent monitor (Doc. 99). (Doc. 115). In doing so, the Court found the evidence demonstrated the City's compliance with the spirit of the Decree. Plaintiffs obtained neither the enforcement relief nor the additional monitoring arrangement they requested. Although the Court addressed Class Counsel's reported difficulty communicating with TWM and stated it would hold the City to its assurance that communication would be facilitated, the Court did not grant Plaintiffs' requested enforcement relief or appoint an additional monitor. (Doc. 115 at 10–12). Plaintiffs' prevailing-party status in the underlying action does not independently entitle them to compensation for these unsuccessful, separable postdecree proceedings. *See Alliance*, 356 F.3d at 770–71; *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 656 (7th Cir. 2007) ("Normally, postjudgment litigation in a complex equitable proceeding is better viewed as largely free-standing from the underlying case.").

Plaintiffs argue that denying compensation for their enforcement efforts would undermine the protections secured by the Consent Decree. The Court recognizes the importance of monitoring compliance with a decree providing continuing relief. But the Seventh Circuit has rejected the proposition that class counsel's role in securing

a consent decree entitles counsel to compensation for unsuccessful enforcement litigation. *See Alliance*, 356 F.3d at 770–71. As the court explained, attorneys cannot secure compensation for themselves merely by initiating unsuccessful proceedings to enforce a decree. *Id.* Here, Class Counsel's monitoring authority remains intact, and § 15.3 preserves the possibility of a fee award in an appropriate enforcement dispute. Neither provision, however, guarantees compensation for unsuccessful litigation.

The Seventh Circuit has also recognized that postdecree monitoring may be compensable when class counsel is expected to participate in enforcement of the decree. *Gautreaux*, 491 F.3d at 661–62. In *Gautreaux*, however, the plaintiffs had obtained relief in subsequent proceedings, and prior fee orders established an expectation that counsel would participate in monitoring and enforcement. *Id.* Those circumstances differ from the present case, where the Consent Decree expressly excludes compensation for routine postdecree work and Plaintiffs did not obtain the enforcement relief they requested.

Plaintiffs also rely on the proceedings concerning the Decree's duration. Section 2.1 expressly reserved determination of the Decree's termination date for the Court. Plaintiffs sought a term extending to at least 2040, while the City requested termination as soon as reasonably possible. In its August 10 Order, the Court declined to adopt either position and determined that the parties could seek a termination date at a later time, but not earlier than April 23, 2029. (Doc. 115).

Although the Court granted in part and denied in part Plaintiffs' motion to determine the Decree's duration, the ruling implemented the Decree's existing terms

rather than granting Plaintiffs additional relief based on the City's alleged noncompliance. The continuation of obligations already imposed by the Decree does not, by itself, establish that Plaintiffs prevailed in a subsequent enforcement dispute for purposes of § 15.3. Accordingly, the duration ruling does not provide an independent basis for awarding the requested fees.

Finally, Plaintiffs cannot recover fees for unsuccessful motion practice merely by characterizing those activities as necessary to enforce the Decree. Nor does the Court's recognition of Class Counsel's continuing monitoring authority establish an entitlement to compensation for such work in light of § 14.3.

Because Plaintiffs have not established entitlement to compensation for either routine monitoring or the subsequent proceedings, the Court need not determine whether the 222.6 hours claimed or the requested hourly rate of $300 would otherwise be reasonable.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Second Motion for Attorney Fees, (Doc. 116), is DENIED.

*So ordered.*

Entered this 27th day of October 2026.

s/Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge